# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:11-cv-00830

RIGHTHAVEN, LLC,

                Plaintiff,

v.

LELAND WOLF, an individual, and
THE IT MAKES SENSE BLOG, an entity
of unknown nature and origin,

                Defendants.

---

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

---

      COMES NOW Defendant Leland Wolf and submits this his Brief in Support of his

Motion to Dismiss for Lack of Subject Matter Jurisdiction (the "Motion"), and respectfully

shows this Honorable Court as follows:[1]

---

[1] In the caption of its Complaint, Plaintiff names both Mr. Wolf and the It Makes Sense Blog as Defendants.  While Plaintiff alleges in the caption that The It Makes Sense Blog is "an entity of unknown origin and nature", the It Makes Sense Blog is in fact not an organized legal entity.  Rather, it is the domain name of a website owned and operated by Mr. Wolf.  As the It Makes Sense Blog is not a person or legal entity, the It Makes Sense Blog is not capable of being sued.  See, e.g., Aston v. Cunningham, 216 F.3d 1086 n. 3 (10th Cir. 2000) (dismissing Salt Lake County jail as a defendant because a detention facility is not a person or legally created entity capable of being sued).  The It Makes Sense Blog should be dismissed for this reason alone.

Given that the It Makes Sense Blog is an improper Defendant as it lacks capacity to be sued, by appearing specially to contest this Court's jurisdiction, Mr. Wolf is appearing only in his individual capacity and not on behalf of the named Defendant the It Makes Sense Blog.  To the extent that the Court finds that the It Makes Sense Blog is capable of being sued, Mr. Wolf respectfully requests that the Court construe Mr. Wolf's limited appearance as being made on behalf of both himself and on behalf of the It Makes Sense Blog.

## I. Introduction

Plaintiff filed this lawsuit against the Defendants on March 31, 2011. (Doc. # 1.) Defendant responds today with this Motion to Dismiss for Lack of Subject Matter Jurisdiction and contemporaneously filed Motion for Leave to Conduct Jurisdictional Discovery.

Pursuant to this Court's April 14, 2011 Order in *Righthaven LLC v. Democratic Underground LLC*, Case No. 2:10-cv-01356 Doc. # 93 (D. Nev., filed Apr. 14, 2011), new evidence regarding Righthaven's relationship with Stephens Media LLC (hereinafter "Stephens Media") has been unsealed and released to the public. On April 15, 2011, an unredacted version of the Defendants' Supplemental Memorandum Addressing Recently Produced Evidence Relating to Pending Motions in the Democratic Underground case was made available on the Public Access to Court Electronic Records ("PACER") system, as well as this court's CM/ECF system. Case No. 2:10-cv-01356 Doc. # 79 (D. Nev., filed Mar. 9, 2011). A true and correct copy of Exhibit A to Doc. # 79 in *Democratic Underground* is attached to this Motion as Exhibit A as well, for consistency. (Exh. A.)

In light of this newly revealed evidence, the Defendants move this Court to dismiss Righthaven's case against them. Under Rules 12(b)(1) and 12(h)(3), subject matter jurisdiction is an essential element to every lawsuit, and must be present for any court to hear a dispute. In this case, Righthaven does not have sufficient rights in the work putatively assigned to it by Stephens Media to bring – or maintain – its case against Wolf. As such, the Court should dismiss Righthaven's suit.

## II. Legal Standard

Subject matter jurisdiction is an essential element to every lawsuit and must be demonstrated at the successive stages of the litigation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Bd. Of County Comm'rs v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002).

The existence of subject matter jurisdiction is an ongoing inquiry that a court must conduct *sua sponte* in order to continue the case. *Iowa Tribe v. Salazar*, 607 F.3d 1225, 1231 (10th Cir. 2010); *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992).   Where subject matter jurisdiction is absent, a court has no discretion and must dismiss the case. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986).

A central component to subject matter jurisdiction is the question of standing, which requires that the party experience actual or imminent harm, rather than a predicted or hypothetical injury. *Lujan*, 504 U.S. at 561 (citing *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990)). A party's standing to bring a case is not subject to waiver, and can be used to dismiss the instant action at any time. Fed. R. Civ. P. 12(h)(3); *U.S. v. Hays*, 515 U.S. 737, 742 (1995); *Williams*, 802 F.2d at 1202.

