IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:11-cv-00830

RIGHTHAVEN, LLC,

        Plaintiff,

v.

LELAND WOLF, an individual, and
IT MAKES SENSE BLOG, an entity of unknown
origin and nature

        Defendants.

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

COMES NOW Defendant Leland Wolf and files this Supplemental Memorandum of Law in Support of his Motion to Dismiss for Lack of Subject Matter Jurisdiction (the "Memorandum") .[1] Previously, Wolf moved to dismiss Righthaven's copyright infringement claims against him for lack of subject matter jurisdiction (Docs. # 11-12), and moved the Court for leave to conduct jurisdictional discovery (Docs. # 13-14). Wolf and Righthaven then entered into a stipulation to conduct discovery and stay briefing on both motions until the conclusion of

---

[1] In the caption of its Complaint, Plaintiff names both Mr. Wolf and the It Makes Sense Blog as Defendants. While Plaintiff alleges in the caption that the It Makes Sense Blog is "an entity of unknown origin and nature", the It Makes Sense Blog is in fact not an organized legal entity. Rather, it is the domain name of a website owned and operated by Mr. Wolf. As the It Makes Sense Blog is not a person or legal entity, It Makes Sense Blog is not capable of being sued. *See, e.g., Aston v. Cunningham*, 216 F.3d 1086 n. 3 (10th Cir. 2000) (dismissing Salt Lake County jail as a defendant because a detention facility is not a person or legally created entity capable of being sued). It Makes Sense Blog should be dismissed for this reason alone.

Given that the It Makes Sense Blog is an improper Defendant as it lacks capacity to be sued, Mr. Wolf is appearing only in his individual capacity and not on behalf of the named Defendant It Makes Sense Blog. To the extent that the Court finds that the It Makes Sense Blog is capable of being sued, Mr. Wolf respectfully submits that the Court construe his motion as being made on behalf of both himself and on behalf of the It Makes Sense Blog.

jurisdictional discovery. (Doc. # 16.) This Court approved the parties' stipulation on June 6, 2011, and denied Wolf's motion for leave to conduct jurisdictional discovery as moot (Doc. # 17). For the reasons set forth in this Memorandum, Mr. Wolf respectfully requests that the Court enter an Order dismissing Plaintiff's Complaint for lack of subject matter jurisdiction.

The filing of this Memorandum is proper and contemplated in the Parties' stipulation, and the Court's order approving that stipulation (Docs. # 16-17.) Moreover, Attorneys Randazza and DeVoy, counsel to Wolf, conferred with Plaintiff's counsel on July 6, 2011 prior to filing this supplement, in an unsuccessful effort to terminate this litigation. Declaration of J. Malcolm DeVoy IV ¶¶ 2-3.

## I. Introduction

Plaintiff Righthaven LLC (hereinafter "Righthaven," or the Plaintiff") filed this lawsuit against the Defendants on March 31, 2011. (Doc. # 1.) Since then, Righthaven's position has deteriorated. Righthaven's Strategic Alliance Agreement with Stephens Media LLC – which governs Righthaven's acquisition of copyright rights from Stephens Media LLC, and is substantively identical to the agreement between Righthaven and MediaNews Group – has been analyzed by the District of Nevada and every court has found that the agreement fails to confer standing upon Righthaven. *See Righthaven LLC v. DiBiase*, Case No. 2:10-cv-01343 Order (Doc. # 72) (D. Nev. June 22, 2011); *Righthaven LLC v. Hoehn*, ___ F. Supp. 2d ____, Case No. 2:11-cv-00050, *2011 WL 2441020* (D. Nev. June 20, 2011); *Righthaven LLC v. Democratic Underground, LLC*, __ F. Supp. 2d ____, Case No. 2:10–cv–01356, *2011 WL 2378186* (D. Nev. June 14, 2011). A number of these defendants are now seeking awards of attorney's fees from Righthaven. DiBiase, 2:10-cv-01343 (Doc. # 78) (D. Nev. July 6, 2011); Hoehn, 2:11-cv-00050 (Doc. # 32) (July 5, 2011). One defendant has already received such an award. *Righthaven LLC*

*v. Leon et al*, 2:10-cv-01672, Order (Doc. # 52) (D. Nev. July 5, 2011) (granting counsel of defendant Michael Leon an award of attorney's fees).

