**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:11-cv-00830-JLK

RIGHTHAVEN LLC, a Nevada limited-liability company,

    Plaintiff,

v.

LELAND WOLF, an individual, and
IT MAKES SENSE BLOG, an entity of unknown
origin and nature

    Defendants.

---

**PLAINTIFF RIGHTHAVEN LLC'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION WITH CERTIFICATE OF SERVICE**

---

  Righthaven LLC ("Righthaven") hereby opposes Defendant Leland Wolf's ("Defendant") Motion to Dismiss for Lack of Subject Matter Jurisdiction (the "Motion", Docs. # 11-12, 20), which has been brought pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1) and Federal Rule of Civil Procedure 12(h)(3)("Rule 12(h)(3)").

  Righthaven's opposition is based upon the Declaration of Shawn A. Mangano, Esq. (the "Mangano Decl."), the argument below, the pleadings and papers on file in this action, any oral argument this Court may allow, and any other matter upon which this Court takes notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

This case presents the first opportunity for the Court to examine Righthaven's standing to maintain this action.  The Court's analysis will undoubtedly include consideration of the Copyright Alliance Agreement (the "CAA") entered into between Righthaven and Media News Group, Inc. ("MNG"), which sets forth general terms and conditions applicable to the parties' rights in and to assigned works.  The Court's analysis will also necessarily include the assignment of rights (the "Assignment") in and to the photographic image known as "TSA Agent performs enhanced pat-downs" (the "Work"). (Mangano Decl. Ex. 1.)  While Defendant attempts to jaundice the Court's subject matter jurisdiction inquiry with repeated references to conclusions reached in the District of Nevada, these decisions did not involve the CAA, MNG or the Assignment.  Righthaven asserts that when the Court considers the arguments below in view of the cited case law, it will find that Righthaven has standing to maintain this action.

An important aspect of the Court analysis is the simple fact that this case does not concern Righthaven attempting to sue for a current or future infringement of a work.  Rather, the Court must examine subject matter jurisdiction given that Righthaven's Complaint is based on a past, accrued infringement claim.  (Doc. # 1.)  As argued below, the Assignment clearly conveyed ownership to Righthaven along with the right to sue for past infringement of the Work. (Mangano Decl. Ex. 1.)  While MNG was licensed back the right to exploit the Work along with other rights under the CAA, these terms do not retroactively divest Righthaven's standing to sue for a past, accrued infringement claim under the plain language of the Assignment.  While Defendant can assert that this theory has been addressed in decisions from the District of Nevada, it has not.  Accordingly, Righthaven asks this Court to perform such an analysis based upon the record before it and find that it has subject matter jurisdiction over this case.

## II.   STANDARDS GOVERNING DEFENDANT'S MOTION

Defendant seeks dismissal of Righthaven's Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[1] The plaintiff bears the burden of establishing the existence of subject matter jurisdiction since it is the party who invoked the court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 376-78 (1994). Subject matter jurisdiction must be demonstrated at the outset of the case and must be found to exist at successive stages of the litigation. *Seee Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1993).

When presented with a challenge to subject matter jurisdiction based on extrinsic evidence in addition to the pleadings, the Court determines the facts for itself. *See Holt v. United States,* 46 F.3d 1000, 1002-03 (10th Cir. 1995). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir. 1987).

In this case, Defendant seeks to dismiss Righthaven's Complaint for lack of standing. (Doc. # 20 at 2.) "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)." *Cone Corp. v. Florida Dep't of Transp.,* 921 F.2d 1190, 1203 n. 42 (11th Cir. 1991).

