## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:11-cv-00830

RIGHTHAVEN, LLC,

                    Plaintiff,

v.

LELAND WOLF, an individual, and
IT MAKES SENSE BLOG, an entity of unknown
origin and nature

                    Defendants.

---

### REPLY TO PLAINTIFF RIGHTHAVEN LLC'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

---

COMES NOW Defendant Leland Wolf and files this Reply to Plaintiff Righthaven

LLC's (hereinafter "Righthaven['s]," or the "Plaintiff['s]") Opposition to Defendant's Motion to

Dismiss (Doc. # 23).[1]  Previously, Wolf moved to dismiss Righthaven's copyright infringement

claims against him for lack of subject matter jurisdiction (Docs. # 11-12), and moved the Court

for leave to conduct jurisdictional discovery (Docs. # 13-14).  Wolf and Righthaven then entered

into a stipulation to conduct discovery and stay briefing on both motions until the conclusion of

---

[1] In the caption of its Complaint, Plaintiff names both Mr. Wolf and the It Makes Sense Blog as Defendants.  While Plaintiff alleges in the caption that the It Makes Sense Blog is "an entity of unknown origin and nature", the It Makes Sense Blog is in fact not an organized legal entity.  Rather, it is the domain name of a website owned and operated by Mr. Wolf.  As the It Makes Sense Blog is not a person or legal entity, It Makes Sense Blog is not capable of being sued.  *See, e.g., Aston v. Cunningham*, 216 F.3d 1086 n. 3 (10th Cir. 2000) (dismissing Salt Lake County jail as a defendant because a detention facility is not a person or legally created entity capable of being sued).  It Makes Sense Blog should be dismissed for this reason alone.

Given that the It Makes Sense Blog is an improper Defendant as it lacks capacity to be sued, Mr. Wolf is appearing only in his individual capacity and not on behalf of the named Defendant It Makes Sense Blog.  To the extent that the Court finds that the It Makes Sense Blog is capable of being sued, Mr. Wolf respectfully submits that the Court construe his motion as being made on behalf of both himself and on behalf of the It Makes Sense Blog.

jurisdictional discovery. (Doc. # 16.)   This Court approved the parties' stipulation on June 6, 2011, and denied Wolf's motion for leave to conduct jurisdictional discovery as moot (Doc. # 17).   Wolf submitted his Supplemental Memorandum of Law (Doc. # 20) which Righthaven Opposed (Doc. # 23) on July 29, 2011.

## I.      Introduction

Since Wolf filed his Supplemental Memorandum (Doc. # 20) in this case, much has happened to Righthaven – none of it to its advantage, but all of it relevant to this case.

In *Glengarry Glen Ross*, Ricky Roma says to George Aaronow, "Always tell the truth – It's the easiest thing to remember."   Had Righthaven followed this simple bit of wisdom, it would not find itself in its current thicket of predicament in Nevada, and it might find its fortune in Colorado to be more promising.

Righthaven's scheme is based upon "Assignments" of copyrights from news entities to itself.   When such assignments are honest and bona fide transfers of rights, they are remarkably simple – the copyright owner simply transfers all title to the copyright to the new owner. Righthaven's scheme is much more complex, because there is so much dishonesty to obfuscate. In 1992, *Glengarry Glen Ross* was made into a film with the tagline "Lie. Cheat. Steal. All In A Day's Work."   Righthaven should have watched the entire film and learned from Ricky Roma; instead it relied upon the tagline and has lied, cheated, and stolen from dozens of hapless defendants in Nevada and in Colorado.   That conduct ends in Colorado with this Reply Brief.

Righthaven's claims in this District are not based on an "easy to remember" copyright assignment; they are instead based upon a Copyright Alliance Agreement ("CAA") with Media News Group, Incorporated ("MNG").   This document is a close analogue of Righthaven's Strategic Alliance Agreement ("SAA") with Stephens Media LLC ("Stephens Media").   This

Court's honorable colleagues in Nevada have seen through Righthaven's scheme, and every court that has been asked to analyze the SAA, and has thus far rendered an opinion, has sent Righthaven packing – recognizing Righthaven's lack of standing and entering judgment for the defendants. *Righthaven, LLC v. Mostofi*, No. 2:10-cv-01066-KJD-GWF, *2011 WL 2746315* (D. Nev. July 13, 2011); *Righthaven LLC v. DiBiase,* No. 2:10-cv-01343-RLH, *2011 WL 2473531* (D. Nev. June 22, 2011); *Righthaven LLC v. Barham,* No. 2:10-cv-02150-RLH, *2011 WL 2473602* (D. Nev. June 22, 2011); *Righthaven LLC v. Hoehn*, No. 2:11-cv-00050-PMP, __ F. Supp. 2d __, *2011 WL 2441020* at *6 (D. Nev. June 20, 2011); *Righthaven LLC v. Democratic Underground, LLC,* No. 2:10-cv-01356-RLH, __ F. Supp. 2d __, *2011 WL 2378186* at *5 (D. Nev. June 14, 2011) (Doc. # 27-2).

