**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:11-cv-00830-JLK

RIGHTHAVEN LLC, a Nevada limited-liability company,

        Plaintiff,

v.

LELAND WOLF, an individual, and
IT MAKES SENSE BLOG, an entity of unknown
origin and nature

        Defendants.

---

**PLAINTIFF RIGHTHAVEN LLC'S OMNIBUS REPSONSE TO *AMICI CURIAE* BRIEFS FILED BY ELECTRONIC FRONTIER FOUNDATION AND CITIZENS AGAINST LITIGATION ABUSE, INC. WITH CERTIFICATE OF SERVICE**

---

      Righthaven LLC ("Righthaven") hereby responds to the briefs submitted by *amici curiae* (the "Amici Briefs") Electronic Frontier Foundation ("EFF", Doc. # 25) and Citizens Against Litigation Abuse, Inc. ("CALA" and collectively referred to herein with EFF as the "Amici", Doc. # 21). Amici's submissions are in support of Defendant Leland Wolf's ("Defendant") Motion to Dismiss for Lack of Subject Matter Jurisdiction (the "Motion", Docs. # 11-12, 20), which has been brought pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1) and Federal Rule of Civil Procedure 12(h)(3)("Rule 12(h)(3)").

      Righthaven's omnibus response opposition is based upon the arguments contained in its response to Defendant's Motion (Doc. # 23), the arguments set forth in the below memorandum of points and authorities, the pleadings and papers on file in this action, any permitted oral argument permitted, and any other matter upon which this Court takes notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

As astutely observed by Chief Judge Posner, of the Seventh Circuit, "The vast majority of *amicus curiae* briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's briefs.  Such *amicus* briefs should not be allowed.  They are an abuse.  The term '*amicus curiae*' means friend of the court, not friend of a party." *Ryan v. Commodity Futures Trading Comm'n,* 125 F.3d 1062, 1063 (7th Cir. 1997). "An *amicus* brief should normally be allowed when a party is not represented competently or is not represented at all . . . ." *Id.*

The Amici Briefs before the Court are a perfect example the type of submissions criticized by Judge Posner – they largely assert arguments already presented by the Defendant, albeit, as demonstrated by CALA's brief, in more verbose and unnecessary manner. (Doc. # 21, which almost spans fifty pages in length).  Righthaven is not objecting to the Amici's participation in this case, but it does object to their submissions replicating arguments already advanced by Defendant through his counsel. This omnibus response will avoid multiplying the arguments already before the Court in its response to Defendant's Motion. (Doc. # 23.)  Instead, Righthaven will focus this response on those arguments that are material to the Court's adjudication of the Motion.

This omnibus response will also refrain from responding to Amici's attempts to characterize Righthaven as a "copyright troll", which is apparently a description created by EFF, or respond unnecessary aspersions directed at the company's Chief Executive Officer or any reference to statements made from any of the proceedings in the District of Nevada.  Instead, Righthaven will seek to address the issues raised by Amici that relate to the Court's subject matter jurisdiction analysis as amplified by the Amici Briefs.

As argued in its response to Defendant's Motion, Righthaven asserts that it has standing to sue for accrued copyright infringement claims, such as that set forth in the Complaint filed against the Defendant, based on the plain language of the assignment of ownership to it from Media News Group ("MNG") along with the express right to sue for past, accrued infringements

(the "Assignment"). (Doc. # 23 at 6-7.) Thus, the Assignment's language fully satisfies the requirements set forth in the leading decision on this issue. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d at 889-90 (9th Cir. 2005).

The provisions of the Copyright Alliance Agreement (the "CAA") between Righthaven and MNG do not change this result. (Doc. # 23 at 7-11.) Rather, the terms of the CAA, which do not effectuate the assignment of any particular work, may only divest Righthaven's ability to sue for current or future infringements if certain terms are found to be inconsistent with the company's continued ownership of assigned works. (*Id.*) For instance, the exploitation rights licensed back to MNG in an assigned work may be determined to only vest MNG with standing to sue for infringements occurring while it holds this license. This fact is immaterial to the Court's standing analysis because the standing question at issue concerns Righthaven's ability to maintain the case before it, which involves an alleged accrued copyright infringement claim. (Doc. # 23 at 6-11.) Should the Court disagree to with Righthaven's position and find that it lacks subject matter jurisdiction, it must dismiss this action without prejudice. (*Id.* at 13-14.)

