**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:11-cv-00830-JLK

RIGHTHAVEN, LLC,

      Plaintiff,

v.

LELAND WOLF, an individual, and
IT MAKES SENSE BLOG, an entity of unknown origin and nature,

      Defendants.

---

**BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION IN
SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION**

---

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

INTEREST OF AMICUS ................................................................................................... 2

BACKGROUND ................................................................................................................. 4

ARGUMENT ...................................................................................................................... 7

I.   RIGHTHAVEN DOES NOT HAVE THE RIGHT TO SUE FOR COPYRIGHT
     INFRINGEMENT. ..................................................................................................... 7

     A.   Righthaven's Copyright Alliance Agreement Does Not Confer Any Exclusive Rights in
          the TSA Photo. ..................................................................................................... 7

     B.   Without an Exclusive Right, Righthaven Does Not Have a Cause of Action. ................... 9

     C.   Because Righthaven Had No Standing When It Filed Its Complaint, Its Claim Must be
          Dismissed With Prejudice. ................................................................................... 11

     D.   Alternatively, This Court Should Grant Summary Judgment on the Issue of Ownership. 14

II.  UNDER THE DOCTRINE OF COLLATERAL ESTOPPEL, PLAINTIFF MAY NOT
     RELITIGATE THE ISSUE OF OWNERSHIP. ..................................................... 15

     A.   The Copyright Ownership Issue Here is Identical to the Ownership Issue Litigated in
          Nevada. ............................................................................................................... 15

     B.   The Nevada District Court Decisions Are Final Adjudications. ........................ 16

     C.   Righthaven Had a Full and Fair Opportunity to Litigate in Nevada. ................ 17

CONCLUSION ................................................................................................................. 18

## TABLE OF AUTHORITIES

### Federal Cases

*Augustine v. United States*,
   704 F. 2d 1074 (9th Cir. 1983) .................................................................13

*Barrows v. Jackson*,
   346 U.S. 249 (1953) ...............................................................................12

*Brereton v. Bountiful City Corp.*,
   434 F.3d 1213 (10th Cir. 2006) ..............................................................17

*B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*,
   439 F.3d 653 (10th Cir. 2006) ................................................................15

*Clark v. Tarrant County, Texas*,
   798 F. 2d 736 (5th Cir. 1986) .................................................................12

*Davis v. Blige*,
   505 F.3d 90 (2d Cir. 2007) .....................................................................10

*Davis v. City of Aurora ex rel. City Council*,
   2011 WL 2799539 (D.Colo., July 14, 2011) ..........................................13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ...............................................................................13

*Garman v. Campbell County School Dist. No. 1*,
   630 F. 3d 977 (10th Cir. 2010) ...............................................................12

*GHK Exploration Co. v. Tenneco Oil Co.*,
   857 F. 2d 1388 (10th Cir. 1988) .............................................................12

*Harvey by Blankenbaker v. United Transp. Union*,
   878 F.2d 1235 (10th Cir. 1989) ..............................................................15

*Holt v. United States*,
   46 F.3d 1000 (10th Cir.1995) .................................................................13

*HyperQuest, Inc. v. N'Site Solutions, Inc.*,
   559 F. Supp. 2d 918 (N.D. Ill. 2008), *aff'd* 632 F.3d 377 (7th Cir. 2011) .................10, 17

*Kasap v. Folger Nolan Fleming & Douglas, Inc.*,
    166 F.3d 1243 (D.C.Cir.1999)................................................................17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................11

*Montana v. United States*,
    440 U.S. 147 (1979) ......................................................................15

*Morris v. Khadr*,
    415 F. Supp. 2d 1323 (D. Utah 2006) ..................................................13

*Morrison v. Amway Corp.*,
    323 F. 3d 920 (11th Cir. 2003) ..........................................................12

*Raylon LLC v. EZ Tag Corp.*,
    No. 6:09-cv-00357 (E.D. Tex. Mar. 9, 2011) .........................................5

*Rent Stabilization Ass'n v. Dinkins*,
    5 F.3d 591 (2d Cir. 1993) ................................................................17

*Righthaven LCC v. Jama*,
    No. 2:10-cv-01322-JCM-LRL, 2011 WL 1541613 (D. Nev. Apr. 22, 2011) ....................3

*Righthaven LLC v. Barham*,
    No. 2:10-cv-02150, 2011 WL 2473602 (D. Nev. June 22, 2011) ......................................1

*Righthaven LLC v. Democratic Underground, LLC*,
    No. 2:10-cv-01356, __ F. Supp. 2d __,
    2011 WL 2378186 (D. Nev. June 14, 2011) ...............................................*passim*

*Righthaven LLC v. DiBiase*,
    No. 2:10-cv-01343, 2011 WL 2473531  (D. Nev. June 22, 2011) .....................1, 3, 14, 16

*Righthaven LLC v. Hill*,
    No. 1:11-cv-00211, (D. Colo. Apr. 7, 2011) ...........................................5, 6, 7

*Righthaven LLC v. Hoehn*,
    No. 2:11-cv-00050, __ F. Supp. 2d __,
    2011 WL 2441020 (D. Nev. June 20, 2011) ...............................................*passim*

*Righthaven LLC v. MoneyReign, Inc.*,
    No. 2:10-cv-00350 (D. Nev. Mar. 13, 2010)...........................................5

*Righthaven LLC v. Mostofi*,
    No. 2:10-cv-01066, 2011 WL 2746315 (D. Nev. July 13, 2011)................................1, 16

*Righthaven LLC v. Pahrump Life*,
    No. 2:10-cv-01575-JCM (D. Nev. July 29, 2011).........................................................1, 3

*Righthaven LLC v. Sumner*,
    No. 1:11-cv-00222-JLK (D. Colo. May 19, 2011).............................................................2