### III. Argument

Righthaven very likely is neither the owner nor exclusive holder of any rights in the copyrighted work underlying this lawsuit.  As such, Righthaven has suffered no injury or other cognizable harm required for it to have standing under *Lujan*.   Absent this very basic requirement of standing, there is no subject matter jurisdiction in this case, and this Court must immediately dismiss the case.

At this point, Righthaven's Strategic Alliance Agreement with Stephens Media LLC has been revealed, but its equivalent agreement with MediaNews Group is undisclosed. Nonetheless, even if Righthaven's agreement with MediaNews Group has provisions and terms dissimilar from its agreement with Stephens Media, it still transfers only the bare right to sue. An agreement that actually transferred copyright ownership from MediaNews Group to Righthaven would make no sense, and would furthermore defeat Righthaven's unlawful purpose of acquiring the bare ability to sue for infringement – and nothing else.

3

A.      **Righthaven's Agreement with Stephens Media Creates an Unlawful Lawsuit Mill Without Transferring any Actual Copyright Rights.**

For a plaintiff to sue for copyright infringement, it must have an exclusive right in a copyright. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005); *see Sybersound Records v. UAV Corp.*, 517 F.3d 1137, 1144 (holding that only owners and "exclusive licensees" may enforce a copyright or license).   While the Tenth Circuit has not specifically addressed this issue, the Second, Seventh and Eight Circuits have followed the Ninth Circuit in precluding copyright infringement lawsuits based on the plaintiff acquiring a bare right to sue. *Hyperquest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011); *U.S. v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008); *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007). A national survey of case law on this issue finds no serious opposition to the notion that a plaintiff must have an exclusive right to sue for copyright infringement, and that the right must be one of those specified in 17 U.S.C. § 106 – which *do not* include the naked right to sue for infringement.

Without copyright ownership, or at least an exclusive right in the copyright, a plaintiff has no standing to enforce a copyright or license thereto. *See, e.g.*, *Sybersound*, 517 F.3d at 1144. As status as a copyright owner or exclusive licensee is prerequisite for enforcing such a right, a plaintiff without ownership or an exclusive license lacks standing to pursue an infringement claim on that copyright, as it cannot experience the injury requisite for Article III standing under *Whitmore* and *Lujan*.

1.      ***Righthaven's Strategic Alliance Agreement Does Not Confer Standing.***

Righthaven does not have sufficient rights under *Silvers* and *Sybersound* to bring this lawsuit.  While the copyright assignment in this case has not yet been revealed through discovery in this case, the Strategic Alliance Agreement (hereinafter, the "Agreement") between Stephens

Media and Righthaven found in Exhibit A obviates the need for the copyright assignment for the work at issue in this case.[2]  Indeed, the Agreement makes it abundantly clear that Righthaven actually does not have *any* rights in the copyrights it claims.  Most importantly, § 7.2 of the Agreement, Exhibit A, provides as follows:

> Despite any such Copyright Assignment, **Stephens Media shall retain (and is hereby granted by Right*haven*) an exclusive license to Exploit the Stephens Media Assigned Copyrights** for any lawful purpose whatsoever and **Right*haven* shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Stephens Media Assigned Copyrights other than the right to proceeds in association with a Recovery**. To the extent that Right*haven's* maintenance of rights to pursue infringers of the Stephens Media Assigned Copyrights in any manner would be deemed to diminish Stephens Media's right to Exploit the Stephens Media Assigned Copyrights, Right*haven* hereby grants an exclusive license to Stephens Media to the greatest extent permitted by law so that Stephens Media shall have unfettered and exclusive ability to Exploit the Stephens Media Assigned Copyrights. Right*haven* shall have no Obligation to protect or enforce any Work of Stephens Media that is not Stephens Media Assigned Copyrights.