Despite being battered in Nevada, Righthaven's cases in the District of Colorado have been in stasis since this Court's June 6, 2011 Order granting the parties' stipulation for limited jurisdictional discovery (Doc. # 17). All of Righthaven's other pending cases within this District have been stayed since then, pending the resolution of the above-captioned matter. *See, e.g., Righthaven LLC v. Sumner et al*, 1:11-cv-00222, Order (Doc. 21) (D. Colo. May 19, 2011) (staying proceedings until resolution of above-captioned case).

On July 6, 2011, Righthaven responded to Wolf's discovery request for documents governing Righthaven's acquisition of copyright rights from Media News Group, Incorporated. True and correct copies of the documents produced by Righthaven, its Copyright Alliance Agreement ("CAA") and Copyright Assignment from Media News Group, Incorporated (hereinafter, "Media News Group"), are attached hereto as Exhibits A and B, respectively. *See* DeVoy Decl. ¶¶ 4-7. The most important section of the CAA, its Terms and Conditions (Exh. A at 5-8, hereinafter, the "T&C"), incorporated in Section 1 of the CAA (Exh. A at 1), reveal the same flaws that have plagued Righthaven's agreement with Stephens Media LLC: Righthaven does not own the copyrighted work, nor any component rights to it. Section 6 of the T&C makes Righthaven's illusory "right" as clear as can be:

> [Despite any copyright assignment to Righthaven,] Publisher shall *retain (and is hereby granted by Righthaven) an exclusive license to Exploit the Publisher Assigned Copyrights* for any lawful purpose whatsoever and *Righthaven shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Publisher Assigned Copyrights other than the right to proceeds in association with recovery*. To the extent that Righthaven's maintenance of rights to pursue infringers of the Publisher Assigned Copyrights in any manner would be deemed to diminish Publisher's right to Exploit the Publisher Assigned Copyrights, Righthaven hereby grants an exclusive license to Publisher to the greatest extent permitted by law so that Publisher shall have

> unfettered and exclusive ability to Exploit the Publisher Assigned Copyrights (emphasis added).

Righthaven is basing its entire litigation campaign in Colorado on an acquired right to sue for infringement of the work – which is not a right at all under 17 U.S.C. § 106, and not a legal ground on which this case, nor any of the others like it, can be sustained. While the jurisdiction and the copyrighted work at issue have changed in Righthaven's Colorado cases, compared to its Nevada ones, the unlawful scheme used by Righthaven is the same. As such, it should be treated with equal prejudice. Righthaven's operations must be dismantled as unlawful and contrary to the Copyright Act – to say nothing of the Righthaven model's inherent deceit and exploitation.

## II. Legal Standard

Subject matter jurisdiction is an essential element to every lawsuit and must be demonstrated at the successive stages of the litigation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Bd. Of County Comm'rs v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002). The existence of subject matter jurisdiction is an ongoing inquiry that a court must conduct *sua sponte* in order to continue the case. *Iowa Tribe v. Salazar*, 607 F.3d 1225, 1231 (10th Cir. 2010); *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992). Where subject matter jurisdiction is absent, a court has no discretion and must dismiss the case. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986).

A central component to subject matter jurisdiction is the question of standing, which requires that the party experience actual or imminent harm, rather than a predicted or hypothetical injury. *Lujan*, 504 U.S. at 561 (citing *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990)). A party's standing to bring a case is not subject to waiver, and can be used to dismiss the instant action at any time. Fed. R. Civ. P. 12(h)(3); *U.S. v. Hays*, 515 U.S. 737, 742 (1995); *Williams*, 802 F.2d at 1202.

**III. Argument**

In Wolf's Brief in Support of his Motion to Dismiss, Defendant argued that Righthaven very likely is neither the owner nor exclusive holder of any rights in the TSA Pat-Down photo at issue in this case and the others pending in this District. From a review of Exhibit A and its T&C, Wolf's original prognostications were correct, and evidence is now available to support this position. It is no longer necessary to speculate that Righthaven is not the owner of the copyright or an exclusive right therein: It is indisputably clear now that Righthaven does not, and never did, have the right to sue for infringement of the work. As such, Righthaven has suffered no injury or other cognizable harm required for it to have standing under *Lujan*. Absent this very basic requirement of standing, there is no subject matter jurisdiction in this case, and this Court must immediately dismiss the case.

**A.   Righthaven's Agreement with Media News Group Creates an Unlawful Lawsuit Mill Without Transferring any Actual Copyright Rights.**

For a plaintiff to sue for copyright infringement, it must have an exclusive right in a copyright. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005); *see Sybersound Records v. UAV Corp.*, 517 F.3d 1137, 1144 (holding that only owners and "exclusive licensees" may enforce a copyright or license). While the Tenth Circuit has not specifically addressed this issue, the Second, Seventh and Eight Circuits have similarly held, as the Ninth Circuit does, that copyright infringement plaintiffs do not have standing where they have acquired only a bare right to sue. *Hyperquest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011); *U.S. v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008); *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007).