If the Court concludes that it lacks subject matter jurisdiction, Righthaven's Complaint should be dismissed without prejudice. *See* FED. R. CIV. P. 41(b) (involuntary dismissal for lack of jurisdiction is not an adjudication on the merits); *Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1216 (10th Cir. 2006) (A dismissal for lack of subject matter jurisdiction must be without prejudice because "the court, having determined it lacks jurisdiction over the action is *incapable* of reaching a disposition on the merits of the underlying claims.") (emphasis in original); *Exploration Co. v. Tenneco Oil Co.,* 857 F.2d 1388, 1392 (10th Cir.1988) ("[A] court-ordered dismissal for lack of subject matter jurisdiction is also not a decision on the merits ....");

---

[1] Defendant additionally relies on Rule 12(h)(3) as a basis for dismissing Righthaven's Complaint for lack of subject matter jurisdiction. (Doc. # 20 at 12.) Rule 12(h)(3), however, relates to the Court's authority to raise subject matter jurisdiction *sua sponte* and is inapplicable when a party has invoked Rule 12(b)(1) for such relief. *See Napoleon Hardwoods, Inc. v.*

*Martinez v. Richardson,* 472 F.2d 1121, 1126 (10th Cir. 1973) ("It is a fundamental . . . that a dismissal for lack of jurisdiction is not an adjudication on the merits and therefore dismissal of the . . . claim must be without prejudice."); *see also Stalley v. Orlando Reg. Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."); *Hernandez v. Conriv Realty Assoc.,* 182 F.3d 121, 123-24 (2d Cir. 1999) ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist.").

Moreover, a dismissal for lack of subject matter jurisdiction completely divests the Court of the power to take any further action substantive action in this case. *See Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 577 (1999) ("[A] federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits."); *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94-95 (1998) (noting a court's statutory or constitutional power to adjudicate the case must generally be decided before the merits); *Wilbur v. Locke,* 423 F.3d 1101, 1106 (9th Cir. 2005); *Orff v. United States,* 358 F.3d 1137, 1149 (9th Cir. 2004) (rulings on the merits vacated "as nullities" absent subject matter jurisdiction); *Wages v. IRS,* 915 F.2d 1230, 1234 (9th Cir.1990); *Morongo Band of Mission Indians v. California State Bd. of Equalization,* 858 F.2d 1376, 1380-81 (9th Cir. 1988) ("If jurisdiction is lacking at the outset, the district court has 'no power to do anything with the case except dismiss' . . . .") (internal citations omitted). Any substantive order entered beyond dismissal without prejudice is void and deemed a nullity. *See American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 18 (1951) (requiring a district court to vacate judgment after having determined that the district court lacked subject matter jurisdiction over the suit); *see also United States v. 51 Pieces of Real Prop., Roswell, N.M.,* 17 F.3d 1306, 1309 (10th Cir. 1994) ("[A] judgment is void if the court that enters it lacks jurisdiction over . . . the subject matter of the action.").

Application of the foregoing tenants places the burden on Righthaven to demonstrate that subject matter jurisdiction exists. Granted, Righthaven's task is certainly difficult in view of the

multiple decisions from the District of Nevada that have concluded otherwise.[2] None of these decisions, however, examined Righthaven's standing to sue for past, accrued infringement claims solely under the Assignment. Rather, the Assignment has always been analyzed with the SAA, which does not effectuate any formal assignments from Stephens Media to Righthaven. The decisions from the District of Nevada do, however, provide ample, colorful and at times, unfortunately, disdainful statements made about Righthaven and its business model.

Rather than engage in needless and unprofessional banter, Righthaven simply asks the Court to examine the Assignment in the case in view of the cited case law and the CAA. When this analysis is done, Righthaven maintains it has standing to sue for accrued copyright infringement claims, such as the claim before the Court. If the Court concludes otherwise, then Righthaven's Complaint must be dismissed without prejudice for lack of subject matter jurisdiction.[3]

### III. ARGUMENT

Standing is a jurisdictional requirement that can be raised at any time, including *sua sponte* by the court, as is the case here. *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008). Pursuant to Section 501(b) of the Copyright Act, only "the legal or beneficial owner of an exclusive right under a copyright" is entitled to sue for infringement. *Silvers*, 402 F.3d at 884. Section 106 of the Act, in turn, defines the exclusive rights that can be held in a copyright (*e.g.* the right to reproduce, to prepare derivative works, and to distribute copies). Exclusive rights in a copyright may be transferred and owned separately—for example, through assignment or an exclusive license - but no exclusive rights exist other than those listed in Section 106. *Silvers*, 402 F.3d at 885. While the right to assert an accrued cause of action for