In the *Democratic Underground* case, Judge Hunt was so incensed by Righthaven's conduct that he ordered Righthaven to advise this Court of his ruling.  Case No. 2:10-cv-01356 (Doc. # 138) (D. Nev. July 18, 2011).  Not only did Righthaven ignore that order (*see* Doc. # 27), but Righthaven attempts to escape this overwhelming negative precedent by requesting this Court to ignore it (Doc. # 23 at 2, 4-5).  This is impossible.  The CAA and SAA share the same defects with respect to the rights – or lack thereof – they transfer to Righthaven.  Moreover, Righthaven trots out the same failed arguments it made in the District of Nevada about its standing to sue the dozens of defendants shaken down in this District based on copyrights it never possessed.  Specifically, Righthaven claims that the Assignment, rather than the CAA, gives Righthaven the right to sue Wolf and others for copyright infringement. (Doc. # 23 at 6-8.)  This is an absurd argument, as the Assignment is part of the CAA itself and specifically referenced by the CAA in Schedule 5.  (Doc. # 20-2 at 21.)

What controls Righthaven's standing are the actual rights transferred, not the mask that

Righthaven tries to place over the face of those facts.  The fact that Righthaven even makes this argument is astounding, as the **exact same claim** was not only rejected by the District of Nevada, it was condemned by the judge as "**flagrantly false – to the point that the claim is disingenuous, if not outright deceitful,**" as "the entirety of the SAA [analogous to the CAA] was designed to prevent" Righthaven from acquiring any ownership rights in the allegedly assigned copyright (Doc. # 27-2 at 6:3-8) (emphasis added).  Yet here Righthaven goes again, with the same difficult-to-remember and convoluted story, to try and rescue its failed champertous scheme.

Righthaven spends much of its brief trying to impress two things upon the Court, one of which is wrong, and the other of which is a pre-emptive strike to avoid payment of attorneys' fees (which the Defendant will most certainly seek, and which should be awarded).  First, the wrong: Righthaven's standing at the time of bringing suit did not give it any right to sue, let alone the right to sue for prior infringements.  Plaintiff goes to great lengths to cite cases that indicate the motive of an assignment is irrelevant, and that accrued rights to sue can be transferred to third parties along with other exclusive copyright rights.  This ignores the fact that Righthaven never acquired any of these exclusive rights, as the CAA operates **specifically to deprive Righthaven of such rights,** with MNG expressly retaining them for itself. (Doc. # 20-2 at 6-7.)  In short, there is no transfer of rights, and Righthaven never acquires anything to "license back," as it repeatedly and dishonestly claims.

Righthaven goes to great lengths to argue that if this Court finds it lacked standing, it lacks subject matter jurisdiction over the entire case.  There is a reason Righthaven dedicated nearly two pages of its Opposition to this seemingly obscure point – simply, Righthaven has been down this road before.  Righthaven knows that the prevailing defendant will seek attorneys'

fees for winning a lawsuit that never should have been brought, and wants the Court's opinion to preclude it from having to pay the costs its defendants have incurred in its dozens of illegitimately filed cases. *See Righthaven LLC v. Hoehn*, Case No. 2:11-cv-00050 (Doc. # 38) (Plaintiff's opposition to defendant's motion for attorneys' fees, arguing that Righthaven's lack of standing is a jurisdictional ruling, rather than a ruling on the merits, denying the Court of jurisdiction to award attorneys' fees).[2]  Because the question of jurisdiction is inexorably linked to the merits of this case, though – namely, Righthaven's inability to prevail in an infringement claim under 17 U.S.C. § 501 because it is not a copyright owner – a ruling on Righthaven's standing need not be purely jurisdictional, nor should it be.   While Righthaven's lack of copyright rights denies it standing, this deficiency of rights also goes to the very heart of the case, and determines the case on its merits as well.

In short, Righthaven knows full well that it does not have the right to bring this case. Instead of conceding that point, Righthaven is unnecessarily prolonging this litigation.  In doing so, Righthaven wants this Court to believe that if a party brings a case, which it had no right to bring, then it should suffer no consequences, should pay no attorneys fees, and should simply be able to walk away – even after causing the defendant to expend thousands of dollars in attorneys' fees.  Righthaven wins one thing in this case – it wins the chutzpah award.