The Amici's arguments about the Court's lack of subject matter jurisdiction based on the CAA's terms have already been advanced by the Defendant and respond to by Righthaven. Righthaven will not address the Amici's arguments not previously raised by Defendant. As set forth below, EFF's arguments improperly attempt to change the procedural grounds under which Defendant's Motion has sought relief and further ask the Court to apply collateral estoppel to the decisions from the District of Nevada (the "Nevada Decisions") clearly fail to satisfy the requirements under this doctrine.

Despite the length of its submission, CALA's brief is essentially devoid of any arguments that would assist the Court's subject matter jurisdiction analysis. CALA's brief argues that Righthaven's contractual agreement with MNG somehow constitutes an illegal contingency fee agreement by citing to decisions that are completely inapplicable to this case. CALA's brief also nebulously argues the Assignment is invalid under state law without applying any particular state law in support of its position. The CAA expressly provides, however, that it is governed by and must be construed in accordance with Nevada law. (CAA 8 § 19, "This Agreement . . . shall be

interpreted in accordance with the laws of the State of Nevada without regard to its conflict of laws principals.".) Righthaven will largely allow the nonsensical arguments contained in CALA's brief stand on their own lack of merit. To the extent needed, Righthaven will address what issues it deems require a response.

As demonstrated through the below arguments, the Amici Briefs certainly do not reflect submissions by non-parties to this case that are granted permission to participate as friends of the Court. Rather, the arguments advanced by Amici, if adopted, are more likely to invite reversible error than to support a finding that subject matter is lacking over this dispute. Righthaven maintains the Court should find subject matter jurisdiction exists over this action upon reveal of the material facts and applicable law presented in its filings.

**II. ARGUMENT**

    **A. EFF Improperly Asks The Court to Decide The Subject Matter Jurisdiction Question on Procedural Grounds Upon Which Defendant's Request For Dismissal Was Not Sought.**

EFF's submission boldly characterizes itself as "an organization working to protect . . . free expression in the digital world." (Doc. # 25 at 2.) EFF then asks the Court to convert the Defendant's Motion, which is exclusively seeks dismissal under Rule 12(b)(1) and Rule 12(h)(3) (Doc. # 20 at 12) into a request for summary judgment under Federal Rule of Civil Procedure 56 ("Rule 56") *after* the Motion has been fully briefed. (Doc. # 25 at 7, 14-15.)

It is simply unprecedented for *amicus curiae* to ask a Court to convert a fully briefed motion to brought under Rule 12(b)(1) and Rule 12(h)(3) into a request for summary judgment, which requires the application of different standards of analysis, affords the non-moving party certain favorable presumptions, and unquestionably requires notice to the non-moving party before any conversion can occur. *See Marquez v. Cable One, Inc.,* 463 F.3d 1118,1121 (10th Cir. 2006) (recognizing converting a motion brought under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") into a motion for summary judgment requires ten days notice be given to the opposing party so that additional evidence can be submitted). Thus, in a stroke of legal irony, an organization that claims to protect free expression seeks to unquestionably deny Righthaven the fundamental right of procedural due process by asking the Court to enter summary judgment

when this ground for relief was not requested in Defendant's Motion. EFF disregards the fundamental right of procedural due process because is seeks to advance its organizational goal of obtaining a decision from this Court that can qualify as an adjudication on the merits so that it can attempt bar future Righthaven actions through the doctrine of collateral estoppel. EFF's after the fact request to convert the Motion into a request for summary judgment must be rejected.