*Righthaven v. Gardner*,
    No. 1:11-cv-00777-JLK (D. Colo. March 25, 2011).........................................................6

*Sil-Flo, Inc. v. SFHC, Inc.*,
    917 F.2d 1507 (10th Cir. 1990) ...................................................................................17

*Silvers v. Sony Pictures Entm't, Inc.*,
    402 F.3d 881 (9th Cir. 2005) .........................................................................10, 11, 16

*Singleton v. Wulff*,
    428 U.S. 106 (1976) ....................................................................................................12

*St. Louis Baptist Temple, Inc. v. FDIC*,
    605 F.2d 1169 (10th Cir. 1979) .....................................................................................4

*Sybersound Records Inc. v. UAV Corp*,
    517 F.3d 1137 (9th Cir. 2008) .....................................................................................13

*Tilton v. Richardson*,
    6 F. 3d 683 (10th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994) ............................12, 13

*TransWestern Publ'g Co., v. Multimedia Mktg. Assocs.*,
    133 F.3d 773 (10th Cir.1998) .....................................................................................13

*United States ex rel Grynberg v. Praxair, Inc.*,
    389 F.3d 1038 (10th Cir. 2004) ...................................................................................14

*United States v. Chalupnik*,
    514 F.3d 748 (8th Cir. 2008) .......................................................................................10

*United States v. Mendoza*,
    464 U.S. 154 (1984) ....................................................................................................15

*Wexler v. United States*,
    961 F.2d 221, 1992 WL 74167 (10th Cir. 1992).............................................................16

*Wheeler v. Hurdman*,
    825 F.2d 257 (10th Cir.1987) ...................................................................13, 14

*Williamson v. Tucker*,
    645 F. 2d 404 (5th Cir. 1981) ..............................................................................12

## Federal Statutes

17 U.S.C. § 101 ...........................................................................................................8

17 U.S.C. § 106 ..........................................................................................4, 7, 10, 16

17 U.S.C. § 501(b)..............................................................................................*passim*

28 U.S.C. § 1927 ......................................................................................................14

## Federal Rules

Fed. R. Civ. Pro. 11 .................................................................................................14

Fed. R. Civ. Pro. 12(b)(1).........................................................................................15

Fed. R. Civ. Pro. 12(b)(6).........................................................................................14

Fed. R. Civ. Pro. 56 .................................................................................................14

## Treatises

18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
    *Federal Practice & Procedure: Jurisdiction & Related Matters* (1981) ..........................16

William Patry, 6 *Patry on Copyright* §21:22 (2009).................................................11

## Other Authorities

*Copyright Trolls*, Electronic Frontier Foundation, https://www.eff.org/issues/copyright-trolls.....4

David Kravetz, *EFF Decries "Sham" Copyright Troll Legal Tactics*,
    Wired.com, April 19, 2011 .......................................................................................4

Steven A. Gibson & J.D. Lowry, *The Need for Speed: The Path to Statutory Damages in Copyright* (2006) .....................................................................................................4

## INTRODUCTION

The Electronic Frontier Foundation files this amicus curiae brief to urge the Court to bring Righthaven's copyright litigation campaign against websites and bloggers like Defendant Leland Wolf to a quick and decisive end. The Copyright Alliance Agreement accompanying Defendant's Supplemental Memorandum, Dkt. 20, Ex. A, shows that Media News Group, Inc., publisher of the *Denver Post*, did not transfer any of the exclusive rights under the Copyright Act to Plaintiff Righthaven LLC ("Righthaven"). Accordingly, Righthaven is not "owner of an exclusive right under a copyright," 17 U.S.C. § 501(b), and, therefore, is not entitled to sue Mr. Wolf or any of the other defendants in the dozens of lawsuits it has filed in this District based on *Denver Post* copyrights.

Mr. Wolf's Motion to Dismiss comes before this Court in the wake of the dismissals of nearly identical suits filed by Righthaven in the District of Nevada:

- *Righthaven LLC v. Democratic Underground, LLC*, No. 2:10-cv-01356-RLH, __ F. Supp. 2d __, 2011 WL 2378186 (D. Nev. June 14, 2011)

- *Righthaven LLC v. Hoehn*, No. 2:11-cv-00050-PMP, __ F. Supp. 2d __, 2011 WL 2441020 (D. Nev. June 20, 2011)

- *Righthaven LLC v. DiBiase*, No. 2:10-cv-01343-RLH, 2011 WL 2473531  (D. Nev. June 22, 2011)

- *Righthaven LLC v. Barham*, No. 2:10-cv-02150-RLH, 2011 WL 2473602 (D. Nev. June 22, 2011)

- *Righthaven LLC v. Mostofi*, No. 2:10-cv-01066-KJD, 2011 WL 2746315 (D. Nev. July 13, 2011)

- *Righthaven LLC v. Pahrump Life*, No. 2:10-cv-01575-JCM (D. Nev. July 29, 2011), Minutes of July 27, 2011 Show Cause Hearing, Dkt. 63

These suits were dismissed because the Court found that the "Strategic Alliance Agreement" between Stephens Media LLC (publisher of the *Las Vegas Review-Journal*) and Righthaven (which used language substantively identical to the CAA) failed to give ownership of the copyrights to Righthaven. As explained below, these decisions are not only persuasive authority,

but are binding on Righthaven under the doctrine of collateral estoppel.  As such, Mr. Wolf's motion should be granted.