Emphasis added; "Exploit" defined in Exhibit A, Schedule 1.  Thus, while Stephens Media gives Righthaven the undefined, minimal rights for Righthaven to be *recognized* as the copyright holder of the works at issue in its lawsuits, it does not provide any transfer any of the rights in 17 U.S.C. § 106 that must be transferred to make a valid copyright assignment or license. See Silvers, 402 F.3d at 885.  In other words, the "assignment" is a transparent sham that is designed to make Righthaven appear to be a copyright assignee when filing suit, but which is actually governed by this secret Agreement, which renders the assignment meaningless.  The agreement even specifically precludes Righthaven from "Exploit[ing]" (Exh. A, Schedule 1) the copyrighted works through distribution or licensing.  In the end, Stephens Media is the only

---

[2] Judge Hunt ordered this document to be made public in *Righthaven LLC v. Democratic Underground LLC*, Case 2:10-cv-1356 Order, Doc. # 93 (D. Nev. Apr. 14, 2011).  In doing so, he revealed that an important part of his rationale was because the contents of this document would have an impact on all Righthaven cases.  "As I have read these and other motions in this case, and considered the multitude of cases filed by Righthaven, on the claimed basis that Righthaven owns the copyrights to certain Stephens Media copy, it appears to the Court that there is certainly an interest and even a right in all the other defendants sued by [Righthaven] to have access to this material." *Id.* at 4.

party to the Agreement with any exclusive rights in the copyrighted content, which are the rights to exploit the copyrights it assigns Righthaven – which is not even licensed by Righthaven to Stephens Media, but specifically "retained" by Stephens Media in the first sentence of § 7.2.

But that is not the full extent of the sham – as a right of reversion is also included in the Agreement.  As seen in Section 8 of the Agreement, Exhibit A:

> Stephens Media shall have the right at any time to terminate, in good faith, any Copyright Assignment (the "Assignment Termination") and enjoy a right of complete reversion to the ownership of any copyright that is the subject of a Copyright Assignment; provided, however, that if Right*haven* shall have commenced an action to prosecute an infringer of the Stephens Media Assigned Copyrights, Stephens Media shall be exclusively responsible for effecting termination of such action including, without limitation, all Losses associated with any dismissal with prejudice.

In addition to Stephens Media having the exclusive license to use the copyrights for everything but Righthaven's lawsuits, it also retains the ability to reclaim those rights at any time. Righthaven does not even acquire the exclusive right to sue, as the full text of Section 8, found in Exhibit A, specifically contemplates Stephens Media litigating the infringement of the copyrights it assigns to Righthaven.  This is not a true copyright ownership that Righthaven has acquired, or even an exclusive license – it is simply a cause of action.   And it is exactly that narrow, exploitative interest that the Ninth Circuit held flew in the face of the Copyright Act and could not be the basis of a copyright infringement lawsuit in *Silvers*. 402 F.3d at 890; *see also Sybersound*, 517 F.3d at 1144.

**2.      *Similarly, Righthaven's Clarification to its Agreement with Stephens Media also Does Not Confer Standing, and a Similar Clarification in this Case Would Not Confer Standing Either.***

On May 9, 2011, Righthaven executed a Clarification (hereinafter, the "Clarification") to its Agreement with Stephens Media, which was filed in *Righthaven v. Vote for the Worst LLC*, Case No. 2:10-cv-01045 Docs. # 41, 42 (D. Nev. May 9, 2011) and *Righthaven v. Hoehn*, Case

No. 2:11-cv-00050 Docs. # 24, 25 (D. Nev. May 9, 2011) and attached hereto as Exhibit B.   In this "Clarification," Righthaven attempted to salvage its beleaguered Agreement by placing the parties' intent in creating the initial Agreement in writing. (Exh B.)   Contrary to Righthaven's ostensible hopes, though, this "Clarification" served only to make Righthaven's naked use of its acquired copyrights as the basis of lawsuits – and only as the basis of lawsuits – even clearer.

The "Clarification" does not retroactively remedy Righthaven's lack of standing.   While a subsequently executed agreement provides clarification regarding the parties' intent to cure standing defects in copyright cases, it does not retroactively confer standing that previously did not exist. *See Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.,* 70 F.3d 96, 99 (11th Cir. 1995); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532 (11th Cir. 1994); *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.,* 830 F. Supp. 614, 620 (N.D. Ga. 1993).   In these cases, cited by Righthaven in its opposition, a clarification was allowed to put a previously executed oral transfer into writing, or to include previously accrued causes of action in the assignment. *See Infodek,* 830 F. Supp. at 620.   None of these cases support Righthaven's proposition that cure its prior, ineffective attempt to transfer a copyright from Stephens Media to Righthaven with a new, equally unsuccessful attempt to transfer Stephens Media's copyrights to Righthaven solely for the purpose of litigation, in an effort to circumnavigate this Circuit's holding in *Silvers.* 402 F.3d at 890.