The national survey of case law on this issue, cited above, finds no opposition to the notion

5

that a plaintiff must have an exclusive right to sue for copyright infringement, and that the right must be one of those specified in 17 U.S.C. § 106. Specifically, these rights are:

> 1) to reproduce the copyrighted work in copies or phonorecords;
> 2) to prepare derivative works based upon the copyrighted work;
> 3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> 4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
> 5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
> 6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

These rights *do not* include the naked right to sue for infringement, nor has any court found that they do.

Without copyright ownership, or at least an exclusive right in the copyright, a plaintiff has no standing to enforce a copyright or license thereto. *See, e.g.*, *Sybersound*, 517 F.3d at 1144. As status as a copyright owner or exclusive licensee is prerequisite for enforcing such a right, a plaintiff without ownership or an exclusive license lacks standing to pursue an infringement claim on that copyright, as it cannot experience the injury requisite for Article III standing under *Whitmore* and *Lujan*.

### 1. *Righthaven's Copyright Alliance Agreement Does Not Confer Standing.*

Righthaven does not have sufficient rights to bring this lawsuit. The copyright assignment for the work at issue in this case is attached at Exhibit B, showing that Media News Group has "transferred" its rights in the copyrighted work to Righthaven. Except, no such transfer actually occurred. The Assignment itself even alludes to the hollowness of Righthaven's ownership, referencing Media News Group's "rights of reversion." (Exh. B at 1.) The Assignment also goes

into great detail about Righthaven's ability to seek redress for infringement of the work, but fails to mention any productive use of the material – licensing, content production and distribution – because, as seen in the CAA, Righthaven has no such rights. (*Id*.; Exh. A at 5-6 § 6.)

The CAA goes even farther than the Assignment and makes it abundantly clear that Righthaven has – and can rightfully assert – absolutely nothing. Three sections of the CAA lay bare the tortured contortions Righthaven and Media News Group endured to ensure that Righthaven would appear, on the surface, to have the right and ability to sue infringers, but actually had nothing of value.

The first such section is Section 6 of the T&C (Exh. A at 5-6, § 6), discussed above and reprinted here:

> *Publisher shall retain (and is hereby granted by Righthaven) an exclusive license to Exploit the Publisher Assigned Copyrights* for any lawful purpose whatsoever and *Righthaven shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Publisher Assigned Copyrights other than the right to proceeds in association with recovery*. To the extent that Righthaven's maintenance of rights to pursue infringers of the Publisher Assigned Copyrights in any manner would be deemed to diminish Publisher's right to Exploit the Publisher Assigned Copyrights, Righthaven hereby grants an exclusive license to Publisher to the greatest extent permitted by law so that Publisher shall have unfettered and exclusive ability to Exploit the Publisher Assigned Copyrights (emphasis added).

The second section of the CAA that reveals the true nature of this transaction is found in Section 7.2 of the T&C (Exh. A at 6, § 7.2), undermines any argument that Righthaven is the copyright's true legal or beneficial owner:

> *Publisher is the owner of the Publisher's Assigned Copyright*. The Assigned Copyright is free and clear of all liens and Encumbrances. *Publisher further represents and warrants that it has the exclusive right to use the Assigned Copyright, and has the exclusive right to exclude others from using the Assigned Copyrights*. Publisher further warrants that, as of the Effective Date, Publisher has no knowledge of any third-party Claim that any aspect of Publisher's present or contemplated business operations infringes or will infringe on any rights in any of a third Person in Assigned Copyrights (emphasis added).

7

Finally, if there was any doubt about who truly owned the copyright and all constituent rights therein, Section 10 of the CAA (Exh. A at 3, § 10) compels Righthaven to reassign the copyright at Media News Group's will, with 20 business days' notice and no consideration owed for doing so:

> Subject to Section 9, upon Publisher's signed, written request ("Reassignment Request"), *Righthaven shall, within twenty (20) Business Days of any Reassignment Request, submit reassignment documentation to the United States Copyright Office in order to effect reassignment of any copyright requested by Publisher so long as such request does not interfere with any pending litigation.* Nothing in this Section 10 shall, in any way, diminish Righthaven's rights to funds pursuant to, or arising out of this, Agreement (emphasis added).