---

[2] *See Righthaven LLC v. Hoehn,* 2011 WL 2441020, at *6 (D. Nev. June 20, 2011) ("*Hoehn*") (Docs. # 28 at 7-10, 30); *Righthaven LLC v. Mostofi,* Case No. 2:10-cv-1066 (D. Nev. July 13, 2011) (Docs. # 34 at 4-8, 35) ("*Mostofi*"); Righthaven LLC v. *DiBiase,* Case No. 2-20-cv-01243 (D. Nev. June, 22 2011) (Doc. # 72 at 2) ("*DiBiase")*; *Righthaven LLC v. Democratic Underground, LLC,* Case No. 2:10-cv-01356 (D. Nev. July 14, 2011) (Doc. # 116 at 11.) ("*Democratic Underground*").

[3] Righthaven understands the Court would likely be required to dismiss without prejudice all similarly situated cases pending in this District without for lack of subject matter jurisdiction.

copyright infringement cannot be transferred alone, such a right can be transferred along with one or more of the exclusive rights in a copyright. *See id.* at 890.

Contrary to Defendant's contentions, Righthaven was assigned ownership of the Work from MNG. (Mangano Decl. Ex. 1.) The Assignment vested Righthaven with ownership of the Work, along with expressly granting the company the right to sue for, among other things, past accrued copyright infringement claims. (*Id.*) While the CAA's terms may impact Righthaven's ability to sue for current and future infringements of the Work, the CAA does not divest Righthaven of its ability to sue for past, accrued copyright infringement claims. This case, and all other Righthaven cases, involve past, accrued copyright infringement claims. Accordingly, Righthaven has standing to maintain this action.

### A. Righthaven Has Standing to Sue for Past Infringement Under the Plain Language of the Assignment.

Existing case law establishes that the Assignment from MNG to Righthaven conveys standing upon Righthaven to bring this case for past, accrued infringement. As previously noted, in the *Silvers* decision, the Ninth Circuit held that an assignor can transfer the ownership interest in an accrued past infringement, but the assignee has standing to sue only if the interest in the past infringement is expressly included in the assignment and the assignee is also granted ownership of an exclusive right in the copyrighted work. *Silvers*, 402 F.3d at 889-90.[4] In so holding, the panel in *Silvers* aligned Ninth Circuit law with that of the Second Circuit as set forth in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 944 F.2d 971, 980 (2d Cir. 1991), which recognized the right to sue for past infringement when both the copyright and the accrued claims were purchased. *Id.* at 889.

The Assignment before the Court completely adheres to the requirements set forth in *Silvers*. The Assignment transferred all exclusive ownership rights in and to the Work to Righthaven, and expressly included all past accrued causes of action for copyright infringement.

---

[4] As Defendant correctly notes, the Tenth Circuit has not specifically addressed the issue decided by the Ninth Circuit in the *Silvers* decision. (Doc. # 20 at 5.)

(Mangano Decl. Ex. 1.) Specifically the plain language of the Assignment in this case stated in pertinent part:

> Assignor hereby transfers, vests and assigns [the Work]…to Righthaven…all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for ***past, present and future infringements*** of the copyright, ***both accrued and unaccrued***, in and to the Work.

(*Id.*, emphasis added.)

At the moment of the Assignment, Righthaven became the owner of the Work, and to seek redress for past, accrued infringement. As parties frequently do, Righthaven licensed back to MNG rights to exploit the Work under the CAA.  The license back of these rights under the CAA, as discussed below, does not obviate Righthaven's right to sue for a past, accrued infringement expressly transferred contemporaneously with ownership through the Assignment.

> 1. **The Assignment, and not the CAA, effectuates the transfer of ownership from MNGS to Righthaven, along with the right to sue for, among other things, past accrued claims of infringement of the Work.**

The CAA's provisions neither serves to effectuate the assignment of any works nor does it alter the unambiguous language of the Assignment or the rights that Righthaven acquired thereunder.  First, the CAA does not effectuate the assignment of any work.  Rather, the CAA reflects promises made by the parties with regard to future transactions in copyrights.  The CAA envisions an assignment to Righthaven of all rights, title and interest in and to potential copyrighted works, which includes the right to sue for any past infringements, coupled with a license back to MNG to exploit any copyrighted works.  (CAA § 5.)  This license back of rights to exploit works can only be effective ***after Righthaven has been assigned the work from MNG.*** Accordingly, the CAA does not effectuate the assignment or any work, but for purposes of the Court's standing analysis it serves to outline rights, including rights licensed back to MNG, after Righthaven has been assigned a work along with the right to sue for, among, other things, past

accrued infringement claims. While the license back of rights under the CAA may preclude Righthaven from suing for present and future infringements of works, it does not divest the company of standing to sue for past, accrued infringements such as that before the Court.