Finally, Righthaven devotes a scant two paragraphs to distract the Court from Wolf's claims of Righthaven's deception, which provide an independent and alternate basis for dismissal (Doc. # 23 at 12).  Righthaven's argument might be applicable if it were properly assigned the copyright rights it claimed by MNG.  On the face of the CAA, though, Righthaven

---

[2] The Court may take judicial notice of this document and other court filings as noted within this briefing, as they are matters of public record either within this Court or other federal courts across the country. *See* Fed. R. Evid. 201; *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (finding that a court properly may take judicial notice of its own records and those of other courts).

does not have those rights and never acquired them (Doc. # 20-2), making its characterization of its arrangement with MNG as a "license-back" agreement particularly dishonest.  Righthaven has predicated not only this case, but dozens of others, upon its misrepresentations of owning rights it never possessed, demonstrating pervasive bad faith.

No leap of logic is needed to find Righthaven's bad faith in its litigation campaign, as it is now a settled matter of law within the District of Nevada. *Democratic Underground*, Case No. 2:10-cv-01356 (Doc. # 138) (D. Nev. July 18, 2011) (imposing numerous sanctions and finding that Righthaven made "**intentional misrepresentations**" to the Court, that its conduct demonstrated "**bad faith, wasted judicial resources, and needlessly increased the costs of litigation**") (emphasis added).   Righthaven would have this Court believe that this case is somehow different, as are the dozens of other cases like it.  They are not.  Even until the very end, Righthaven seeks to use the courts as a tool to extort thousands of dollars from people who very likely have done nothing wrong,[3] but wishes the Court to ignore, excuse, and even *reward* its reprehensible conduct.

## II.   Argument

Righthaven's legal position in this case amounts to asking this Court not to look behind

---

[3] Righthaven has lost on the issue of Fair Use under 17 U.S.C. § 107 **every time** evidence of such non-infringing fair use has properly been placed before a court. *See Hoehn, 2011 WL 2441020*; *Righthaven LLC v. Ctr. for Intercultural Organizing*, Case No. 2:10-cv-01322 (Doc. # 38) (D. Nev. Apr. 22, 2011); *Righthaven LLC v. RealtyOne Group, Inc.*, 28 Media Law. Rptr. 2441 (D. Nev. 2010); *compare Righthaven LLC v. Pahrump Life et al.*, Case No. 2:10-cv-01575 (Doc. # 20) (D. Nev. Apr. 28, 2011) (denying *pro se* defendants' motion for summary judgment on fair use grounds because defendants, unrepresented by counsel, failed to properly place relevant evidence on the record).  Because it is well-known and even recognized by courts that Righthaven settles with its targets before even serving them, this defense is not often raised by defendants' counsel, but very likely would be effective in every case, since Righthaven only uses its allegedly owned copyright rights as the premise for infringement litigation. *Democratic Underground*, Case No. 2:10-cv-01356 (Doc. # 148) (D. Nev. Aug. 2, 2011).  In light of how Righthaven uses its specious "rights," a defendant could never harm the market for Righthaven's copyrights unless it, too, began filing infringement lawsuits all over the country based upon these same copyrighted works.  Moreover, this narrow use of copyrighted material undermines the value of Righthaven's litigation, setting the harm it incurs – if Righthaven were entitled to bring suit at all – at $0. *See Righthaven LLC v. Hyatt*, Case No. 2:10-cv-01736, *Amicus Curiae* brief of Media Bloggers Association (Doc. # 29) (D. Nev. Apr. 14, 2011). The Court may take judicial notice of these documents, as they are matters of public record. *See* Fed. R. Evid. 201; *FDIC*, 605 F.2d at 1172.

the curtain and immediately ascertain the true, fraudulent nature of its enterprise. Just as this request was futile in *The Wizard of Oz*, it fails here as well. A cursory review of the CAA makes it obvious that there is nothing behind Righthaven than a sham transaction that allowed it to claim ownership of MNG's copyrights (without actually having ownership) so that it could bring suit.

Righthaven clearly steps into a bizarre alternate reality when it argues that the CAA is irrelevant to the rights Righthaven obtained from MNG. If Righthaven actually acquired any rights from MNG, why are they not defined as in 17 U.S.C. § 106[4]? Why would the copyright Assignment from MNG to Righthaven have to use vague language about Righthaven being assigned "requisite" rights, allowing MNG to keep a vague "right of reversion," if this were a clean transfer of rights to Righthaven? Why would the CAA even have to exist – and have the Assignment as an attachment to it – if this were a mere transfer of copyright rights to Righthaven? The CAA's numerous references to MNG's sham Assignment to Righthaven, and specification that the CAA governs the terms of the supposed copyright transfer, render Righthaven's arguments to that end incorrect, if not deceitful. (Doc. # 20-2 at 6-7 §§ 4, 6.) With apologies to David Mamet: *Always tell the truth, it's the easiest thing to draft around*.