> **B.     EFF's Claim That Dismissal With Prejudice is Required Because the Merits are Intertwined With Jurisdiction Must be Rejected.**

EFF's overwhelming desire to obtain a dismissal with prejudice is next presented through its argument that such a result is compelled because the merits of Righthaven's copyright infringement claim are intertwined with the issue of subject matter jurisdiction. (Doc. # 25 at 11-14.) Once again, EFF is wrong. If anything, such circumstances support denying Defendant's Motion – not entering dismissal with prejudice.

When subject matter jurisdiction arguments are directed to or are inextricably intertwined with the merits of the claims at issue, the matter should be decided on summary judgment – not pursuant to Rule 12(b)(1). *See Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995); *see also Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1049 (9th Cir. 2004); *United States v. North Carolina,* 180 F.3d 574, 580 (4th Cir. 1999); *Bennett v. United States,* 102 F.3d 486, 488 (11th Cir. 1996); *Clark v. Tarrant County, Tex.,* 798 F.2d 736, 742 (5th Cir. 1986). Normally, the question of jurisdiction and the merits of an action are considered intertwined where the same statute provides the basis for both the subject matter of the federal court and the plaintiff's substantive claim for relief. *See Holt,* 46 F.3d at 1003; *see also Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003); *Morrison v. Amway Corp.,* 323 F.3d 920, 926 (11th Cir. 2003) (challenges to "employer" status under federal employment discrimination statutes); *Gould Elect. Inc. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000) (factual determination implicating subject matter jurisdiction under the Federal Tort Claims Act). A court should not resolve genuinely disputed facts where the question of jurisdiction is dependent upon the resolution of factual issues going to the merits. *Holt,* 46 F.3d at 1003; *Morrison,* 323 F.3d at 925; *Clark,* 798 F.2d at 742.

In view of the foregoing, if the jurisdictional inquiry is as intertwined as EFF suggests, the Court should allow the issue to be determined by the trier of fact. Alternatively, the Court must resolve the allegedly intertwined jurisdiction and merit issues under Rule 56. It should not do so under Rule 12(b)(1), which is the operative ground upon which the Defendant dismissal request is based. As discussed above, converting Defendant's request for dismissal into a motion for summary judgment after it has been fully briefed, as requested by EFF, would not only be unprecedented, but it would violate Righthaven's procedural due process rights. Accordingly, adopting EFF's argument that the jurisdictional question before the Court and the merits are inexorably intertwined requires Defendant's Motion be denied.

### C. EFF And CALA Fail to Dispute The Assignment, Considered Alone, Vests Righthaven With Standing to Maintain This Action, Which Represents an Accrued Copyright Infringement Claim.

Both EFF and CALA fail to challenge Righthaven's argument that the plain language of the Assignment, considered alone, satisfies the requirements to confer standing to maintain an accrued copyright infringement claim. *Silvers*, 402 F.3d at 889-90. Rather, Amici must rely upon the CAA's terms in order to implicitly request that Righthaven's standing under the Assignment be retroactively divested. This argument is completely illogical.

The Assignment clearly conveys ownership of the Work to Righthaven along with the right to sue for past, accrued infringement claims. While the CAA is argued to divest Righthaven's ownership of the Work based on certain terms, the CAA can only do so after the Assignment has conveyed ownership to Righthaven. Stated alternatively, MNG can only be licensed back rights under the CAA that are tantamount to ownership if Righthaven has ownership at one point in time. Righthaven's ownership of the Work conveyed by the Assignment, no matter how short a duration it is construed to be, still constitutes ownership at one point along with the express right to sue for past infringement. This is sufficient to confer standing to maintain this action for the past, accrued copyright infringement of the Work. *See Silvers*, 402 F.3d at 889-90. Amici's reliance on the CAA is merely an attempt to retroactively divest Righthaven of ownership along with the right to sue for accrued, past infringement claims that have been conveyed before any of the CAA's terms become effective upon the assigned

Work. While Righthaven acknowledges the CAA's terms may divest it of standing to sue for present and future infringement claims, these terms cannot retroactively divest it of standing to sue for past, accrued claims under existing case law. None of the Nevada Decisions specifically address this argument. Likewise, Amici fail to do so. Righthaven contends the Court should conclude it has standing to maintain this action under its interpretation and application of the decision in *Silvers*.