Moreover, the Court should decline Righthaven's invitation to dismiss this case without prejudice. Righthaven is plaintiff in fifty-seven cases pending in this district, thirty-four of which are still pending but have been stayed pending resolution of Mr. Wolf's Motion to Dismiss.  *See, e.g.*, Order, *Righthaven LLC v. Sumner*, No. 1:11-cv-00222 (D. Colo. May 19, 2011), Dkt. 21. Since each alleges infringement of the same work and is premised on the same sham assignment, the issues discussed below apply to all of these cases. Because MNG may not transfer the bare right to sue, Righthaven does not have a valid cause of action in any of these lawsuits.  Not surprisingly, it would like to avoid the natural result of its improper tactics – an award of attorneys' fees to the numerous prevailing defendants.  Based on arguments Righthaven has made in other cases, Amicus suspects that Righthaven believes that a dismissal without prejudice will divest this Court of the ability to make such an award.  Righthaven is wrong on this point but, in any event, binding and persuasive case law, not to mention principles of fundamental fairness and judicial economy, mandate a clear and final adjudication of this matter, either via a dismissal with prejudice or, following the Tenth Circuit's preferred practice, summary judgment.

For the reasons set forth below, this Court should bring Righthaven's litigation campaign to an end with adjudication on the merits against Righthaven in all its pending cases in this district.

## INTEREST OF AMICUS

EFF is a non-profit, member-supported legal services organization working to protect consumer interests, innovation and free expression in the digital world.  *See generally* Electronic Frontier Foundation, https://www.eff.org.  EFF and its thousands of dues-paying members have a strong interest in assisting the courts and policy-makers in striking the appropriate balance between intellectual property and the public interest.

EFF and its members have a special interest in this case because Righthaven's litigation campaign implicates important copyright policy issues. This case will call on this Court to address whether a non-publishing litigation company may build a business suing bloggers and websites based on a purported transfer of the bare right to sue. If this case continues past the present motion, the Court may also examine whether the fair use doctrine allows bloggers and websites to reference, discuss, comment upon and transform copyrighted newspaper articles and photos. As Nevada District Judge James Mahan found, "Plaintiff's litigation strategy has a chilling effect on potential fair uses of Righthaven-owned[1] articles, diminishes public access to the facts contained therein, and does nothing to advance the Copyright Act's purpose of promoting artistic creation." *Righthaven LCC v. Jama*, No. 2:10-cv-01322-JCM-LRL, 2011 WL 1541613, at *5 (D. Nev. Apr. 22, 2011).

In addition, EFF has played a significant role defending against Righthaven's numerous copyright infringement lawsuits. In particular, EFF's work as counsel to defendants in the District of Nevada led to the disclosure of the Strategic Alliance Agreement ("SAA") between Righthaven and its first newspaper co-conspirator, Stephens Media LLC (publisher of the *Las Vegas Review-Journal*). *See* Order on Req. to Unseal, *Democratic Underground*, No. 2:10-cv-01356-RLH, 2011 WL 1457743 (D. Nev. 2011) (unsealing the SAA).[2] The SAA revealed that

---

[1] This decision was issued before the evidence that Righthaven had intentionally misled the Nevada district court about its ownership came to light. *See* Sanctions Minute Order, *Democratic Underground*, No. 2:10-cv-01356-RLH (D. Nev. July 14, 2011), Dkt. 138 (holding that "Righthaven made intentional misrepresentations to the Court"); *see also* Tr. of Hr'g on Order to Show Cause at 15, *Democratic Underground*, No. 2:10-cv-01356-RLH (D. Nev. July 15, 2011), Dkt. 137 (Righthaven "claimed that it had various exclusive rights when it knew that the ability to exercise those rights were retained exclusively by Stephens Media. It constantly and consistently refused to produce the [SAA] agreement.").

[2] EFF is defense counsel for Democratic Underground in *Righthaven LLC v. Democratic Underground*, No. 2:10-cv-01356-RLH (D.Nev. filed Aug. 10, 2010), as well as counsel to it as amicus in *Righthaven LLC v. Pahrump Life*, No. 2:10-cv-01575 (D. Nev. filed Sept. 14, 2010) and defense counsel in *Righthaven LLC v. DiBiase*, No. 2:10-cv-01343 (D. Nev. filed Aug. 9, 2010).

Righthaven did not have any of the exclusive rights set forth in Section 106 of the Copyright Act, and therefore was not authorized to sue for copyright infringement.

Outside the courtroom, EFF offers resources for those caught up in these cases who are seeking counsel and trying to understand the nature of the litigation in which they have become embroiled,[3] and has also played a leading role in educating the public about the latest developments in these litigation cases.[4] In short, EFF has been deeply involved in these cases almost from their inception, allowing it to offer the Court a unique perspective.

## BACKGROUND

As early as 2006, Las Vegas attorney Steven A. Gibson wrote about what he saw as a gold mine untapped by copyright holders. Steven A. Gibson & J.D. Lowry, *The Need for Speed: The Path to Statutory Damages in Copyright* (2006), http://www.lbbslaw.com/uploadedFiles/ Attorneys/The%20Need%20For%20Speed(2).pdf. Multiplying estimates of online infringement by the statutory damages available under the Copyright Act, Mr. Gibson saw "quadrillions" of dollars in potential recovery. In short, he saw a path a quick riches, if only the copyright owners could be persuaded to file suit.