> ### *3.    The "Clarification" to the Stephens Media Agreement Denies Righthaven of Substantially All Ability to Use Its Assigned Copyrighted for Anything – Except Lawsuits – and Would Have the Same Effect on the Agreement with MediaNews Group.*

Despite the May 9, 2011 "Clarification," Righthaven's Agreement with Stephens Media still provides it with nothing more than the bare right to sue.   An important component of

Righthaven's "Clarification" is the revision of Agreement § 7.2 (Exh. A § 7.2) to no longer give Stephens Media an exclusive license to Exploit (defined in *id*. at Schedule 1) the copyrighted works for "any lawful purpose" (*id*. § 7.2).  In its place, as the putative owner of the copyright, Righthaven has granted Stephens Media a non-exclusive license to Exploit the copyrighted work "to the greatest extent permitted by law" on condition that 1) Stephens Media pay Righthaven $1.00 per year for this right, and 2) that Righthaven give Stephens Media 30 days notice if it decides to Exploit the copyrighted work or receive any royalties from the copyright's use other than in connection with lawsuits, with failure to do so constituting a material breach of the Agreement. (Exh B § 1.)

This aspect of the "Clarification" is problematic for numerous reasons.  First, Righthaven's non-exclusive license to Stephens Media contains no definitions as to duration, geography or media covered, but haphazardly lets Stephens Media use the copyright assigned to Righthaven "to the greatest extent permitted by law." (*Id*.)  This broad language impairs the markets and interests of other licensees to which Righthaven could license its copyrighted works, such as those that better serve markets in which Stephens Market is permitted to compete, and especially in light of Righthaven's infringement litigation arrangement with Stephens Media evinced in Exhibit A §§ 3-5, and unchanged by the "Clarification."

Moreover, under the "Clarification," Righthaven's unilateral use of the assigned copyright would constitute a material breach of the Agreement, allowing Stephens Media to seek injunctive relief against Righthaven for using the copyright that it ostensibly owns. (Exh. B § 1.) Such an extreme limitation by the assignor of a copyright is inimical to ownership of a copyright, yet in a desperate attempt to retain the right to extort money from Wolf (and hundreds of other

defendants), Righthaven dishonestly insists that it is the owner of the assigned Stephens Media copyrights. (Exh. B § 3.)  This dishonesty must not be rewarded.

Stephens Media's $1.00-per-year license and royalty fee (Doc. # 24 Exh. 3 § 1; Doc. # 25 Exh. 3 § 1) is also misleading.  While a nominal fee for licensing back the copyright Stephens Media originally assigned to Righthaven, this sum is vastly outweighed by the revenues Stephens Media receives from Righthaven's litigation on the assigned copyright, as the Agreement – unaltered by the "Clarification" in this respect – entitles Stephens Media to 50% of any recovery Righthaven obtains from litigation. (Exh. A § 5).  With all of the components taken together, Stephens Media assigns its copyright to Righthaven and pays $1.00 in order to receive 50% of Righthaven's litigation recovery.[3]  Based on what little public information is available about Righthaven's settlements, Stephens Media's recovery entitlement per copyright assignment has been orders of magnitude greater than $1.[4]  Indeed, without the recovery clause in § 5 of the Agreement (Exh. A. § 5), this entire arrangement would fail to be profitable for Stephens and Righthaven and make no sense for either party, as Stephens assigns only copyrights that have been – or it believes have been – infringed. (*See* Exh. A. § 3.)  It makes no sense for Stephens Media to assign only its infringed copyrights to Righthaven, just to license them back and give Righthaven the sole "right" to sue for infringement,[5] unless Righthaven's only purpose is to sue on these assigned copyrights.

Righthaven and Stephens Media also used the "Clarification" to amend the reversion provisions of its Agreement.  Instead of allowing Stephens Media to have a complete reversion

---

[3] This presumably includes sharing any attorneys' fees award with Stephens Media, potentially violating Fed. R. Civ. P. 54(d)(2).