These provisions, combined, define the bulk of Righthaven's relationship with Media News Group. Under T&C §§ 6 and 7.2, Media News Group assigns Righthaven nothing more than the bare "right" to sue for copyright infringement – and if anything more may be deemed to be transferred to Righthaven, § 7.2 is clear to transfer all of those rights back to Media News Group (Exh. A at 5-6). Righthaven has no rights to exploit the copyrighted work for licensing or content purposes, and is restricted to using the work solely as the basis for lawsuits. (*Id*.) If there is a risk of Righthaven using the copyrighted work for more, or if Media News Group simply wants it back, CAA § 10 allows it to have Righthaven reassign the work as it sees fit. (*Id*. at 3.)

But, with Righthaven having no ownership of the copyright, nor discernable rights under 17 U.S.C. § 106, it stands to reason that Righthaven would have a problem legitimately registering the copyrights underlying this lawsuit and dozens of others. Media News Group and Righthaven contemplated this problem, though, and addressed it in Section 12 of the CAA:

> Publisher acknowledges that *Righthaven will pursue, in Righthaven's own name, copyright registrations with respect to each Copyright Assignment* provided that the copyright that is the subject of said Copyright Assignment is already not the subject of a registration. The Parties shall use reasonable efforts during the Term to make most efficient the logistical management of effecting proactively the

> administration of copyright registrations for each of the Subject Publications, with respect to all of their copyrightable content, en mass [sic], on a routine schedule, whereby such en mass [sic] registration are made no less frequently than monthly (emphasis added).

(Exh. A at 4.) The truth is laid bare: Despite unlawfully "acquiring" nothing more than causes of action for infringement, Righthaven's agreement with Media News Group allows Righthaven to register the copyrights and hold itself out as their owner.

By its very design, the CAA gives Righthaven no ownership, legal or other beneficial interest in Media News Group's copyrights that is recognizable by law. Righthaven and Media News Group describe a right "to pursue infringers of the Publisher Assigned Copyrights," but this is an imaginary thing – a fanciful design of Righthaven and Media News Group that not only does not exist under the Copyright Act, 17 U.S.C. § 106 (noting that the rights enumerated therein are exhaustive), but has been rejected by **every single court** that has considered the issue. Lacking ownership of the copyrighted work, or any subsidiary rights to it, Righthaven has suffered no cognizable injury in this case. Righthaven lacks standing, and this Court lacks subject matter jurisdiction over the dispute.

**B.**     **Righthaven's Complaint Contains False Assertions Regarding Its Rights in the Media News Group Copyright, and Should be Dismissed on that Basis.**

Because Righthaven has neither ownership of the copyrighted work nor any other rights to it, this case can be dismissed immediately based on Righthaven's representations to the contrary. This Court has the inherent power to dismiss an action "to ensure the orderly administration of justice and the integrity of [its] orders." *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (10th Cir. 1982) (citing *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)). What Righthaven has done in this case – as well as its dozens of other cases predicated on copyrights "obtained" from MediaNews Group – is to undermine the integrity of this Court by using it to

9

sue defendants for infringing copyrights rights it never possessed.

Based on the above analysis demonstrating that Media News Group is the sole owner of the copyright, and all legally recognizable rights therein, Righthaven's misstatements before this Court are plain to see (Exh. A at 3-6, §§ 10, 12, T&C §§ 6, 7.2). In the CAA, Media News Group retains ownership of the copyrights allegedly assigned to Righthaven, and an exclusive license to use all rights entailed by that copyright. (Exh. A at 6, § 7.2.) Righthaven has no right to use the work, or receive royalties from such use, other than the recovery it is entitled to from litigation (*id*. at 5-6, § 6); additionally, Righthaven specifically gives Media News Group an unspecified – but expansive – exclusive license to exploit the copyrights. (*Id* at 6, § 7.2.) The extent to which Righthaven putatively owns the copyright is further undermined by Media News Group's right to reversion, which allows it to take back the copyright for any reason with under one month's notice. (*Id*. § 8.) Yet, in Righthaven's Complaint, it claims to be the "owner" of the copyrighted work (Doc. # 1 ¶¶ 11, 27) and avers to have the exclusive rights to reproduce the work, create derivatives of the copyrighted work, distribute copies of the work and publicly display the work under 17 U.S.C. § 106. (Doc. # 1 ¶¶ 34-37.)