> **2. The license back of rights to MNG and the CAA's right of reversion do not change Righthaven's standing to sue for past accrued infringement claims under the plain language of the Assignment.**

Neither the *post-assignment* license back of exploitation rights to MNG nor the right of reversion under the CAA obviate Righthaven's standing to maintain this case for an accrued copyright infringement claim in view of the Assignment.

While parties in numerous other actions have alleged that this transactional structure constitutes a "sham" or meaningless assignment, adopting these allegations by a finding that Righthaven lacks standing to maintain this action for past infringement would eviscerate countless complex commercial and intellectual property transactions. "Principles of contract law are generally applicable in the construction of copyright assignments, licenses and other transfers of rights." *Key Maps, Inc. v. Pruitt,* 470 F. Supp. 33, 38 (S.D. Tex. 1978). An assignment transfers all rights, title and interest in and to the assigned property. *See id.; see also Pressley's Estate v. Russen,* 513 F. Supp. 1339, 1350 (D. N. J. 1981) ("An assignment passes legal and equitable title to the property . . . ."). Axiomatically, when the totality of rights are assigned by one party to another, and the party receiving said assignment then conveys a license of some interest to the same party or to another party, complete title to ownership vests in the assignee *prior to being divested through licensure*.

While the transactional structure described in the CAA, in which a license is given back to MNG, may divest Righthaven's ability to bring suit for present and future infringements during the term of the license, it does not limit the company's ability to bring suit for past infringements, which is precisely what is at issue here. As the court held in *Silvers*, the right to sue for past infringement requires only an assignment of an ownership interest along with the expressed right to sue for an accrued claim for infringement. *Silvers,* 402 F.3d at 889-90.

Moreover, parties routinely enter into complex agreements transferring intellectual property rights. It is well established that these transfers are not invalid simply because the original owner retains some rights. *See, e.g., Vittoria N. Am., L.L.C. v. Euro-Asia Imports Inc.*, 278 F.3d 1076, 1082 (10th Cir. 2001) (holding that a "thirty-day reassignment clause does not establish that [the trademark assignment] is a sham") (citing *Premier Dental Prods. Co. v. Darby Dental Supply Co.,* 794 F.2d 850, 855-56 (3d Cir. 1986) ("[L]imitations in an otherwise valid assignment do not invalidate it")); *Int'l Armament Corp. v. Matra Manurhin Int'l., Inc.*, 630 F. Supp. 741, 746 (E.D. Va. 1986) ("Plaintiff's ownership of the marks is subject to conditions on its license agreement with Carl Walther, which make that distributorship revocable by Walther for violation of 'essential' clauses. Such limitations on an assignment do not invalidate or make it a sham, however.")

The Ninth Circuit, more than 40 years ago, rejected the argument that an assignment made solely to facilitate a lawsuit is somehow improper. In *Rawlings v. Nat'l Molasses Co.*, 394 F.2d 645, 648 (9th Cir. 1968), the court held:

> Defendants make the further point that the arrangement between plaintiff and [assignor] was accomplished for the sole purpose of permitting plaintiff to bring this action without joining [assignor] as a party plaintiff or defendant. We assume that to be true. Defendants urge that the transaction was a sham. The documents were in fact executed and nothing in the record indicates that as between [assignor] and plaintiff they are either void or voidable. If not, then the purpose underlying their execution is of no concern to the defendants.