**A.    The Assignment, Which Is Contemplated Within the CAA, Is a Meaningless Document on its Own and, Like the CAA, Transfers No Copyright Rights to Righthaven.**

The Assignment relied upon by Righthaven is not a standalone document, but an integral part of its sham assignment scheme contemplated by the CAA. Attached as Schedule 5 to the CAA, the Assignment is intended to be the public face of MNG's fallacious transfer of copyright rights to Righthaven, but its terms are behind the curtain, and governed by the CAA itself. (Doc.

---

[4] In addition to being disavowed by numerous courts, the "right to sue" is not one of the limited number of exclusive rights created by Congress and found in 17 U.S.C. § 106.

# 20-2 at 5-7, 21.)   The Assignment does not contain any reference to the CAA, which is its

point: To obfuscate the relationship between Righthaven and MNG, and pass muster on a

cursory review.[5] (*Id.* at 21.)   The Assignment's vague language about "requisite" rights and

"rights of reversion" provided a beacon of notice to many copyright attorneys that something in

Righthaven's model was very wrong, leading to the dispute presently before the Court. (*Id.*)

Righthaven falsely claims that its relationship with MNG is an assignment and license-

back arrangement.   Such a characterization would require Righthaven to have been assigned any

rights in the first place, though.   Undermining this contention, and the validity of Righthaven and

MNG's alleged assignment of the copyrights, is the CAA's plain language:

> **Despite any Copyright Assignment, Publisher [MNG] shall retain (and is hereby granted by Righthaven) an exclusive license to Exploit the Publisher Assigned Copyrights** for any lawful purpose whatsoever and **Righthaven shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Publisher Assigned Copyrights other than the right to proceeds in association with a Recovery**.   To the extent that Righthaven's maintenance of rights to pursue infringers of the Publisher Assigned Copyrights in any manner would be deemed to diminish Publisher's right to Exploit the Publisher Assigned Copyrights, Righthaven hereby grants an exclusive license to Publisher to the greatest extent permitted by law so that Publisher shall have unfettered and exclusive ability to Exploit the Publisher Assigned Copyrights. (Doc. # 20-2 at 6-7 § 6 (emphasis added).)

This is not a license-back arrangement where Righthaven holds some exclusive right

cognizable under 17 U.S.C. § 106 and allows MNG to use it while managing other aspects of

MNG's licensing to other third parties – it is a transaction designed to leave Righthaven with

nothing more than the "right" to sue, which is not a right at all. *Hyperquest, Inc. v. N'Site*

---

[5] Three decisions in Nevada erroneously found that, based on the Assignment alone, Righthaven had standing to pursue its action. *Righthaven LLC v. Vote For The Worst, LLC, et al.*, Case No. 2:10-cv-01045-KJD-GWF (Doc. # 28) (D. Nev. Mar. 30, 2011); *Righthaven LLC v. Majorwager.com, Inc.*, Case No. 2:10-cv-00484-GMN-LRL, *2010 WL 4386499* (D. Nev. Oct. 28, 2010); *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.*, Case No. 2:10-cv-00636-RLH-RJJ, *2010 WL 3522372* (D. Nev. Sept. 2, 2010). (The Court may take judicial notice of these documents, as they are matters of public record. *See* Fed. R. Evid. 201; *FDIC*, 605 F.2d at 1172.)   The District of Nevada clearly stated that this reliance on the Assignments, which was governed and in fact undermined by the SAA between Righthaven and Stephens Media, was inappropriate because no rights were transferred by the SAA. (Doc. # 27-2.)

*Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011); *U.S. v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008); *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005); *see Sybersound Records v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008).

For Righthaven to license rights back to MNG, it would have to possess certain rights in the first place, yet § 6 of the CAA's terms and conditions is clear that MNG *retained* all rights needed to use the work from Righthaven. (*Id.*)  The use of this word, "retain," shows that the CAA and Assignment are not a transfer of rights, but a crude illusion, attempting to create the mere appearance of a rights transfer, belied by the plain language of Righthaven and MNG. (*Id.*) Just to be extra sure that Righthaven would never have anything resembling a right in the purportedly assigned copyright, Righthaven simultaneously disclaimed and assigned any rights it could have even theoretically been transferred in the "transaction" back to MNG (*Id.*). Righthaven never had any rights transferred to it by MNG, and thus has none to transfer back. Nevertheless, Righthaven now tries to present this as a license-back agreement.  This is nothing more than dishonest flailing.  The CAA reveals the simultaneous transaction designed to leave Righthaven with nothing more than the ability to (falsely) state that it owns the copyrights at issue, register them, and begin suing defendants by the dozen.