> **D. EFF Incorrectly Interprets And Misapplies The Elements of Collateral Estoppel in an Attempt Bar Righthaven's From Suing For Copyright Infringement Now or in The Future.**

In blatant attempt to secure a decision that not only dismisses this case and the related cases pending in this District, but that can also be relied upon in an attempt to bar Righthaven from suing any anywhere for copyright infringement in the future, EFF brazenly incorrectly interprets and misapplies the doctrine of collateral estoppel. (Doc. # 25 at 15-18.) In short, EFF asks the Court to give preclusive effect to the Nevada Decisions (*Id.* at 16-17), all of which have been dismissed for lack of subject matter and do not constitute adjudications on the merits. EFF also misleadingly asserts the Nevada Decisions involved identical issues to those before this Court (*Id.*) despite the fact that this case involves a different contract from the contract at issue in the Nevada Decisions. Quite frankly, EFF is inviting the Court to commit reversible error in order to achieve its overall strategic objective in its litigation campaign against Righthaven.

As explained by the Tenth Circuit, collateral estoppel will bar a claim for the following four elements are met:

> (1) the issue previously decided is *identical* with the one presented in the action in question, (2) the prior action has been *finally adjudicated on the merits*, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Frandsen v. Westinghouse Corp.,* 46 F.3d 975, 978 (10th Cir. 1995) (emphasis added); *In re Lombard,* 739 F.2d 499, 502 (10th Cir. 1984).

7

EFF's flawed issue preclusion analysis can be quickly dispensed of because, as determined by numerous federal circuits, a dismissal for lack of standing is not a decision on the merits.  *See Stalley v. Orlando Reg. Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."); *Torres-Negron v. J & N Records, LLC,* 504 F.3d 151, 164-65 (1st Cir. 2007) (entry of judgment for lack of subject matter jurisdiction failed to constitute a decision on the merits of copyright infringement allegations); *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1188 (11th Cir. 2003) (stating that a dismissal for lack of subject matter jurisdiction "plainly is not an adjudication on the merits that would give rise to a viable res judicata defense"); *Wages v. IRS,* 915 F.2d 1230, 1234 (9th Cir. 1990) ("A jurisdictional dismissal is not a judgment on the merits."); *Cook v. Peter Kiewit Sons Co.,* 775 F.2d 1030, 1035 (9th Cir. 1985) (holding that a dismissal for lack of subject matter jurisdiction divests the court of the power to make judgments relating to the merits of the case).

In agreement with the case law cited from the above circuits, the Tenth Circuit has summarized its decisional law on this issue as follows:

> A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.  *See, e.g., Albert v. Smith's Food & Drug Ctrs., Inc.,* 356 F.3d 1242, 1249 (10th Cir. 2004); *Martinez v. Richardson,* 472 F.2d 1121, 1126 (10th Cir. 1973) ("It is fundamental . . . that a dismissal for lack of jurisdiction is not an adjudication on the merits and therefore . . . must be without prejudice."). *See also* 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2373, at 406 (2d ed. 1995).  Since standing is a jurisdictional mandate, a dismissal with prejudice for lack of standing is inappropriate, and should be corrected to a dismissal without prejudice. *County of Mille Lacs v. Benjamin,* 361 F.3d 460, 464-65 (8th Cir.), *cert. denied,* 543 U.S. 956, 125 S.Ct. 408, 454, 160 L.Ed.2d 318 (2004).

*Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1216 (10th Cir. 2006).  The panel in *Brereton* further observed that "[t]his rule has deep common law roots , and is now preserved in Fed.R.Civ.P. 41(b)." *Id.* (citing *Costello v. United States,* 365 U.S. 265, 285-86 (1961)).  Federal Rule of Civil Procedure 41(b) ("Rule 41(b)") expressly provides that a dismissal for lack of

jurisdiction is deemed without prejudice and does not constitute an adjudication on the merits. FED. R. CIV. P. 41(b).