Apparently, however, copyright holders did not wish to undertake the burdens of litigation. So Mr. Gibson imagined up a new scheme to cash in on those "quadrillions in statutory damages: Righthaven LLC. On January 18, 2010, Mr. Gibson (through his shell company Net Sortie Systems LLC), along with the family of Warren Stevens (through their investment vehicle SI Content Monitor LLC), executed the Righthaven Operating Agreement ("RHOA"),[5] the foundational document of the company. The RHOA candidly describes its

---

[3] *See e.g., Copyright Trolls*, Electronic Frontier Foundation, https://www.eff.org/issues/copyright-trolls.
[4] *See, e.g.*, David Kravetz, *EFF decries "sham" Copyright Troll Legal Tactics*, Wired.com, April 19, 2011, *http://www.wired.com/threatlevel/2011/04/eff-righthaven-sham/*
[5] The RHOA was filed in several Nevada cases. *See, e.g.*, *Democratic Underground*, No. 2:10-cv-01356 (D. Nev. May 20, 2011), Dkt. 107, Ex. 1. This Court may take judicial notice of the RHOA. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (court

business objectives.  Righthaven seeks a "limited, revocable assignment (with a license-back) of copyright from third Persons."  RHOA § 3.2(c).  It then obtains copyright registrations listing it as the copyright owner and files lawsuits with the understanding that the real copyright owner "would ultimately enjoy the copyright registration."  *Id*. §§ 3.2(c), (d).  Righthaven's initial partner was Stephens Media (also part of the Stevens family investments), the publisher of the *Las Vegas Review Journal*.

Within two months, Righthaven began filing dozens of copyright infringement suits.  *See, Complaint, Righthaven LLC v. MoneyReign, Inc.*, No. 2:10-cv-00350 (D. Nev. Mar. 13, 2010). The courts forced to deal with these suits have recognized their profiteering nature. *See* Order on Mot. for Recons. at 2, *Democratic Underground*, No. 2:11-cv-01356 (D. Nev. Apr. 14, 2011), Dkt. 94 ("Righthaven and Stephens Media have attempted to create a cottage industry of filing copyright claims, making large claims for damages and then settling claims for pennies on the dollar."); *see also* Order on Mot. for Enlargement of Time to File a Resp. at 2, *Righthaven LLC v. Hill*, No. 1:11-cv-00211 (D. Colo. Apr. 7, 2011), Dkt. 16 (Righthaven's business plan is "encouraging and exacting settlements from Defendants cowed by the potential costs of litigation and liability.");[6] *see generally* Mem. Op. and Order at 5, *Raylon LLC v. EZ Tag Corp.*, No. 6:09-cv-00357 (E.D. Tex. Mar. 9, 2011), Dkt. 115 (lambasting "plaintiffs who file cases with extremely weak infringement positions in order to settle for less than the cost of defense and have no intention of taking the case to trial.  Such a practice is an abuse of the judicial system and threatens the integrity of and respect for the courts.").

To conceal its scheme, Righthaven tried to obscure the role of Stephens Media in the litigation. See *Democratic Underground*, 2011 WL 2378186, at *6 ("Righthaven led the district

---

properly may take judicial notice of its own records and those of other courts).
[6] Counsel for defendant Brian Hill in *Righthaven LLC v. Hill*, David S. Kerr of Santangelo Law Offices, P.C., also serves as counsel for amicus Electronic Frontier Foundation in the present case.

judges of [the District of Nevada] to believe that it was the true owner of the copyright in the relevant news articles. . . . Further, Righthaven also failed to disclose . . . Stephens Media's right to proceeds from these lawsuits."); *see also* Tr. of Hr'g on Order to Show Cause at 15-17, *Democratic Underground*, No. 2:10-cv-01356 (D. Nev. July 14, 2011), Dkt. 137 (discussing "a concerted effort to hide Stephens Media's role in this litigation" and imposing sanctions of $5,000 on Righthaven).

Meanwhile, Righthaven sought to expand its operations.  On September 22, 2010, Righthaven and Media News group ("MNG") signed the Copyright Alliance Agreement ("CAA").  Months later, on December 1, 2010, MNG executed a purported "Copyright Assignment" for a photograph titled "TSA Agent performs enhanced pat-downs" (the "TSA photo"), which purported to assign "all copyrights *requisite* . . . for purposes of Righthaven being able to claim ownership as well as the right to seek redress for past, present, and future infringements . . . ."  Dkt. 20, Ex. B (emphasis added).  However, the use of the vague term "requisite" disguises the truth: as discussed below, the CAA explains what happened "[d]espite any Copyright Assignment."  Together, these contracts transfer nothing more than the naked right to sue, which is insufficient to support a claim for copyright infringement.  17 U.S.C. § 501(b).

On January 20, 2011, Righthaven launched its Colorado litigation campaign.  Righthaven filed 57 lawsuits in this District based on its sham assignment of the TSA photo, 34 of which remain open.  Most of the closed cases were settled, extracting revenue for Righthaven's bottom line based upon a copyright Righthaven did not own.[7]  Indeed, Righthaven's proposed settlement terms expose Righthaven's lack of confidence in its ownership position, requiring the *defendant*

---

[7] In two cases, Righthaven voluntarily dismissed its claim: *Righthaven v. Hill, supra* and *Righthaven v. Gardner*, Case No. 1:11-cv-00777-JLK.  In *Gardner,* Righthaven sued a reporter who wrote an article *about* the Righthaven lawsuits, illustrated with an excerpt *from the court record. See Gardner*, Complaint, Exhibit 2 (Dkt. 1-2).

to "covenant, warrant, and represent that Righthaven owns the copyright." *Righthaven LLC v. Hill*, *supra*, Proposed Settlement Agreement, Dkt. 30 at 1. Ordinarily, it is the plaintiff—the purported owner—who would make such a representation. Righthaven's proposed terms also purport to prohibit the defendants from "contest[ing] Righthaven's or Righthaven's Affiliates' Rights in and to the Righthaven Copyright." *Id.*

On March 31, 2011 Righthaven filed its most recent suit alleging copyright infringement of the TSA Photo, this time against Mr. Wolf, for allegedly infringing by virtue of a parody of the TSA Photo posted on his It Makes Sense blog. *See* Complaint (Dkt. 1); and Ex. 2 (Dkt. 1-2) at 4. On May 17, 2011, Mr. Wolf moved to dismiss the case for lack of subject matter jurisdiction. Dkt. 11. The parties stipulated to jurisdictional discovery on June 3. Dkt. 16. On July 8, 2011, after obtaining the CAA via this expedited discovery, Mr. Wolf filed a brief supporting its Motion to Dismiss. Dkt. 20.