[4] *See* Righthaven Lawsuits, http://righthavenlawsuits.com/ (*last accessed* May 10, 2011) (providing Righthaven's estimated revenues based on lawsuit settlements).

[5] The right to sue for copyright infringement is not one of the exclusive copyright rights provided under 17 U.S.C. § 106.

of the copyright (Exh. A § 8), the "Clarification" allows Stephens Media to, at any time, give Righthaven 14 days notice that it will repurchase the previously assigned copyright for $10. (Exh. B § 2.)  What's more, upon exercising this option, Stephens Media must repay Righthaven the costs Righthaven had undertaken to pursue infringement actions on that assigned copyright. (*Id.*)  This new, revised section 8.2 goes into considerable detail governing how Righthaven will be compensated and disputes settled in the event of Stephens Media exercising its unilateral right to repurchase its assigned copyright from Righthaven, even at the cost of terminating Righthaven's pending litigation (*id.*) – a profound issue that belies Righthaven's claim as the true, legal and beneficial owner of the assigned copyrights.

Operating together, sections 1 and 2 of the "Clarification" make it clear that Stephens Media retains full ownership of the copyrights that Righthaven claims to own. (Exh. B §§ 1 and 2.)  If Righthaven wants to exploit or otherwise license the assigned copyright, it must give Stephens Media 30 days' notice before doing so. (Exh. B § 1.)  Yet, once given notice of Righthaven's intent to use the copyright it supposedly owns, Stephens Media may exercise its rights under new § 8.1 to repurchase the copyright with 14 days' notice and the payment of $10. This creates a loop where, if Righthaven were to even try to use Stephens Media's assigned copyrights for a purpose other than litigation, Stephens Media could (and certainly would) snatch them back before Righthaven could actually use them.   Righthaven's and Stephens Media's characterization of this arrangement as "ownership" is beyond bizarre, and reveals their intent to call an unlawful assignment of the right to sue "ownership" in an effort to misdirect the Court.

Substantively, this is not a non-exclusive license, but an exclusive license to Stephens Media.  This mislabeled exclusive license permits Stephens Media to use the assigned copyright "to the greatest extent permitted by law" (*id.*) up to and until the time Righthaven uses or

licenses the copyright for a purpose other than infringement litigation. (*Id*.)  Should Righthaven

provide Stephens Media notice that it intends to use the copyright for non-litigation purposes,

though, Stephens Media can buy back its rights before anyone else can use the copyrights

supposedly owned by Righthaven. (Exh. B §§ 1 and 2.) *Sybersound*, 517 F.3d at 1150-51

(holding that only exclusive licensees may use or enforce the rights they possess); *Davis*, 505

F.3d at 101 (observing that "no one other than the exclusive licensee may exercise the right"

where there is an exclusive license).

### 4. To The Extent Righthaven may "Clarify" its Agreement with Media News Group, it Still Will Not Have Standing

Righthaven's and Stephens Media's "Clarification" describes Righthaven as the

copyright "owner," but it is a word without meaning in this circumstance. (Exh. B § 3.)  Just as a

child that lacks understanding of the world around her may call a dog a "cat," that does not make

it so.  Righthaven and Stephens Media have misidentified Righthaven as the owner of Stephens

Media's assigned copyrights in § 3 of the "Clarification" (*id*.). This characterization of

Righthaven as an owner is inaccurate in light of the excessive restrictions on Righthaven's use of

the assigned copyrights contained within the Agreement (Exh. A) and amplified in the

"Clarification" (Exh. B).   If the contents of Righthaven's yet-unreleased Strategic Alliance

Agreement with MediaNews Group, and any "Clarifications" provided with respect to that

agreement,  are identical to those of Stephens Media – as anticipated – the "Clarification" will be

as ineffective in saving Righthaven's Agreement with MediaNews Group as it is with respect to

repairing Righthaven's severely compromised agreement with Stephens Media.

It is not uncommon for courts to encounter restrictive agreements that purport to transfer

ownership of a copyright but, in reality, convey no such right. In *Lahiri v. Universal Music &*

*Video Distribution Corporation*, 606 F.3d 1216, 1222 (9th Cir. 2010) the appeals court found

that a settlement agreement purportedly recognizing a party in the litigation as an "owner" of a copyright was too restrictive to convey such a right, holding that "[t]he record demonstrates [the attorney] misled the district court by use of a settlement agreement that deceptively used ownership language, but did not convey or recognize [the assignee's ownership]."    This language should be of great instructive value for this Court, as the record in this case demonstrates the same thing.