All of these claims are clearly contradicted by Sections 6 and 7.2 of the T&C, which makes it clear that Righthaven has no rights to use the work for any purpose other than litigation, and is assigned the copyright solely to coat its lawsuits with the veneer of legitimacy. (Exh. A at 3-4, 5-6.) Underlying all of this is the fundamental misrepresentation that Righthaven owned the Copyright and was entitled to register it with the U.S. Copyright Office, as set forth in § 12 of the CAA (Id. at 4), when the CAA itself clearly stated that the Publisher – Media News Group – is the owner of the assigned copyright. (Exh. A at 6, § 7.2.)

Finally, while not a strict misrepresentation within this District, Righthaven waited until

10

June 23, 2011 to amend its Corporate Disclosure Agreement (Doc. # 18) because it had been reprimanded in the District of Nevada for failing to disclose Stephens Media LLC's 50% interest in the recovery of lawsuits premised on that company's copyrights. *Democratic Underground*, *2011 WL 2378186* at *1. While the District of Nevada employs a more scrutinizing disclosure rule than Fed R. Civ. P. 7.1, *id.*, which is the controlling standard in this District, Righthaven's guilty conscience manifested by amending the Corporate Disclosure Form in this case to reflect Media News Group's 50% interest in any recovery from its litigation. As set forth in Section 7 of the CAA (Exh A. at 2, § 7):

> Within one (1) week after receipt of any Recovery, Righthaven shall pay to Publisher fifty percent (50%) of the Recovery minus Costs advanced or incurred by Righthaven related to, with respect to or arising out of the preparation for, conduct of and ultimate resolution of the Infringement Action and/or Disposition. Costs incurred with respect to any particular Infringement Action and/or Disposition shall only be deducted with respect to said particular Infringement Action and/or Disposition. Under no circumstances shall Publisher be responsible to Righthaven for Costs in the absence of a Recovery with respect to any particular Infringement Action and/or Disposition.

This is not an interest that requires disclosure under Fed. R. Civ. P. 7.1. It is telling, however, that only after being threatened with sanctions for its dishonesty by the District of Nevada, *Democratic Underground*, *2011 WL 2378186* at *1, and almost three months after commencing this litigation, did Righthaven make an unnecessary disclosure of Media News Group's obvious financial interest in this litigation.

**Conclusion**

Under the Copyright Act, Righthaven does not have the legal right to pursue this copyright infringement claim. As seen from Exhibit A and Exhibit B, it has acquired no rights from Media News Group. Under the CAA found in Exhibit A, Righthaven has not suffered an injury cognizable by law. Moreover, Righthaven's misrepresentations to the Court concerning its

ownership of and rights to the copyrighted work underlying this lawsuit, and many others in this District, provide an alternative basis for the Court to dismiss this action. Therefore, consistent with Federal Rule of Civil Procedure 12(h)(3), this Court should dismiss Righthaven's case against the Defendant.

Respectfully submitted this 8th day of July, 2011.

RANDAZA LEGAL GROUP

By: /s/ Marc J. Randazza
Marc J. Randazza
California Bar No. 269535
Jason A. Fischer
Florida Bar No. 68762
J. Malcolm DeVoy IV
Nevada Bar No. 11950
7001 W. Charleston Blvd., #1043
Las Vegas, Nevada 89117
O: (888) 667-1113
F: (305) 437-7662

CONTIGUGLIA / FAZZONE, P.C.

By: /s/ Andrew J. Contiguglia
Andrew J. Contiguglia
Colorado Bar No. 26901
400 S. Colorado Blvd., Suite 830
Denver, Colorado 80246
O: (303) 780-7333 F: (303) 780-7337

COUNSEL FOR DEFENDANTS

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:11-cv-00830

RIGHTHAVEN, LLC,

        Plaintiff,

v.

LELAND WOLF, an individual, and
IT MAKES SENSE BLOG, an entity of unknown
origin and nature

        Defendants.

## CERTIFICATE OF SERVICE

    I certify that, on July 8 2011, I electronically filed the foregoing **SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Steven G. Ganim, Esq.
Shawn A. Mangano, Esq.
Righthaven, LLC
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
O: (702) 527-5909
F: (702) 527-5909
E-mail: sganim@righthaven.com
E-mail: shawn@manganolaw.com

This, the 8th day of July, 2011.

                Respectfully submitted,

                RANDAZA LEGAL GROUP

                /s/ J. Malcolm DeVoy IV
By: _____
                Marc J. Randazza
                California Bar No. 269535
                Jason A. Fischer
                Florida Bar No. 68762
                J. Malcolm DeVoy IV
                Nevada Bar No. 11950
                7001 W. Charleston Blvd., #1043
                Las Vegas, Nevada 89117
                O: (888) 667-1113
                F: (305) 437-7662

                COUNSEL FOR DEFENDANTS