Thus, the court rejected the argument that the purpose behind a business transaction or a business itself has any bearing on the issue of standing.[5]

Finally, as the Ninth Circuit held in *Silvers,* courts "should interpret the Copyright Act consistently with the requirement of the Patent Act" because of the fundamental similarity between the two types of intellectual property rights. 402 F.3d at 888; *see also Davis v. Blige*, 505 F.3d 90, 104 (2nd Cir. 2007) ("Although patent and copyright law function somewhat

---

[5] Furthermore, the U.S. Supreme Court has held, an assignee of an accrued cause of action has standing to bring suit in his or her own name even if there is a promise to remit a portion of any proceeds recovered to the assignor. *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 275 (2008).

differently, courts considering one have historically looked to the other for guidance where precedent is lacking . . . . Licenses in patent and copyright function similarly . . . .").

Courts in numerous patent cases have rejected the argument that an otherwise valid transfer of intellectual property rights made to confer standing is somehow defective, or a sham, because the motivating business purpose is litigation. For example, in a highly analogous case in the patent context, the Federal Circuit held that patent assignments made for the sole purpose of bringing suit are nonetheless valid. *SGS-Thomson Microelectronics, Inc. v. Int'l Rectifier Corp.*, 1994 WL 374529 (Fed. Cir. Jul. 14, 1994). There, the defendant urged the court to ignore the patent assignment between related corporate entities because, like here, the agreement was entered for the purpose of conferring standing to sue for infringement. The defendant also argued "sham" because the assignment required the plaintiff to assign the patents back at the conclusion of the litigation, a much greater restriction than that present in this case. *Id.* at *6. The court rejected defendant's arguments, ruling that "[t]his court and other courts have held that an assignment that explicitly provides for possible transfer back to the assignor is nevertheless effective to give the assignee standing." *Id.* The court further held that:

> the district court erred in granting summary judgment on the ground that the assignments of the … patents were shams because the sole purpose of the assignment was to facilitate litigation. In so ruling, the trial court ignored the express language in the assignments and in effect created a new requirement, not found in any case law, that a patent assignment must have an "independent business purpose."

*Id.* Thus, in the very context that *Silvers* advises courts to consider, the Federal Circuit explicitly ruled that the motive or purpose of an assignment is irrelevant to the assignee's standing to enforce the exclusive rights conferred and that the assignor's ability to re-acquire its rights does not deprive the assignee of its right to bring suit. *Id.* at *6-7.

In yet another case decided by the Federal Circuit, the court held that a grant of patent rights was sufficient to confer standing notwithstanding the fact that the grantor retained several rights relating to the patent. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir. 1991). In *Vaupel*, the grantor retained "1) a veto right on sublicensing by Vaupel; 2) the right to obtain patents on the invention in other countries; 3) a reversionary

right to the patent in the event of bankruptcy or termination of production by Vaupel; and 4) a right to receive infringement damages." *Id.* at 875. Despite the grantor's retention of these rights, the court held that "none of these reserved rights was so substantial as to reduce the transfer to a mere license or indicate an intent not to transfer all substantial rights." *Id.* Here, as in *Vaupel*, the rights retained by MNG do not negate the exclusive rights conferred to Righthaven; thus, Righthaven obtained ownership of the Work along with the right to sue for past, accrued infringement and it has standing to maintain this action.

The CAA's right of reversion provision simply does not divest Righthaven of standing to sue for past infringement. The right of reversion gives MNG the right to regain the ownership to any assigned work in the future under certain conditions. That future right has no impact on Righthaven's ownership status at the time of the assignment, or its status at the time it filed this action.[6] Indeed, ***unless and until MNG exercises its right of reversion***, that right will have no impact whatsoever.

In sum, transactional structure under the CAA and the Assignment comport with the holding in *Silvers*. Under the Assignment, Righthaven is vested with ownership of, along with the right to sue for past, present and future infringements, associated with the Work. (Mangano Decl. Ex. 1.) While Righthaven promises under the CAA to license rights back to MNG that permit it to exploit the Work, there can be no such license back to MNG until ***after*** the assignment of ownership along with the right to sue for past infringements is conveyed to Righthaven. (CAA § 5.) This structure thus conveys ownership and the right to sue for accrued infringement claims, which is precisely what is required to establish standing under *Silvers* for purposes of accrued or past infringement claims. Any other conclusion would require the Court to ignore the expressly defined assignment and license-back structure contemplated by the parties to the CAA.