Section 6 of the CAA's Terms and Conditions is far from the only portion of the CAA that reveals Righthaven's lack of copyright ownership.  Section 10 of the CAA requires Righthaven to reassign the copyright work at the Publisher's instruction. (*Id*. at 4.)  Section 7.3 even allows the MNG to encumber the copyrights putatively owned by Righthaven. (*Id*. at 7.) None of these provisions are in any way consistent with Righthaven's ownership of the copyrighted works allegedly transferred under the CAA, and reveal Righthaven's lack of any

true rights to the copyrighted work.

What is clear from the CAA is not only that the Assignment does not effect the transfer of copyrights that Righthaven alleges, but that Righthaven does not acquire **any** exclusive rights in the copyrighted work **at all**.  Lacking any exclusive right in the copyrighted work, and any discernable rights at all, Righthaven has not suffered a cognizable injury and thus does not have standing to bring this action. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Bd. Of County Comm'rs v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002).  Righthaven's lack of standing therefore warrants dismissal of this action. *Lujan*, 504 U.S. at 561; *Geringer*, 297 F.2d at 1112.

**B.      Dismissing Righthaven's Complaint Is Not Purely Jurisdictional, Given the Inseparability of the Case's Merits and Righthaven's Standing.**

"Jurisdiction, like Joseph's fabled coat of many colors, is a term with many shades of meaning, used in many different ways." *Hyperquest, Inc. v. N'Site Solutions, Inc.*, 559 F. Supp. 2d 918 (N.D. Ill. 2008).   Righthaven strenuously argues in this case, as it has in others, that if this Court finds it lacks standing, then it does not have any jurisdiction over any aspect of this case – including the award of attorneys' fees.  *See Hoehn*, Case No. 2:11-cv-00050 (Doc. # 38) (D. Nev. July 23, 2011); *see also DiBiase*, Case 2:10-cv-01343-RLH –PAL (Doc. # 87) (D. Nev. July 28, 2011).[6]  Seeing as Righthaven has suffered a string of defeats in the District of Nevada that have resulted in numerous motions for attorneys' fees, including an award of $3,815 to one of the undersigned firms,[7] it now seeks to insulate itself against future fee awards by pre-loading this absurd argument.  If Righthaven's argument were to be accepted, then it would mean that a

---

[6] The Court may take judicial notice of these documents, as they are matters of public record. *See* Fed. R. Evid. 201; *FDIC*, 605 F.2d at 1172.
[7] Albeit only after the undersigned, Mr. DeVoy, filed a Motion for Preliminary Injunction and an Opposition to Righthaven's Application to Stay Judgment in *Righthaven LLC v. Leon*, Case No. 2:10-cv-01672 (Docs. # 52-54, 56-58) (D. Nev.), demonstrating the lengths to which Righthaven will go to avoid paying others, even when judgment has been entered against it. The Court may take judicial notice of these documents, as they are matters of public record. *See* Fed. R. Evid. 201; *FDIC*, 605 F.2d at 1172.

copyright owner who had a valid right to sue, but who merely lost, would be subject to fees under 17 U.S.C. § 505, but someone who simply walked into the courthouse with an imaginary scheme would be free from consequences.

First, the consequences of this proposition must be considered.  Righthaven entered a sham transaction with MNG to obtain nothing except the ability to falsely claim that it possesses exclusive rights in a copyright.  Righthaven then filed suit in this Court, dozens of times and against dozens of defendants, premised on the same illusory copyright.  Now, once the ruse is revealed, and Righthaven's lack of copyright ownership is laid bare, only after numerous defendants paid Righthaven thousands of dollars to settle their claims, Righthaven insists that this Court doesn't have the authority to adjudicate any portion of this case, including a motion for attorneys' fees.  Not content to use the courts as a bludgeon to extort thousands of dollars from people across the country, Righthaven now seeks to make a mockery of them by claiming their jurisdiction is proper only when it benefits Righthaven.  This is morally and legally wrong.

While closely related, and both necessary to adjudicate a matter pending before the Court, subject matter jurisdiction and prudential standing are distinct, separate issues. *See Flast v. Cohen*, 392 U.S. 83, 98-99 (1968); *Baker v. Carr*, 369 U.S. 186, 198-208 (1962) (treating standing and subject matter jurisdiction separately).  Subject matter jurisdiction is absent when a court cannot accord relief to any plaintiff to assert a claim; in contrast, standing is absent when a specific plaintiff is not entitled to relief for a claim. *Flast*, 392 U.S. at 98-99; *Hyperquest*, 559 F. Supp 2d at 918.