Despite the above controlling authority, EFF disingenuously asserts the Nevada Decisions, all of which have been dismissed for lack of subject matter jurisdiction, qualify as final adjudications on the merits. (Doc. # 25 at 16-17.) EFF reaches this conclusion by first slyly characterizing the Nevada Decisions as "final adjudications." (*Id.* at 16.) EFF then advises the Court that each of the Nevada Decisions have been "reduced to a judgment" and that "[t]hey remain final judgments regardless of Righthaven's pending appeals . . . ." (*Id.*) These statements constitute misleading acts of linguistic gamesmanship in an attempt to color the Nevada Decisions as final adjudications on the merits. The above cited controlling authority from the Tenth Circuit, and the cited decisions from numerous other circuits, as well as the express language of Rule 41(b) unequivocally establish the Nevada Decisions were not adjudications on the merits given each case was dismissed for lack of subject matter jurisdiction. Because the Nevada Decisions do not constitute adjudications on the merits, collateral estoppel cannot apply because the second element is not met. *See Frandsen,* 46 F.3d at 978 (stating the second collateral estoppel element requires that "the prior action has been finally adjudicated on the merits . . . .").

Apparently aware the Nevada Decisions do not constitute adjudications on the merits under the law of the Tenth Circuit, EFF nevertheless attempts to persuade the Court that a dismissal for lack of jurisdiction that is "intertwined with the merits of issue of ownership . . ." constitutes a dismissal with prejudice. (Doc. # 25 at 16-17.) EFF's argument is completely irreconcilable with the plain language of Rule 41(b), which states that a "unless the court in its order for dismissal otherwise specifies . . ." a dismissal for lack of jurisdiction does not constitute an adjudication on the merits. FED. R. CIV. P. 41(b). None of the Nevada Decisions state they are being dismissed with prejudice. Thus, the plain language of Rule 41(b) dictates the Nevada Decisions are without prejudice and do not constitute adjudications on the merits.

EFF's attempt to morph the Nevada Decisions into being with prejudice based on the contention they were necessarily intertwined with the merits is completely counterintuitive to the

9

necessary implication of a court concluding it lacks subject matter jurisdiction over a case. As noted by the Tenth Circuit, "dismissal for lack of jurisdiction should be without prejudice because the court, having determined it lacks jurisdiction over the action, is *incapable* of reaching a decision on the merits of the underlying claim. *See Brereton,* 434 F.3d at 1218 (citing *Frederiksen v. City of Lockport,* 384 F.3d 437, 438 (7th Cir. 2004) ("A suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction can render.")).

Even assuming the Nevada Decisions did constitute as adjudications on the merits (which they are not), *none* were based upon the CAA, which is the contract at issue in this case. As stated earlier, the CAA that describes, among other things, the nature of exploitation rights licensed back to MNG in works assigned to Righthaven. The Nevada Decisions were based on a completely different contract with a different party. Specifically, the Nevada Decisions determined that Righthaven lacked standing given the original terms of a Strategic License Agreement (the "SAA") between the company and Stephens Media LLC ("Stephens Media"). It is a completely different contract involving a different party from the CAA before this Court. Therefore, there is an absence of identical issues required to properly apply the doctrine of collateral estoppel under controlling Tenth Circuit precedent. *See Frandsen,* 46 F.3d at 978. For at least these reasons, EFF's collateral estoppel arguments fails.

    **E. CALA's Argument That Righthaven is a Law Firm Operating Under Illegal Contingency Fee Agreement Masked as an Assignment is Without Merit.**

CALA dedicates a significant portion of its voluminous brief to asserting that the Assignment is an illegal contingency fee agreement being enforced by a law firm. (Doc. # 21 at 9-24.) CALA is simply wrong.