## ARGUMENT

## I.   RIGHTHAVEN DOES NOT HAVE THE RIGHT TO SUE FOR COPYRIGHT INFRINGEMENT.

As a threshold matter, Righthaven lacks ownership of any exclusive right granted under Section 106 of the Copyright Act. Therefore, Righthaven cannot—as a matter of law—establish the first element of a valid copyright infringement claim: ownership of a copyright. By the same token, Righthaven cannot show constitutional standing, which is evaluated at the time the complaint was filed, because as a non-owner it cannot credibly allege an injury-in-fact. Accordingly, this Court should dismiss the case with prejudice, or, alternatively, convert Mr. Wolf's motion into a motion for summary judgment and grant summary judgment in Mr. Wolf's favor.

**A.     Righthaven's Copyright Alliance Agreement Does Not Confer Any Exclusive Rights in the TSA Photo.**

If MNG believes that its copyrights are being infringed and wishes to pursue legal remedies, the customary path is to hire counsel to evaluate the situation and proceed with litigation if warranted.  But that is not what MNG did.  Instead, MNG and Righthaven entered into an "assignment" that purportedly granted Righthaven the right to sue over MNG's copyrights without MNG being named as a party to the litigation.  *See* Copyright Assignment, Dkt. 20, Ex. B.

However, the purported "assignment" of copyrights from MNG to Righthaven that supposedly authorized this lawsuit is a sham.  While the "assignment" was designed to be shown in Court, there was a separate, secret,[8] agreement explaining the true nature of MNG and Righthaven's relationship "[d]espite any Copyright Assignment."  Dkt. 20, Ex. A, at 6.  In particular, Section 6 of the Terms & Conditions of the CAA states:

> **Despite any Copyright Assignment,** Publisher shall **retain** (and is hereby granted by Righthaven) an exclusive license to Exploit the Publisher Assigned Copyrights for any lawful purpose whatsoever and **Righthaven shall have no right or license to Exploit** or participate in the receipt of royalties from the Exploitation of **the Publisher Assigned Copyrights other than the right to proceeds in association with a Recovery.**   To the extent that Righthaven's maintenance of rights to pursue infringers of the Publisher Assigned Copyrights in any manner would be deemed to diminish Publisher's right to Exploit the Publisher Assigned Copyrights, Righthaven hereby grants an exclusive license to Publisher to the greatest extent permitted by law so that Publisher shall have unfettered and exclusive ability to Exploit the Publisher Assigned Copyrights. . . .

Dkt. 20, Ex. A, Schedule 1, § 6 (emphasis added).  Under the plain language of this paragraph, the right to exploit the copyrights is *retained* by the MNG – it is never transferred in the first place.  Moreover, even if it was transferred, Righthaven simultaneously grants an exclusive license back to MNG.  An exclusive license is a transfer of copyright ownership.  17 U.S.C. § 101.  One way or the other, the CAA ensures that MNG, not Righthaven, owns the TSA Photo.

---

[8] Indeed, MNG was contractually prohibited from disclosing "any . . . aspect" of the scheme. CAA, Dkt. 20, Ex. A, Schedule 1, § 2.

This clause is materially identical to Section 7.2 of the Strategic Alliance Agreement that formed the illegitimate basis for Righthaven's Nevada lawsuits. *See Democratic Underground*, 2011 WL 2378186, at *2. As every court there considering the issue found, the "plain and simple effect of this section was to prevent Righthaven from obtaining, having, or otherwise exercising any right other than the mere right to sue . . . ." *Id.* at *3; *see also, e.g.*, *Hoehn*, 2011 WL 2441020, at *6 ("Righthaven has no meaningful rights other than the bare right to sue").

Two other aspects of the CAA further demonstrate that the "assignment" is effectively meaningless. First, MNG may at any time take back the assigned rights. Section 10 of the CAA states:

> Subject to Section 9, **upon Publisher's signed, written request** ("Reassignment Request"), **Righthaven shall**, within twenty (20) Business Days of any Reassignment Request, submit reassignment documentation to the United States Copyright Office in order to **effect reassignment of any copyright requested by Publisher so long as such request does not interfere with any pending litigation**. Nothing in this Section 10 shall, in any way, diminish Righthaven's rights to funds pursuant to, or arising out of this, Agreement.

Dkt. 20, Ex. A, § 10 (emphasis added).

Second, MNG is permitted to grant encumbrances, albeit with Righthaven's consent: "Publisher shall not sell, grant any Encumbrance on or in, or assign, any of Assigned Copyright to any third Person during the Term absent prior written approval of Righthaven." Dkt. 20, Ex. A, Schedule 1, § 7.3. If MNG had actually transferred rights in the TSA Photo to Righthaven, it would not be able to grant encumbrances on them at all, regardless of prior written approval. This clause would be entirely superfluous. Its presence, however, demonstrates the parties understood quite well that MNG — not Righthaven — retained control of the copyrights at issue.

In sum, the contracts between MNG and Righthaven show that Righthaven received nothing more than the mere right to sue, despite its assertions to the contrary.

**B.**     **Without an Exclusive Right, Righthaven Does Not Have a Cause of Action.**

Because no exclusive rights were transferred, Righthaven does not have a cause of action.