Similarly, in *Nafal v. Carter*, the court held that the plaintiff's description in the putative assignment as a "co-owner" was not dispositive of the plaintiff's ownership rights. 540 F. Supp. 2d 1128, 1141 (C.D. Cal. 2007).  Instead, the court held that the relevant test to determine proper ownership of a copyright was "Whether an agreement transfers rights that are exclusive or nonexclusive is governed by the substance of what was given to the licensee and not the label that the parties put on the agreement." *Id*. at 1141-42, citing *Althin v. W. Suburban Kidney Ctr.*, 874 F. Supp. 837, 843 (N.D. Ill. 1994).

In *Nafal*, the document allegedly giving the plaintiff an ownership interest in the copyright prohibited him from "exercising any decision-making authority over almost every portion of the License Agreement." 540 F. Supp. 2d at 1142.  Accordingly, the court found that Nafal was not the owner of the work, lacked Article III standing to pursue a copyright infringement claim, and disposed of the case at summary judgment. *Id*. at 1144.  Similarly, in *Althin*, the trial court found that the plaintiff company lacked standing to bring its copyright infringement claims. 874 F. Supp. at 837.  Upon review, the court found that the assignment agreement that putatively made the company an exclusive copyright right holder merely conveyed a non-exclusive license to the plaintiff company. *Id*.  Specifically, the court found that the rights transferred by the parties' agreement under the 1976 Copyright Act were "governed by

12

the substance of what was given to the licensee and not the label that the parties put on the agreement." *Id*. As the licensor gave the licensee no right to transfer or assign the license agreement, with only a very narrow exception, the court held that Althin did not acquire sufficient rights to have standing to enforce them against others' infringement, and thus dismissed the case on the defendant's Fed. R. Civ. P. 12(b)(1) Motion to Dismiss. *Id*.

As set forth above, Righthaven has extraordinarily limited rights for a copyright "owner." Righthaven's fundamental rights to dispose of its copyrights are so limited and crippled that cannot even use them for non-litigation purposes without seeking Stephens Media's approval, lest it "materially breach" its Agreement. (Exh. B § 1.)  Whenever Stephens Media wishes, with minimal notice, it may, without opposition, repurchase its assigned copyrights for $10 apiece. (*Id*. § 2.)  As is apparent from the Agreement, the only thing Righthaven has any authority to do is to pursue infringement litigation. (Exh. A §§ 3-5.)

A number of provisions in the Agreement that are not affected by the "Clarification" further deny Righthaven ownership of the copyright, and reserve rights to Stephens Media far beyond those due to a non-exclusive licensee.   As part of its copyright assignments to Righthaven, Stephens Media is entitled to:

> maintain Encumbrances on Stephens Media Assigned Copyrights as part of an overall funding securitization whereby all or substantially all of Stephens Media's assets are Encumbered as part of said funding securitization and Stephens Media Assigned Copyrights are not singled-out as or part of a particularized group of Encumbered assets.

(Exh. A § 9.3.)  This provision entitles Stephens Media, putatively the non-exclusive licensee of the assigned copyrights under the "Clarification", to mortgage the copyrights ostensibly owned by Righthaven.   Thus, despite Righthaven being the apparent owner of these copyrights, Stephens Media is entitled to use them as security for funding and other financial obligations. This is inconsistent with the tale that Righthaven now weaves before this Court.

13

Stephens Media retains a number of other rights in the copyrights Righthaven claims to own. In Agreement § 3.3 (*id*. § 3.3), Stephens Media retains the right to reassign the copyright, despite Righthaven's ownership, if Righthaven declines to sue for its infringement. If Righthaven was the sole and true owner of the assigned copyright, Stephens Media would have no such rights, yet this section of the Agreement gives Stephens Media the right to reassign a copyright that it insists is owned by Righthavn. (*Id*.) Righthaven further reveals the flimsiness of its "ownership" in Agreement § 3.4, in which it does not even have the exclusive right to conduct litigation, and grants Stephens Media – a mere non-exclusive licensee under the "Clarification," which normally would not have standing to sue for infringement – the right to pursue infringement litigation on its own, without Righthaven. (*Id*. § 3.4.)