---

[6] In claiming that MNG acknowledges that it is the true owner of assigned works, Defendant misinterprets Section 7.2 of the CAA (Doc. # 20 at 7) for this purpose. Section 7.2 of the CAA is clearly a representation and warranty made by CAA concerning its ownership interests in the works that are subject to specific assignments to Righthaven.

### B. Righthaven Complaint Does Not Contain False Accusations Regarding Its Rights in the Work.

While the Court may find that Righthaven lacks standing to maintain this action, its Complaint certainly does not contain false accusation concerning ownership sufficient to warrant dismiss on this basis. (Doc. # 20 at 9.) This certainly is an aggressive request that is certainly based on some of the criticisms raised about Righthaven's business model. These criticisms, whether warranted or not, simply do not justify such harsh relief given the foregoing arguments and the dearth of case law – particularly in the Tenth Circuit – concerning the conveyance of ownership rights necessary to sue for past, accrued copyright infringement claims.

To begin with, there is nothing nefarious about an assignee splitting litigation recovery with an assignor. *See Sprint Communications Co., L.P.*, 554 U.S. at 275. As also discussed above, have a litigation-based business purpose for the assignment of rights is not improper. *See SGS-Thomson Microelectronics, Inc.*, 1994 WL 374529, at *6. Finally, as discussed extensively above, Righthaven acquired ownership of the Work to sue for past infringement under the Assignment. (Mangano Decl. Ex. 1.) The fact that it licensed back rights to MNG or that MNG had certain reversionary rights under the CAA does not make Righthaven's ownership allegations false for purposes of stating its copyright infringement claim in this case or in any other case filed in this District. Accordingly, there is no basis to dismiss Righthaven's Complaint on the grounds that it contains false ownership assertions.

### C. If Subject Matter Jurisdiction is Absent, Righthaven's Complaint Must be Dismissed Without Prejudice.

If the Court rejects Righthaven's arguments concerning its standing to maintain this action, the lack of subject matter jurisdiction requires the dismissal be without prejudice.

As discussed above, it is without question that a dismissal for lack of subject matter jurisdiction must be without prejudice. *See* FED. R. CIV. P. 41(b) (involuntary dismissal for lack of jurisdiction is not an adjudication on the merits); *Brereton,* 434 F.3d at 1216 (10th Cir. 2006) (A dismissal for lack of subject matter jurisdiction must be without prejudice because "the court, having determined it lacks jurisdiction over the action is *incapable* of reaching a disposition on the merits of the underlying claims.") (emphasis in original); *Exploration Co.,* 857 F.2d at 1392

("[A] court-ordered dismissal for lack of subject matter jurisdiction is also not a decision on the merits ...."); *Martinez,* 472 F.2d at 1126 ("It is a fundamental . . . that a dismissal for lack of jurisdiction is not an adjudication on the merits and therefore dismissal of the . . . claim must be without prejudice."); *see also Stalley,* 524 F.3d at 1232 ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."); *Hernandez,* 182 F.3d at 123-24 ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist."). Accordingly, if the Court concludes that Righthaven lacks subject matter jurisdiction to maintain this action, its Complaint must be dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Righthaven respectfully requests the Court find that it has standing to maintain this action. Alternatively, Righthaven asserts that if subject matter jurisdiction does not exist, then its Complaint must be dismissed without prejudice.

Dated this 29th day of July, 2011.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO ESQ.
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701

STEVEN G. GANIM, ESQ.
RIGHTHAVEN LLC

*Attorneys for Plaintiff Righthaven LLC*

## CERTIFICATE OF SERVICE

  Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that on this 29th day of July, 2011, I caused a copy of the **PLAINTIFF RIGHTHAVEN LLC'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION WITH CERTIFICATE OF SERVICE** to be to be served by the Court's CM/ECF system.

              By: /s/ Shawn A. Mangano
              SHAWN A. MANGANO, ESQ.
              SHAWN A. MANGANO, LTD.
              9960 West Cheyenne Avenue, Suite 170
              Las Vegas, Nevada 89129-7701
              Tel: (702) 304-0432
              Fax: (702) 922-3851
              shawn@manganolaw.com

**V.**