The brief of *amicus* Electronic Frontier Foundation is not only thorough in addressing this topic (Doc. # 25-1 at 11-14), but instructive as well.  In this case, Righthaven's lack of copyright ownership goes to the very heart of its infringement claim under 17 U.S.C. § 501.

11

*TransWestern Publ'g Co., v. Multimedia Mktg. Assocs.*, 133 F.3d 773, 775 (10th Cir.1998) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).   Because Righthaven lacks the rights necessary to prevail on this claim, it is not only deprived of the right to go forward from a jurisdictional perspective, but its cases fail on the merits as well. *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987) ("When subject-matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined"); *Tilton v. Richardson*, 6 F. 3d 683, 685 (10th Cir. 1993); *Davis v. City of Aurora ex rel. City Council*, 2011 WL 2799539, *2 (D.Colo., July 14, 2011).

As seen in *Democratic Underground* case and *Righthaven LLC v. Pahrump Life et al.*, Case No. 2:10-cv-01575 (D. Nev. 2010), Righthaven interprets every dismissal without prejudice as an invitation to return to the courts with a slightly modified agreement in an effort to find out when, exactly, the language it uses confers it with standing.   The end result is a second wave of zombie lawsuits: Cases that are immediately refiled,[8] or Complaints that are amended[9] to reflect these "new" facts based on subsequent clarifications and amendments to the agreements Righthaven makes with its content-producing partners that Righthaven alleges – but courts do not find – relate back to the time of filing. (*See* Doc. # 27-2 at 8:5-9:24.)

Righthaven's relationship with Stephens Media is apparently more intimate than its relationship with MNG, and it is to MNG's credit that it has not engaged Righthaven in trying to

---

[8] *See Righthaven LLC v. Mostofi II*, Case No. 2:11-cv-01160 (D. Nev. July 13, 2011), filed mere hours after the District of Nevada dismissed *Righthaven LLC v. Mostofi I*, Case No 2:10-cv- (Doc. # 34) (D. Nev. July 13, 2011) due to Righthaven's lack of standing under its SAA with Stephens Media.  The Court may take judicial notice of these documents, as they are matters of public record. *See* Fed. R. Evid. 201; *FDIC*, 605 F.2d at 1172.

[9] *See Pahrump Life* (Docs. # 45, 63) (D. Nev. 2011) (seeking leave to amend complaint based on Righthaven's second set of changes to SAA with Stephens Media, denied by court at hearing); *Righthaven LLC v. NewsBlaze LLC et al.*, Case No. 2:11-cv-00720 (Doc. # 16) (D. Nev. July 19, 2011) (seeking leave to amend complaint to reflect second revision to SAA with Stephens Media).  The Court may take judicial notice of these documents, as they are matters of public record. *See* Fed. R. Evid. 201; *FDIC*, 605 F.2d at 1172.

mendaciously "amend" the CAA, *nunc pro tunc*, and argue that such changes cure Righthaven's obvious lack of standing at the time this lawsuit was filed. (*Id*.)  After all, why would MNG do such a thing and attempt to give its rights to Righthaven for future litigation, when the Plaintiff is half-owned by Stephens Media, a competitor of MNG? *See Pahrump Life*, Case No. 2:10-cv-01575 (Doc. #32-2 at 11-14) (D. Nev. May 20, 2011) (identifying SI Content Monitor as the representative of "Stephens" and half-owner of Righthaven).[10]  Quite simply, it would not.  The logical answer to this question further harms Righthaven's claims of ownership over MNG's allegedly transferred copyrights.

Nonetheless, Righthaven's conduct demonstrates why judging this case on its merits, as opposed to strictly on jurisdictional grounds, is the correct choice.  If dismissal is without prejudice, Righthaven will simply come back, like a B-movie zombie, for another attack at its many defendants.  Additionally, if dismissal is made purely on jurisdictional grounds, any victories obtained by defendants will be symbolic at best, and most likely pyrrhic.

As early as April 7, 2011, this Court was aware of Righthaven's business plan of "encouraging and exacting settlements from Defendants cowed by the potential costs of litigation and liability." *Righthaven LLC v. Hill*, Case No. 1:11-cv-00211-JLK (Doc. # 16) (D. Colo. Apr. 7, 2011).[11]  If Righthaven has its way and these cases are dismissed on jurisdictional grounds, the defendants who stood to fight will be rewarded with legal bills equal to or greater than the thousands of dollars required to settle Righthaven's baseless lawsuits.  Righthaven's defendants come from all walks of life – the very old and the very young, veterans, the disabled, and the well-intentioned all among them.  These defendants do not have litigation budgets in the way

---

[10] The Court may take judicial notice of this document, as it is a matter of public record. (Doc. # 25-1 at 4 n. 5); *See* Fed. R. Evid. 201; *FDIC*, 605 F.2d at 1172.