What CALA attempts to explain in scores of pages is actually a fairly simple concept. The cases cited by the CALA stand for the proposition that a bare legal claim to recovery cannot be validly assigned. *See, e.g., Nelson v. Smith,* 154 P.2d 634, 639-40 (Utah 1944). Often these circumstances involve collection agencies seeking to recover debt on behalf of a client while retaining a percentage of any recovered proceeds. *Id.* These situations also frequently include

actions that either come dangerously close to or actually constitute the unauthorized practice of law. *Id.* These cases, however, are completely inapplicable.

Here, Righthaven has been assigned all right, title and interest in and to the Work along with the right to seek redress for past, present and future infringements. An assignment transfers all rights, title and interest in and to the assigned property. *See Key Maps, Inc. v. Pruitt,* 470 F. Supp. 33, 38 (S.D. Tex. 1978); *see also Pressley's Estate v. Russen,* 513 F. Supp. 1339, 1350 (D. N. J. 1981) ("An assignment passes legal and equitable title to the property . . . ."). Thus, the fundamental difference between the facts presented to this Court and those contained in the numerous cases cited by CALA is that Righthaven has been conveyed ownership of the intangible property (the Work) along with the right to sue for infringement of the exclusive rights conferred under the Copyright Act. Therefore, Righthaven is clearly unlike the collection agency at issue in *Nelson* where the court expressly noted that when conferred the right to collect a debt "the collection agency has absolutely no interest, either legal or beneficial, in the claim." *Nelson,* 154 P.2d at 639-40. Also, as explained earlier, the Assignment in this case also complies with the requirements of *Silvers* with regard to transferring ownership along with the right to sue for past, accrued claims.

Glaringly absent from CALA's brief is the citation to case law that holds copyright ownership cannot be assigned and sued upon by the assignee. The reason for this lack of case law is crystal clear – none exits. In fact, the law compels just the opposite conclusion – that copyright ownership can be assigned and sued upon, whether for a past, present or future infringement claim if the assignment so provides. *Silvers*, 402 F.3d at 885, 890.

CALA's attempt to shoehorn Righthaven into the clearly inapplicable law cited in its brief is blatantly obvious. Righthaven is not a law firm. While it has in-house counsel, all cases are currently handled by outside counsel licensed to practice in this jurisdiction. The fact that Righthaven and MNG Media may share the proceeds of any recovery related to copyright litigation based on assigned works neither renders the Assignment unlawful nor does it constitute an illicit contingency fee agreement. As the U.S. Supreme Court has held, an assignee of an accrued cause of action has standing to bring suit in his or her own name even if there is a

11

promise to remit a portion of any proceeds recovered to the assignor. *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 275 (2008)("Petitioners . . . say [] the assignments in this litigation constitute nothing more than a contract for legal services. We think this argument is overstated. There is an important distinction between simply hiring a lawyer and assigning a claim to a lawyer (on the lawyer's promise to remit litigation proceeds). The latter confers a property right (which creditors might attach); the former does not."); *see also In re Brooms*, 447 B.R. 258, 265 (9th Cir. 2011) ("And for collection purposes, the assignee who holds legal title to the debt according to substantive law is the real party in interest, even though the assignee must account to the assignor for whatever is recovered in the action.")

Likewise, CALA's argument that Righthaven licenses back some rights to the assignor under the CAA does not render the Assignment invalid. Parties routinely enter into complex agreements transferring intellectual property rights. It is well established that such transfers are not invalid simply because the original owner retains some rights. *See, e.g., Vittoria N. Am., L.L.C. v. Euro-Asia Imports Inc.*, 278 F.3d 1076, 1082 (10th Cir. 2001) (holding that a "thirty-day reassignment clause does not establish that [the trademark assignment] is a sham") (citing *Premier Dental Prods. Co. v. Darby Dental Supply Co.,* 794 F.2d 850, 855-56 (3d Cir. 1986) ("[L]imitations in an otherwise valid assignment agreement do not invalidate it")); *Int'l Armament Corp. v. Matra Manurhin Int'l., Inc.*, 630 F. Supp. 741, 746 (E.D. Va. 1986) ("Plaintiff's ownership of the marks is subject to conditions on its license agreement with Carl Walther, which make that distributorship revocable by Walther for violation of 'essential' clauses. Such limitations on an assignment do not invalidate or make it a sham, however.")