The Copyright Act allows only copyright owners to sue for infringement.  Section 106 of the

Copyright Act enumerates six exclusive rights; notably absent from this list is the bare right to

sue.  *See* 17 U.S.C. § 106.  The right to sue is predicated on ownership of an enumerated right:

"The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute

an action for any infringement of that particular right committed while he or she is the owner of

it."  17 U.S.C. § 501(b).  That is, a party "can only obtain a right to sue on a copyright if the

party also obtains one of the exclusive rights in the copyright."  *Democratic Underground*, 2011

WL 2378186, at *3; *see also Hoehn*, 2011 WL 2441020, at *5 ("Ownership of the exclusive

right to reproduce the copyrighted work is necessary to bring a suit for infringement based on

reproduction of the copyrighted work."); *Hyperquest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377,

383 (7th Cir. 2011); *United States v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008); *Davis v.

Blige*, 505 F.3d 90, 103 (2d Cir. 2007); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881 (9th

Cir. 2005) (en banc).

In *Silvers*, the Ninth Circuit squarely confronted whether an owner of the mere right to

sue has standing to actually do so, and it answered "no."  *Silvers*, 402 F.3d at 883.  There, a

copyright owner in a movie had purported to assign "claims and causes of action" to a script

writer so that she could file an action against an alleged infringer.  *Id*.  Citing Section 501(b), the

Court concluded that a plaintiff "must have a legal or beneficial interest in at least one of the

exclusive rights described in § 106" to bring a copyright-infringement action.  *Id*. at 885.  And

even a legal or beneficial owner "is not entitled to sue unless the alleged infringement occurred

while he or she was the owner of it."  *Id*. at 885 (internal quotations, citations and alterations

omitted).  Because the scriptwriter did not own any Section 106 rights based on the assignment

of a cause of action, the Court ruled that she lacked standing to pursue her copyright claim.  *Id*. at

890.

Apart from its main holding, the *Silvers* court also suggested that a copyright owner may transfer accrued causes of action based on prior infringement.  Righthaven seems to believe this means it has standing to sue based on past, accrued claims.  Opp. at 6-7.  It does not.  The Copyright Act allows only owners of the enumerated exclusive rights to sue.  Without ownership of an exclusive right, Righthaven has no cause of action – past, present or future.

Moreover, while *Silvers* came to the right result (finding no cause of action), Amicus notes that the court's reasoning on this point varies from the plain language of the statute. Section 501(b) states that a copyright owner may bring a suit for infringement "committed while he or she is the owner of it."  17 U.S.C. § 501(b).  "The use of the verb committed in the past tense could be construed to prohibit after-the-fact conveyances of a right to sue for past infringement . . . ."  William Patry, 6 *Patry on Copyright* § 21:22 (2009).  Thus, a plain reading of Section 501(b) would also prohibit the transfer of accrued claims.[9]

Whether this Court adopts *Silvers* or follows the plain language of the statute, Righthaven has not met the requirements for suit under the Copyright Act.

**C.**   **Because Righthaven Had No Standing When It Filed Its Complaint, Its Claim Must be Dismissed With Prejudice.**

Because Righthaven does not own the underlying copyright, it had no standing to pursue this action at the time it filed its complaint, and this fact disposes of its claim.  In every case, the party invoking federal court jurisdiction must demonstrate that it has Article III standing. The first element of standing is that "the plaintiff must have suffered an 'injury in fact' — an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

---

[9] Neither Section 501(b) nor *Silvers* allow a transfer of *future* infringements. Righthaven sued for injunctive relief (*i.e.* future infringements) and alleged ongoing infringement. Complaint, ¶¶ 22, 36, 51-55, and Prayer for Relief 1. Now it has abandoned this claim.  Righthaven Opposition Brief (Dkt. 23) at 2. Curiously, rather then simply concede the point, Righthaven falsely claims "this case does not concern Righthaven attempting to sue for a current or future infringement of a work." *Id.*

(1992) (internal quotations and citations omitted).  This injury "must affect the plaintiff in a personal and individual way."  *Id*. at 561 n.1; *see also Singleton v. Wulff*, 428 U.S. 106, 114 (1976) ("'Ordinarily, one may not claim standing . . . to vindicate the . . . rights of some third party.'" (quoting *Barrows v. Jackson*, 346 U.S. 249, 255 (1953))).

Further, Amicus urges the Court to dismiss the case, and the many other Righthaven suits pending in this district premised on the sham copyright assignment, *with prejudice*.  Righthaven cannot satisfy Article III's requirement that it suffer a "particularized" injury and cannot cure it with *nunc pro tunc* assignments.  Thus, the Court should not encourage further misbehavior by allowing Righthaven to attempt to amend its Complaint.

Righthaven offers no relevant authority to the contrary. *See Opp*. at 12-13. While it is true that courts usually dismiss without prejudice where the dismissal is based on lack of subject matter jurisdiction, *see, e.g. Garman v. Campbell County School Dist. No. 1*, 630 F. 3d 977, 985 (10th Cir. 2010) ("*Generally*, a dismissal for lack of subject matter jurisdiction is without prejudice")(emphasis added), this is not an unvarying requirement by any means. The cases cited by Righthaven do not disagree.  *See GHK Exploration Co. v. Tenneco Oil Co*., 857 F. 2d 1388, 1392 (10th Cir. 1988) ("dismissal for lack of subject matter jurisdiction is . . . *generally* without prejudice") (emphasis added).

In fact, the rule is quite different where, as here the merits of the case and jurisdiction are intertwined. *Tilton v. Richardson*, 6 F. 3d 683, 685 (10th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994) ("the question of whether the court had subject matter jurisdiction was intertwined with the merits of the case, and therefore the district court should have ruled on the merits . . . ."); *Clark v. Tarrant County, Texas*, 798 F. 2d 736, 742 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F. 2d 404, 415 (5th Cir. 1981)); *accord Morrison v. Amway Corp*., 323 F. 3d 920, 929 (11th Cir. 2003)("Where the challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action . . . the district court should find that it has jurisdiction over the case and

deal with the defendant's challenge as an attack on the merits.").