In sum, all of Righthaven's rights to the copyrights assigned to it by Stephens Media are completely beholden to Stephens Media's unfettered whims: From Righthaven's ability to exploit or license the work to a party other than Stephens Media and Stephens Media's right to re-purchase any assigned copyright for $10 without Righthaven having any ability to oppose, to Righthaven's sole pre-authorized use of the assigned copyright being for copyright infringement under Agreement §§ 3.1-3.4 and Stephens Media's ability to pursue its own copyright infringement lawsuits. Stephens Media's rights and privileges permeate the Agreement and "Clarification" so completely and thoroughly that Righthaven's "ownership" of the assigned copyright is little more than a cruel joke at Wolf's expense (and the expense of hundreds of other defendants who have been sued under this unlawful arrangement, to say nothing for the poor souls who have paid Righthaven its extortionate demands).

The operation of this Agreement and its "Clarification" is nothing more than the transfer of an accrued right to sue without any exclusive rights. This practice has been held unlawful in

every jurisdiction to consider it, including the controlling Court of Appeals for the Ninth Circuit. *Hyperquest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011); *U.S. v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008); *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007); *Silvers*, 402 F.3d at 885; *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991); *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27 (2d Cir. 1982); *see also Sybersound*, 517 F.3d at 1144.  No matter what Righthaven calls the rights it supposedly obtains, substantive analysis reveals them to be little more than the bare right to sue – something that not only is not provided for in 17 U.S.C. § 106, but has been specifically held to be unlawful in case after case, and runs directly contrary to the Copyright Act's entire purpose.

> **B.    Righthaven's Agreement With MediaNews Group, and Any Subsequent "Clarification," Likely are Similar, if not Identical to Stephens Media's, and Central to the Court's Jurisdiction in this Case.**

The Agreement embodied in Exhibit A, with its "Clarification" in exhibit B, defines the full scope of Stephens Media's relationship with Righthaven, rendering any analysis of an individual copyright assignment superfluous.  It is clear from the Agreement that whatever rights Righthaven does have from Stephens Media are insufficient to lawfully bring its lawsuit against this defendant, and others as well, and that it lacks standing to do so.  Logically, by extension, an identical or even similar agreement between MediaNews Group and Righthaven would compel the same conclusion.

At this point, the terms and conditions of Righthaven's Strategic Alliance Agreement with MediaNews Group are unknown, as are those of any "Clarification" executed after-the-fact. MediaNews Group is the owner of the Denver Post, and assignor of the TSA pat-down photo's copyright to Righthaven. (Doc. # 1 Exh. 3).  In light of the manifest inequity and exploitation of copyright law found in Righthaven's Agreement with Stephens Media and subsequent "Clarification," there is a serious question as to whether Righthaven has properly acquired the

rights to the copyrighted work from MediaNews Group – or of it is just running another copyright assignment sham.  The contents of that document are central to this Court's subject matter jurisdiction in this case and the dozens of other Righthaven cases pending before it. Based on the foregoing analysis and the documents sought in Wolf's contemporaneously filed Motion for Jurisdictional Discovery, all that is needed to show Righthaven lacks standing is the documents themselves for this Court to review and determine that Righthaven has no rights in the allegedly assigned copyrights, and thus this Court has no subject matter jurisdiction over this dispute.

> **C.    Righthaven's Complaint Very Likely Contains False Assertions Regarding Its Rights in the MediaNews Group Copyright, and Should be Dismissed on that Basis Once These Misrepresentations are Confirmed.**

If Righthaven's Strategic Alliance Agreement or equivalent arrangement with MediaNews Group is identical or substantially similar to the Agreement found in Exhibit A, this Court will have the power to dismiss Righthaven's action immediately. This Court has the inherent power to dismiss an action "to ensure the orderly administration of justice and the integrity of [its] orders." *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (10th Cir. 1982) (citing *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)).  What Righthaven has done in its cases involving Stephens Media copyrights, and likely is doing in this case – as well as other cases predicated on copyrights obtained from MediaNews Group – is to undermine the integrity of this Court by using it to sue defendants for infringing copyrights it never owned, or at least never had sufficient rights to sustain a lawsuit.