[11] The Court may take judicial notice of this document, as it is a matter of public record. (Doc. # 25-1 at 4 n. 5); *See* Fed. R. Evid. 201; *FDIC*, 605 F.2d at 1172.

13

companies might, and did not seek a fight with Righthaven. Instead, they were sued as a consequence of exercising their free speech and fair use rights, and performing what they likely believed to be a public service. A ruling on purely jurisdictional grounds opens the door for Righthaven to re-victimize them, and suffer no penalty for bringing dozens more lawsuits predicated on rights it never acquired. A ruling on the merits will give Righthaven's victims at least the opportunity to be made whole for defending suits that never should have been brought before this Court, and that Righthaven could never win.[12]

    **C.**    **Righthaven's Bad Faith and Deception Independently Warrant Dismissal of The Complaint.**

Righthaven's attempt to explain away its misrepresentations to the Court contradicts the plain language of the CAA. This Court has the inherent power to dismiss an action "to ensure the orderly administration of justice and the integrity of [its] orders." *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (10th Cir. 1982) (citing *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)). In this case, Righthaven claims to hold numerous exclusive rights in the copyright at issue, but the CAA makes it clear that no rights at all are transferred to Righthaven. (Doc. # 20-2 at 6-7 § 6.) Instead, those rights are retained by MNG, with Righthaven representing that any rights it could even arguably acquire in the copyright are assigned to MNG. (*Id.*) MNG did not give any rights to Righthaven. (*Id.*) Righthaven had no rights to "license back" to MNG. (*Id.*) Righthaven had no rights to support this suit. (*See Id.*)

---

[12] The undersigned make this point with extreme charity, as this argument assumes that Righthaven will even exist at the time such fees are due, or will actually pay them – a valid concern evinced by the excessive motion practice needed to recover just $3,815 in fees from the *Leon* case, an amount chiefly attributable to Righthaven's refusal to negotiate in good faith about an award of fees made by the court upon dismissing Mr. Leon from the case. Case No 2:10-cv-01672 (Docs. # 37, 42, 52, 54, 56-58) (D. Nev. 2011). The Court may take judicial notice of these documents, as they are matters of public record. *See* Fed. R. Evid. 201; *FDIC*, 605 F.2d at 1172.

As a signatory to the document, Righthaven and its CEO, Steven Gibson, surely knew that the CAA did not transfer any rights under 17 U.S.C. § 106 from MNG to Righthaven. (*Id.* at 4.) In fact, that wasn't a defect in the agreement, but a feature of the plan. Despite the CAA not transferring ownership of the copyright to Righthaven, nor a single exclusive right therein, Righthaven still alleged that it was the "owner" of the copyrighted work (Doc. # 1 ¶¶ 11, 27), and had the exclusive rights to reproduce the work, create derivatives of the copyrighted work, distribute copies of the work and publicly display the work under § 106. (*Id.* ¶¶ 34-37.)

In its Opposition (Doc. # 23), Righthaven again relies on the Assignment, claiming that it is the document that conveyed Righthaven the rights it needs to sustain this lawsuit. Again, this is simply dishonest. The Assignment's sole purpose is cosmetic in nature, and the CAA dictates its substance, or lack thereof (Doc. # 20-2). The CAA's plain language undermines Righthaven's argument that the Assignment effects the transfer of copyright rights to Righthaven, as Section 6 unambiguously states: "*Despite any Copyright Assignment*, Publisher [MNG] shall *retain* (and is hereby granted by Righthaven) an exclusive license to Exploit the Publisher Assigned Copyrights for any lawful purpose whatsoever" (Doc. # 20-2 at 6-7 § 6) (emphasis added).

The fact that Righthaven has even argued that the Assignment transfers rights to it, despite obviously contradictory language in the controlling CAA, is further evidence of its bad faith and deception. It is obvious by the CAA's own language that the CAA, and not the Assignment, controls the rights supposedly transferred from MNG to Righthaven. The last time this argument was subjected to judicial scrutiny, it was not merely rejected, but described as "flagrantly false – to the point that the claim is disingenuous, if not outright deceitful." (Doc. # 27-2 at 6:5-6.) This likely was just one of many "inaccurate and likely dishonest" statements

upon which the *Democratic Underground* court premised Order to Show Cause (*id*. at 15) and later premised its imposition of sanctions. (*See* Doc. # 27); Case No. 2:10-cv-01356 (Doc. # 138) (D. Nev. July 18, 2011).  Righthaven responded to these sanctions by seeking an extension to comply with them a day after they were due, and ultimately forcing Wolf to undertake Righthaven's compliance with the *Democratic Underground* court's sanction order. (Doc. # 27 at 2-3); *Democratic Underground*, Case No. 2:10-cv-01356 (Doc. # 143) (D. Nev. July 29, 2011).[13]