Moreover, the Ninth Circuit, more than 40 years ago, rejected the argument that an assignment made solely to facilitate a lawsuit is somehow improper. In *Rawlings v. Nat'l Molasses Co.*, 394 F.2d 645, 648 (9th Cir. 1968),[1] the Ninth Circuit held:

---

[1] Patent cases, such as *Rawlings*, are highly instructive here. As the Ninth Circuit held in *Silvers,* courts "should interpret the Copyright Act consistently with the requirement of the Patent Act" because of the fundamental similarity between the two types of intellectual property rights. 402 F.3d at 888; *see also Davis v. Blige*, 505 F.3d 90, 104 (2nd Cir. 2007) ("Although patent and copyright law function somewhat differently, courts considering one have historically looked to

> Defendants make the further point that the arrangement between plaintiff and [assignor] was accomplished for the sole purpose of permitting plaintiff to bring this action without joining [assignor] as a party plaintiff or defendant. We assume that to be true. Defendants urge that the transaction was a sham. The documents were in fact executed and nothing in the record indicates that as between [assignor] and plaintiff they are either void or voidable. If not, then the purpose underlying their execution is of no concern to the defendants.

(*Id.*) Thus, the Ninth Circuit long ago rejected the argument that the purpose behind a business transaction or a business itself has any bearing on the issue of standing.

Further, courts in numerous patent cases have rejected the argument that an otherwise valid transfer of intellectual property rights made to confer standing is somehow defective, or a sham, because the motivating business purpose is litigation. For example, in a highly analogous case in the patent context, the Federal Circuit held that patent assignments made for the sole purpose of bringing suit are nonetheless valid. *SGS-Thomson Microelectronics, Inc. v. Int'l Rectifier Corp.*, 1994 WL 374529 (Fed. Cir. Jul. 14, 1994). There, the defendant urged the court to ignore the patent assignment between related corporate entities because, like here, the agreement was entered for the purpose of conferring standing to sue for infringement. The defendant also argued "sham" because the assignment required the plaintiff to assign the patents back at the conclusion of the litigation, a much greater restriction than that present in this case. *Id.* at *6. The court rejected defendant's arguments, ruling that "[t]his court and other courts have held that an assignment that explicitly provides for possible transfer back to the assignor is nevertheless effective to give the assignee standing." *Id.* The court further held that:

> the district court erred in granting summary judgment on the ground that the assignments of the … patents were shams because the sole purpose of the assignment was to facilitate litigation. In so ruling, the trial court ignored the express language in the assignments and in effect created a new requirement, not found in any case law, that a patent assignment must have an "independent business purpose."

*Id.* Thus, the Federal Circuit explicitly ruled that the motive or purpose of an assignment is irrelevant to the assignee's standing to enforce the exclusive rights conferred and that the assignor's ability to re-acquire its rights does not deprive the assignee of its right to bring suit.

---

the other for guidance where precedent is lacking . . . . Licenses in patent and copyright function similarly . . . .").

13

*Id.* at *6-7. If the Court were to follow this reasoning, as *Silvers* holds it should, Righthaven is the sole current owner of the copyright and not MNG despite CALA's arguments to the contrary.

In yet another case decided by the Federal Circuit, the court held that a grant of patent rights was sufficient to confer standing notwithstanding the fact that the grantor retained several rights relating to the patent. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir. 1991). In *Vaupel*, the grantor retained "1) a veto right on sublicensing by Vaupel; 2) the right to obtain patents on the invention in other countries; 3) a reversionary right to the patent in the event of bankruptcy or termination of production by Vaupel; and 4) a right to receive infringement damages." *Id.* at 875. Despite the grantor's retention of these rights, the court held that "none of these reserved rights was so substantial as to reduce the transfer to a mere license or indicate an intent not to transfer all substantial rights." *Id.* Here, as in *Vaupel*, any rights arguably retained by MNG, which Defendant has not established through the CAA, do not negate the exclusive rights conferred to Righthaven.