As the court explained in *Morris v. Khadr*, if the merits and jurisdictional issues are intertwined, then the court must consider the facts, and "that dismissal will be with prejudice because it necessarily involves the complaint's merits." *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1332 n.36 (D. Utah 2006); *accord Augustine v. United States*, 704 F. 2d 1074, 1077 (9th Cir. 1983) ("In ruling on a jurisdictional motion involving factual issues which also go to the merits . . . a resolution of the jurisdictional facts is akin to a decision on the merits.")

Such a dismissal is appropriate here. The two elements of a copyright infringement claim are "(1) ownership of a valid copyright and (2) 'copying of constituent elements of the work that are original.'" *TransWestern Publ'g Co., v. Multimedia Mktg. Assocs.*, 133 F.3d 773, 775 (10th Cir.1998) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Since Righthaven does not own the copyright at issue, this means that a dismissal on standing grounds would not be a mere jurisdictional dismissal, but an adjudication on the merits. *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir.1987) ("When subject-matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined."); *Tilton*, 6 F.3d at 685; *Davis v. City of Aurora ex rel. City Council*, 2011 WL 2799539, *2 (D.Colo., July 14, 2011) ("where subject-matter jurisdiction is closely intertwined with the substantive claims, the case is best resolved on the merits") (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995)); *see also Sybersound Records Inc. v. UAV Corp*, 517 F.3d 1137, 1146 (9th Cir. 2008) (affirming dismissal with prejudice where plaintiff was "neither an exclusive licensee nor a co-owner in the nine copyrights, [and therefore] lacks standing to bring the copyright infringement claims").

Moreover, Amicus fears that Righthaven has not requested dismissal without prejudice because it intends to re-file any dismissed case.  Indeed, it is hard to imagine how it could re-file without running afoul of Rule 11.  Moreover, if Righthaven had intended to do so, surely it

would have at least attempted to revise its agreement with MNG so as to purport to cure the fundamental flaws (as it has done in Nevada, to no avail). *See e.g., Righthaven, LLC v. Hoehn*, No. 2:11-cv-00050-PMP, 2011 WL 2441020 (D. Nev. June 20, 2011) (finding "clarification" to original assignment did not grant copyright ownership). Rather, it seems obvious that Righthaven hopes to later argue, as it has in another case in which EFF serves as counsel, that none of the defendants are prevailing parties and, therefore, cannot seek attorneys' fees. *See Righthaven LLC v. DiBiase*, Case 2:10-cv-01343-RLH –PAL (Dkt. 87). In other words, it hopes it can get away with burdening this Court and defendants with multiple lawsuits based on a sham assignment, extracting settlements where possible, and then leaving the defendants with no way to hold it accountable for its misconduct.[10] A dismissal with prejudice will help ensure that Mr. Wolf and the other defendants can move speedily, where appropriate, toward obtaining compensation for the time and resources invested in defending these meritless cases.

### D.    Alternatively, This Court Should Grant Summary Judgment on the Issue of Ownership.

Notwithstanding the foregoing, appellate authority counsels in favor of an alternative path: converting these proceedings to a summary judgment. In *Wheeler*, *supra*, the Tenth Circuit held that "[i]f the jurisdictional question is intertwined with the merits of the case, the issue should be resolved under 12(b)(6) or Rule 56." *Wheeler*, 825 F.2d at 259. Noting that extraneous evidence was before the court, the Tenth Circuit affirmed the district court's conversion of the 12(b)(1) motion to a motion for summary judgment. *Id.* at 260. Here, the CAA and the purported assignment have been submitted to this Court, and it has all the evidence it needs to determine that Righthaven does not own the copyright. Accordingly, this Court may convert Mr. Wolf's

---

[10] Righthaven is incorrect in its reasoning, *see, e.g. United States ex rel Grynberg v. Praxair, Inc.* 389 F.3d 1038, 1056-58 (10th Cir. 2004) (holding that jurisdiction over attorney's fees existed when the underlying claim had been dismissed for lack of subject matter jurisdiction). Moreover, Rule 11 and 28 U.S.C. § 1927 provide alternative avenues to sanction Righthaven. Nonetheless, it would be promote judicial economy to clearly end this litigation.

12(b)(1) motion to a summary judgment motion and grant judgment in his favor.  Further, in light of the distinct procedural posture of the Righthaven cases now pending before the Court, and the common legal and factual basis for these cases, Amicus respectfully urges the Court to grant summary judgment in favor of the defendants in all of the pending cases.

## II.   UNDER THE DOCTRINE OF COLLATERAL ESTOPPEL, PLAINTIFF MAY NOT RELITIGATE THE ISSUE OF OWNERSHIP.

Because Righthaven has already litigated the issue of ownership and lost, it may not re-argue it here.  Collateral estoppel, also known as issue preclusion, "prevents relitigation of issues 'actually and necessarily determined' in a prior suit on a different claim, which involved a party to the subsequent litigation." *Harvey by Blankenbaker v. United Transp. Union*, 878 F.2d 1235, 1243 (10th Cir. 1989) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully." *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984).  In the Tenth Circuit, it is appropriate when:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006).  These four elements are met here.[11]

### A.   The Copyright Ownership Issue Here is Identical to the Ownership Issue Litigated in Nevada.

The question of whether a bare assignment of the right to sue confers copyright ownership sufficient to sustain a lawsuit was litigated in Nevada, and Righthaven lost. "Righthaven does not possess an exclusive right in the Work . . . ." *Hoehn*, 2011 WL 2441020, at *6; *see also Democratic Underground*, 2011 WL 2378186, at *6 ("the [agreement] prevents

---

[11] Because Righthaven was undeniably the plaintiff in the Nevada cases, analysis of the third prong is omitted.