Assuming *arguendo* that the Stephens Media Agreement (Exh. A) is the same as the MediaNews Group's, Righthaven's misstatements before this Court are plain to see.  In the Agreement, Stephens Media retains an "exclusive license" to exploit the copyrights allegedly assigned to Righthaven. (Exh. A § 7.2.)  Righthaven has no right to receive royalties for the

copyrighted work's use, other than the recovery it is entitled to from litigation; additionally, Righthaven specifically gives Stephens Media an unspecified – but expansive[6] – exclusive license to exploit the copyrights. (*Id.*)  The extent to which Righthaven putatively owns the copyright is further undermined by Stephens Media's right to reversion, which allows it to take back the copyright at almost any time (*Id.* § 8.)  Yet, in Righthaven's Complaint, it claims to be the "owner" of the copyrighted work (Doc. # 1 ¶¶ 11, 27) and avers to have the exclusive rights to reproduce the work, create derivatives of the copyrighted work, distribute copies of the work and publicly display the work under 17 U.S.C. § 106. (Doc. # 1 ¶¶ 34-37.)

All of these claims are clearly contradicted by Section 7.2 of the Agreement, which makes it clear that Righthaven has no rights to use the work for any purpose other than litigation, and is assigned the copyright solely to coat its lawsuits with the veneer of legitimacy. (Exh. A §§ 3.1, 3.3, 3.4, 7.1, 7.2.)  Depending on the contents of Righthaven's agreement with Media News Group, which likely are identical to those of the Stephens Media Agreement, identical analysis may apply in this case.

Even if Righthaven has, or does, execute a "Clarification" akin to the one it entered into with Stephens Media on May 9, 2011 – the day on which it had to respond to Motions to Dismiss for lack of Subject Matter Jurisdiction in two other cases – Righthaven's claim to possess exclusive rights is false and unjustified. (Exh. B.)  As explained above, Righthaven's purported ownership of the copyrights supposedly assigned to it by Stephens Media falls far short of true, actual ownership, and as such does not confer standing to Righthaven.  Indeed, Righthaven has acquired little more than the "right" to sue – which is not a right at all,[7] and certainly not a basis for standing to bring this suit against Wolf.

---

[6] "[T]o the greatest extent permitted by law." (*Id.*)
[7] *See* 17 U.S.C. § 106.

**Conclusion**

Under prevailing copyright law, Righthaven does not have the legal right to pursue its copyright infringement claim in this case.  As seen from Exhibit A and Exhibit B, it has acquired no rights from Stephens Media, and certainly not enough to claim its copyrights were infringed upon.  An examination of the Strategic Alliance Agreement Righthaven has with MediaNews Group will ultimately compel the same conclusion in this case.  Under the Agreement found in Exhibit A, Righthaven has not suffered an injury cognizable by law.  If a similar agreement and identically ineffective "Clarification" governs Righthaven's rights in the MediaNews Group's copyrighted works, this Court would lack jurisdiction over every one of Righthaven's cases.

Therefore, consistent with Federal Rule of Civil Procedure 12(h)(3), this Court should dismiss Righthaven's case against the Defendant.  In the alternative, the Defendant requests this Court to issue an order instructing Righthaven to produce its Strategic Alliance Agreement or equivalent agreement with MediaNews Group, or grant the Defendants leave to conduct jurisdictional discovery in order to produce this document for the Court.

Respectfully submitted this 17th day of May, 2011.

CONTIGUGLIA / FAZZONE, P.C.

/s/ Andrew J. Contiguglia

By: _____

    Andrew J. Contiguglia
    Colorado Bar No. 26901
    400 S. Colorado Blvd., Suite 830
    Denver, Colorado 80246
    O:  (303) 780-7333
    F:  (303) 780-7337

RANDAZZA LEGAL GROUP

/s/ Marc J. Randazza

By: _____

Marc J. Randazza
California Bar No. 269535
Jason A. Fischer
Florida Bar No. 68762
J. Malcolm DeVoy IV
Nevada Bar No. 11950
7001 W. Charleston Blvd., #1043
Las Vegas, Nevada  89117
O:  (888) 667-1113
F:   (305) 437-7662