Righthaven has learned nothing, and repeats those same arguments to this Court.  If the CAA had not come to light, Righthaven may have even gotten away with claiming the poorly worded Assignment sufficiently transferred all of MNG's rights to Righthaven.  But, with the CAA properly before this Court, it is impossible to ignore the true nature of MNG and Righthaven's relationship, which is clearly defined in the CAA rather than the Assignment.  For Righthaven to argue that the CAA is not controlling, and that the Assignment is the only operative document in "transferring" MNG's unspecified "requisite" rights to Righthaven, is beyond dishonest.  That Righthaven even posed this argument should cause this Court to cry out for sanctions to be imposed upon the Plaintiff.

**Conclusion**

It is a logical impossibility for Righthaven to have "licensed back" to MNG rights that it never acquired in the first place, under the plain language of the CAA.  The Assignment from MNG to Righthaven is a sham, clearly undermined by the plain language of the CAA, with MNG retaining all rights in the allegedly transferred copyright.  Accordingly, Righthaven has no exclusive copyright rights and no standing to sue.

---

[13] The Court may take judicial notice of this document, as it is a matter of public record. (Doc. # 25-1 at 4 n. 5); *See* Fed. R. Evid. 201; *FDIC*, 605 F.2d at 1172.

Ever acutely aware of its immediate self-interest and warped sense of fairness, Righthaven attempts to grease the skids for dismissal without prejudice on jurisdictional grounds. The demonstrated consequence of such rulings in other districts has been for Righthaven to attempt to revive and re-revive its litigation campaign at the expense of its defendants – defendants who, once victorious, Righthaven tries to avoid making whole by claiming that any lack of jurisdiction deprives the court of all power over the dispute, including jurisdiction to award attorneys' fees. Because the merits of this case are inseparable from the question of Righthaven's standing, though, this case can be decided and dismissed on its merits, with prejudice, and most certainly with fees (and sanctions) in the mix.

Finally, the plain language of the CAA transfers no rights to Righthaven, though it alleges ownership of the copyright and numerous exclusive rights thereto in its Complaint (Doc # 1). As if this falsehood is not enough, Righthaven bases its entire Opposition (Doc. # 23) on an argument that has already been dismissed by the *Democratic Underground* court as not only unavailing, but "**flagrantly false**" (Doc. # 27-2 at 6:5-6), to say nothing of other dismissals that have ratified such reasoning.

The CAA lays bare what Righthaven possesses a basis for its lawsuits: Nothing. MNG did not transfer any rights to Righthaven, and thus Righthaven has no basis to sue for infringement. It would be bad enough if Righthaven were merely punishing others' free expression based on rights it actually acquired from MNG. But, for the truth to come out – that Righthaven filed this suit and many others without receiving *any* rights from MNG – makes this lawsuit mill operation not only abusive, but fraudulent as well. This Court must dismiss this lawsuit and treat Righthaven as what it is – a liar.

Respectfully submitted this 10th day of August, 2011.

RANDAZA LEGAL GROUP

/s/ Marc J. Randazza

By: _____

Marc J. Randazza
California Bar No. 269535
Jason A. Fischer
Florida Bar No. 68762
J. Malcolm DeVoy IV
Nevada Bar No. 11950
7001 W. Charleston Blvd., #1043
Las Vegas, Nevada 89117
O: (888) 667-1113
F: (305) 437-7662

CONTIGUGLIA / FAZZONE, P.C.

/s/ Andrew J. Contiguglia

By: _____

Andrew J. Contiguglia
Colorado Bar No. 26901
400 S. Colorado Blvd., Suite 830
Denver, Colorado 80246
O: (303) 780-7333
F: (303) 780-7337

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

---

I certify that, on July 8 2011, I electronically filed the foregoing **REPLY TO PLAINTIFF RIGHTHAVEN LLC'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Steven G. Ganim, Esq.
Shawn A. Mangano, Esq.
Righthaven, LLC
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada  89129-7701
O:  (702) 527-5909
F:  (702) 527-5909
E-mail:  sganim@righthaven.com
E-mail:  shawn@manganolaw.com

This, the 10th day of August, 2011.

Respectfully submitted,

RANDAZA LEGAL GROUP

/s/ J. Malcolm DeVoy IV
By: _____
Marc J. Randazza
California Bar No. 269535
Jason A. Fischer
Florida Bar No. 68762
J. Malcolm DeVoy IV
Nevada Bar No. 11950
7001 W. Charleston Blvd., #1043
Las Vegas, Nevada 89117
O: (888) 667-1113
F: (305) 437-7662

COUNSEL FOR DEFENDANTS