As the foregoing arguments demonstrate, CALA's attempt to invalidate or render the Assignment as an illegal contingency fee agreement or on the ground that it constitutes the unauthorized practice of law must be rejected. If CALA's skewed version of the Assignment were remotely viable, it would direct the Court to some supporting authority under copyright law. CALA has resorted to a hodgepodge of collection agency cases from states throughout the nation in an attempt to add a modicum of credibility to its arguments. CALA's arguments and cited cases, however, simply cannot withstand even a threshold of scrutiny when faced with more applicable copyright and patent decisions. In short, while CALA has advanced some rather lengthy arguments in an attempt to render the Assignment invalid or unenforceable, these arguments do not justify dismissing this action for lack of subject matter jurisdiction.

### F. CALA's Argument the Assignment is Invalid Under State Law Without Applying Any Applicable Law Must be Rejected.

CALA also attempts to persuade the Court to invalidate the Assignment under "state law". (Doc. # 25 at 36-37.) CALA's argument, however, fails to apply any applicable state law to support its contention. Accordingly, CALA's argument is completely devoid of merit.

"Principles of contract law are generally applicable in the construction of copyright assignments, licenses and other transfers of rights." *Key Maps, Inc. v. Pruitt,* 470 F. Supp. 33, 38 (S.D. Tex. 1978). CALA correctly notes that a district court should apply state law to resolve contract-related matters even where copyrights are involved. (Doc. # 25 at 36, citing *Fantastic Flakes, Inc. v. Pickwick Int'l, Inc.,* 661 F.2d 479, 483 (5th Cir. 1981).

CALA, however, should have reviewed the CAA and applied applicable law before advancing its state law argument. Had CALAD done so, it would have discovered that the CAA contains a choice of law provision failed to review the CAA expressly states that it is to be governed by and construed in accordance with *Nevada law.* (CAA at 8 § 19, "This Agreement . . . shall be interpreted in accordance with the laws of the State of Nevada without regard to its conflict of laws principals.".) Despite this provision, CALA has failed to set forth any arguments that could be construed as rendering the Assignment invalid under Nevada law or that the choice of law provision contained in the CAA is invalid or unenforceable. In fact, CALA fails to apply any specific state law in support of its argument. Accordingly, CALA's state law invalidity and unenforceability arguments must be summarily rejected.

### III.   CONCLUSION

For the foregoing reasons, Righthaven respectfully requests the Court find that it has standing to maintain this action despite the arguments advance by Amici. Alternatively, Righthaven asserts that if subject matter jurisdiction does not exist, then its Complaint must be dismissed without prejudice.

Dated this 23rd day of August, 2011.

> By: /s/ Shawn A. Mangano
> SHAWN A. MANGANO ESQ.
> SHAWN A. MANGANO, LTD.
> 9960 West Cheyenne Avenue, Suite 170
> Las Vegas, Nevada  89129-7701
>
> *Attorney for Plaintiff Righthaven LLC*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that on this 23rd day of August, 2011, I attempted to file the foregoing document via the Court's CM/ECF system, but was unable to do so as a result of an Internet service provided-related disruption, whereby I thereafter caused a copy of the **PLAINTIFF RIGHTHAVEN LLC'S OMNIBUS REPSONSE TO *AMICI CURIAE* BRIEFS FILED BY ELECTRONIC FRONTIER FOUNDATION AND CITIZENS AGAINST LITIGATION ABUSE, INC. WITH CERTIFICATE OF SERVICE** to be to be served by the Court's CM/ECF system on this 24th day of August, 2011.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas. Nevada  89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851
shawn@manganolaw.com