Righthaven from obtaining any of the exclusive rights necessary to maintain standing in a copyright infringement action"). Also, Section 6 of the Terms & Conditions of the CAA discussed above is materially indistinguishable from the agreement between Righthaven and Stephens Media at issue in the Nevada cases. *See supra* Part I.A. Thus, not only is the legal issue identical, the factual basis is as well.

While the Ninth Circuit's decision in *Silvers* is not binding precedent in the Tenth Circuit, this distinction does not help Righthaven. As explained above, whether this Court adopts the *Silvers* exception allowing the transfer of an accrued cause of action in conjunction with the transfer of Section 106 rights, or it follows the plain language of Section 501(b), Righthaven still cannot sue over copyrights it does not own. And the Nevada courts interpreting identical contract language have found that Righthaven does not own the copyrights.

### B.     The Nevada District Court Decisions Are Final Adjudications.

The District of Nevada's orders in numerous Righthaven cases have become final adjudications. *Righthaven LLC v. Hoehn*, *Righthaven LLC v. DiBiase*, and *Righthaven LLC v. Mostofi* have each been reduced to a judgment.[12] They remain final judgments regardless of Righthaven's pending appeals of *Hoehn* and *DiBiase*. "It is well settled that 'a final judgment retains all of its res judicata consequences pending decision of the appeal . . . .'" *Wexler v. United States*, 961 F.2d 221, 1992 WL 74167, at *1 (10th Cir. 1992) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction & Related Matters* § 4433, at 308 (1981)).

To be clear, because (as noted *supra* at I.C) Righthaven's lack of standing is intertwined with the merits issue of ownership, a dismissal on a 12(b)(1) motion on standing grounds is not a mere jurisdictional dismissal, but a dismissal on the merits. "[A]lthough both subject matter

---

[12] Moreover, the June 14 Order in *Democratic Underground*, 2011 WL 2378186—holding that Righthaven's subsequent amendments could not resurrect its claim—was specifically adopted as the reasoning for the dismissal of *DiBiase*. The *Democratic Underground* decision thus further precludes relitigation of these issues.

jurisdiction and standing (as well as other questions of justiciability) act to limit the power of federal courts to entertain claims, that is, act to limit the courts' 'jurisdiction' in the broadest sense of the term, the two must be treated distinctly." *HyperQuest, Inc. v. N'Site Solutions, Inc*., 559 F. Supp. 2d 918, 920 (N.D. Ill. 2008), *aff'd* 632 F.3d 377 (7th Cir. 2011) (quoting *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 594 n.2 (2d Cir. 1993)). *See also id*. at 921 ( "There is no question that the Order dismissed HQ's action with prejudice—because HQ lacks standing, it cannot bring suit again.")

Moreover, the Tenth Circuit Court of Appeals has held that even a dismissal without prejudice will have a preclusive effect on the standing issue in a future action. *Brereton v. Bountiful City Corp*., 434 F.3d 1213, 1218-19 (10th Cir. 2006) ("It cannot be gainsaid that even a dismissal without prejudice will have a preclusive effect on the standing issue in a future action . . . the district court's standing ruling precludes [plaintiff] from relitigating the standing issue on the facts presented.")(citing *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C.Cir.1999) (stating dismissal without prejudice on jurisdictional issue precludes relitigation of that issue but not refiling of complaint)).

The Nevada decisions preclude relitigation of the Righthaven's standing.

## C.   Righthaven Had a Full and Fair Opportunity to Litigate in Nevada.

Righthaven had every opportunity to completely litigate the contract and ownership issues in Nevada.  The "full and fair opportunity to litigate" question asks "whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990).  None of these factors is present here.  Righthaven was not limited by procedure.  Neither did Righthaven lack incentive to fully litigate the issue, especially given a decision's certain preclusive effect in Righthaven's numerous pending lawsuits.  Nor can Righthaven point to any special relationship

between itself and any other party to the prior litigation weighing against collateral estoppel.  In sum, Righthaven had as "full and fair" an opportunity to litigate as any plaintiff would.

## CONCLUSION

The CAA between Righthaven and Media News Group does not confer upon Righthaven any exclusive rights enumerated in the Copyright Act.  Righthaven therefore does not own the copyright at issue, and its complaint fails on the merits.  Furthermore, Righthaven already litigated these issues, and lost.  Its claims are thus also barred by collateral estoppel.  Accordingly, Amicus respectfully asks this Court to dismiss all of Righthaven's suits with prejudice, and/or to grant summary judgment finding that Righthaven does not own the copyright at issue.

Dated:  August 2, 2011          Respectfully submitted,

                                By: /s/  Kurt Opsahl
                                     Kurt Opsahl
                                     kurt@eff.org
                                     Matthew Zimmerman
                                     mattz@eff.org
                                     ELECTRONIC FRONTIER FOUNDATION
                                     454 Shotwell Street
                                     San Francisco, CA 94110
                                     T: (415) 436-9333
                                     F: (415) 436-9993
                                     www.eff.org

                                     David S. Kerr
                                     dkerr@idea-asset.com
                                     Santangelo Law Offices, P.C.
                                     125 South Howes St., 3rd Floor
                                     Fort Collins, CO 80521
                                     T: (970) 224-3100
                                     F: (970) 224-3175
                                     www.idea-asset.com

                                     Attorneys for *Amicus Curiae*
                                     the Electronic Frontier Foundation