**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:11-cv-00830-JLK

RIGHTHAVEN, LLC,

      Plaintiff,

v.

LELAND WOLF, an individual, and
IT MAKES SENSE BLOG, an entity of unknown origin and nature,

      Defendants.

---

**REPLY BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION**

---

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

ARGUMENT................................................................................................................2

    I.    DISMISSAL ON THE MERITS IS PROPER AT THIS STAGE, WHETHER UNDER A RULE 12(B)(1) STANDARD OF REVIEW, OR, IN THE ALTERNATIVE, A RULE 56 STANDARD OF REVIEW...................................2

        A.    DISMISSAL WITH PREJUDICE IS APPROPRIATE ...............................2

        B.    THE PROCEDURAL POSTURE OF THIS CASE ALLOWS FOR IMMEDIATE DISMISSAL UNDER EITHER A RULE 12(B)(1) OR RULE 56 STANDARD .........5

    II.    RIGHTHAVEN CANNOT REFUTE WHAT THE COPYRIGHT ALLIANCE AGREEMENT MAKES CLEAR: RIGHTHAVEN DOES NOT OWN A COPYRIGHT INTEREST IN THE RELEVANT WORK AND IS THUS BARRED FROM BRINGING A CLAIM OF INFRINGEMENT ........................8

        A.    THE COPYRIGHT ASSIGNMENT IS INVALID UNDER THE PLAIN LANGUAGE OF THE COPYRIGHT ALLIANCE AGREEMENT.................................8

        B.    RIGHTHAVEN CANNOT SALVAGE ITS DEFICIENT STANDING CLAIM WITH AN ARGUMENT THAT IT MAY HAVE, ONCE UPON A TIME, FOR A NANOSECOND, POSSESSED OWNERSHIP OF THE WORK .............................10

        C.    RIGHTHAVEN'S APPEALS TO PATENT AND TRADEMARK LAW TO RESCUE THE FLAWED ASSIGNMENT ARE UNAVAILING...........................................11

    III.    ISSUE PRECLUSION (COLLATERAL ESTOPPEL) IS APPROPRIATE........13

        A.    THE NEVADA CASES WERE FINAL ADJUDICATIONS ON THE MERITS .........13

        B.    THE OWNERSHIP QUESTION AT ISSUE IS IDENTICAL TO THE OWNERSHIP QUESTION PREVIOUSLY DECIDED .............................................16

CONCLUSION .......................................................................................................18

## **TABLE OF AUTHORITIES**

### **Federal Cases**

*Arnold v. Air Midwest, Inc.*,
    100 F.3d 857 (10th Cir. 1996) ...................................................................................6

*Blair v. Wills*,
    420 F.3d 823 (8th Cir. 2005) ....................................................................................7

*Brereton v. Bountiful City Corp.*,
    434 F.3d 1213 (10th Cir. 2006) ..............................................................................15

*Bryce v. Episcopal Church*,
    289 F.3d 648 (10th Cir. 2002) .............................................................................5, 6

*B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*,
    439 F.3d 653 (10th Cir. 2006) ................................................................................16

*Burnham v. Humphrey Hospitality Reit Trust, Inc.*,
    403 F.3d 709 (10th Cir. 2005) ..................................................................................6

*Campbell v. Trustees of Stanford Univ.*,
    817 F.2d 499 (9th Cir. 1987) ....................................................................................9

*Clark v. Tarrant County, Texas*,
    798 F.2d 736 (5th Cir. 1986) ....................................................................................3

*Cook v. Peter Kiewit Sons Co.*,
    775 F.2d 1030 (9th Cir. 1985) ................................................................................14

*Davila v. Delta Air Lines, Inc.*,
    326 F.3d 1183 (11th Cir. 2003) .........................................................................13, 14

*Flast v. Cohen*,
    392 U.S. 83 (1968) ....................................................................................................2

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
    No. 09-56317, 2011 WL 3633512 (9th Cir. Aug. 19, 2011) ...........................15

*Gagliano v. Potter*,
    No. 09-2576, 2010 WL 4577904 (D. Colo. Sept. 15, 2010) .............................6

*Grove v. Mead School Dist. No. 354,*
    753 F.2d 1528 (9th Cir. 1985) ...................................................................6

*Holt v. U.S.,*
    46 F.3d 1000 (10th Cir. 1995) ..............................................................3, 5

*HyperQuest, Inc. v. N'Site Solutions, Inc.,*
    559 F. Supp. 2d 918 (N.D. Ill. 2008) ..................................................*passim*

*HyperQuest, Inc. v. N'Site Solutions, Inc.,*
    632 F.3d 377 (7th Cir. 2011) ...................................................................5

*In re Rothery,*
    143 F.3d 546 (9th Cir. 1998) ...................................................................7

*In re Trade-mark Cases,*
    100 U.S. 82 (1879) ................................................................................12

*Morris v. Khadr,*
    415 F. Supp. 2d 1323 (D. Utah 2006) .....................................................5

*Pannonia Farms, Inc. v. Re/Max Int'l, Inc.,*
    407 F. Supp. 2d. 41 (D.D.C. 2005) .......................................................15

*PJ v. Wagner,*
    603 F.3d 1182 (10th Cir. 2010) ...............................................................8

*Pony Express Records, Inc. v. Springsteen,*
    163 F. Supp. 2d 465 (D.N.J. 2001) .......................................................15

*Rawlings v. Nat'l Molasses Co.,*
    394 F.2d 645 (9th Cir. 1968) .................................................................12

*Rent Stabilization Ass'n v. Dinkins,*
    5 F.3d 591 (2d Cir. 1993) ........................................................................5

*Righthaven LLC v. Barham,*
    No. 10-02150, 2011 WL 2473602 (D. Nev. June 22, 2011) ............................9

*Righthaven LLC v. Democratic Underground, LLC,*
    No. 2:10–cv–01356–RLH–GWF, 2011 WL 2378186 (D. Nev. June 14, 2011).1, 9, 10, 17

*Righthaven LLC v. DiBiase,*
    No. 10-01343, 2011 WL 2473531 (D. Nev. June 22, 2011) .......................9, 17

*Righthaven LLC v. Eiser*,
    No. 10-03075 (D. S.C. July 8, 2011) ...............................................................3

*Righthaven LLC v. Mostofi*,
    No. 10-01066, 2011 WL 2746315 (D. Nev. July 13, 2011) .............................9

*Righthaven v. Pahrump Life*,
    No. 10-01575 (D. Nev. Aug. 12, 2011) (No. 67) ........................................1, 9

*Righthaven, LLC v. Hoehn*,
    No. 11-00050, __ F. Supp. 2d __, 2011 WL 2441020 (D. Nev. June 20, 2011)................9

*Righthaven, LLC v. Hyatt*,
    No. 10-01736, 2011 WL 3652532 (D. Nev. Aug. 19, 2011).............................9

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) .........................................................................3

*SGS-Thomson Microelectronics, Inc.* v. *lnt'l Rectifier Corp.*,
    1994 WL 374529 (Fed. Cir. Jul. 14, 1994)....................................................12

*Silvers v. Sony Pictures Entm't, Inc.*,
    402 F.3d 881 (9th Cir. 2005) ...............................................................*passim*

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ...................................................................................12, 13

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,
    524 F.3d 1229 (11th Cir. 2008) .....................................................................14

*Tilton v. Richardson*,
    6 F.3d 683 (10th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994) ....................3

*Torres-Negron v. J & N Records, LLC*,
    504 F.3d 151 (1st Cir. 2007)...........................................................................14

*U.S. Naval Institute v. Charter Commc'ns*,
    936 F. 2d 692 (2d Cir. 1991) ............................................................................9

*United Drug Co. v. Theodore Rectanus Co.*,
    248 U.S. 90 (1918) .........................................................................................12

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
   944 F.2d 870 (Fed. Cir. 1991) ...............................................................12, 13

*Wages v. I.R.S.*,
   915 F.2d 1230 (9th Cir. 1990) ........................................................................14

*Warren v. Fox Family Worldwide, Inc.*,
   171 F. Supp. 2d 1057 (C.D. Cal. 2001),
   *aff'd* 328 F. 3d 1136 (9th Cir. 2003)....................................................2, 3, 4, 15

*Wheeler v. Main Hurdman*,
   825 F.2d 257 (10th Cir. 1987) ...................................................................5, 6, 7

*Whitesel v. Sengenberger*,
   222 F.3d 861 (10th Cir. 2000) ..........................................................................6

*Williamson v. Tucker*,
   645 F.2d 404 (5th Cir. 1981) ............................................................................3

**Federal Statutes**

17 U.S.C. § 101 ...................................................................................................9

17 U.S.C. § 106 ...............................................................................................3, 8

17 U.S.C. § 501(b)..............................................................................................3

**Federal Rules**

Fed. Cir. R. 32.1(c) ..........................................................................................12

Fed. R. Civ. P. 11...........................................................................................10, 17

Fed. R. Civ. P. 12(b) ........................................................................................5, 6

Fed. R. Civ. P. 12(b)(1) ...............................................................................*passim*

Fed. R. Civ. P. 41(b) .........................................................................................15

Fed. R. Civ. P. 56.........................................................................................*passim*

**Treatises**

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (2d ed. 1990)......5

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th ed. 2011) ..... 11, 12

## INTRODUCTION

*Amicus curiae* Electronic Frontier Foundation ("*Amicus*") files this reply brief to Righthaven's Omnibus Response to *Amici Curiae* Briefs ("Response," No. 34).

As an initial matter, Righthaven fails to dispute *Amicus's* summary of the background facts—which are based on findings by several courts, and have most recently been confirmed by the findings of fact in *Righthaven v. Pahrump Life*, No. 10-01575 (D. Nev. Aug. 12, 2011) (No. 67).

Righthaven focuses the bulk of its briefing on muddling the two distinct roles that copyright ownership plays in this litigation—merits and standing—in order to avoid the preclusive effect of dismissal with prejudice. Where merits and jurisdiction are intertwined, as in the present litigation, courts are clear that a ruling by the district court constitutes a ruling on the merits. Thus it is appropriate for this Court to dismiss the case with prejudice, whether under a Fed. R. Civ. P. 12(b)(1) standard or a Rule 56 standard.

On the substantive issue of its ownership of the copyrighted work (the "Work"), Righthaven offers nothing new, recycling myriad arguments that all failed before every court to consider them.  Returning to an argument that a Nevada Federal District Court found "disingenuous, if not outright deceitful,"[1]  Righthaven contends the Assignment should be considered independently of the Copyright Alliance Agreement ("CAA"), even though it is governed by the terms of the CAA. And Righthaven neglects to address the multiple provisions of the CAA cited by *Amicus* that led numerous courts to find the impermissible transfer of nothing more than a bare right to sue. Instead, Righthaven attempts to manufacture standing based on a theory of a nanosecond of ownership that has been rejected by other courts and should be rejected by this Court as well. Righthaven nonetheless concedes that the CAA's

---

[1] *Righthaven LLC v. Democratic Underground, LLC*, No. 2:10–cv–01356–RLH–GWF, 2011 WL 2378186, at *3 (D. Nev. June 14, 2011), filed here as No. 36-2.

assignment and license back structure robs it of the ownership necessary to sue for ongoing and future infringements, but fails to reconcile this argument with its Complaint, offering no explanation for its false allegations. In addition, Righthaven's renewed efforts to draw parallels to trademark and patent law are inapt and unavailing to its ownership arguments.

Finally, because these same issues have already been decided in multiple adjudications on the merits in Nevada, and because lack of standing always has preclusive effect in the Tenth Circuit, Righthaven cannot overcome the fact that its arguments are barred by the doctrine of issue preclusion.

For these reasons, *Amicus* urges the Court to enter a final ruling on the merits in favor of Defendant.

## ARGUMENT

I.   **DISMISSAL ON THE MERITS IS PROPER AT THIS STAGE, WHETHER UNDER A RULE 12(b)(1) STANDARD OF REVIEW, OR, IN THE ALTERNATIVE, A RULE 56 STANDARD OF REVIEW**

### A.   Dismissal with Prejudice Is Appropriate

Because proof of copyright ownership goes to both merits and standing, a finding of failure to prove ownership can and should have preclusive effects, requiring a dismissal with prejudice.  The issue of standing presents an issue of justiciability.  *See Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1075 (C.D. Cal. 2001), *aff'd* 328 F. 3d 1136 (9th Cir. 2003); *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 559 F. Supp. 2d 918, 920 (N.D. Ill. 2008) (citing *Flast v. Cohen*, 392 U.S. 83, 98-99 (1968)), *aff'd* 632 F.3d 377 (7th Cir. 2011). Justiciability is one species of "jurisdiction," in the sense that even where the court has jurisdiction over the subject matter (such as a federal question) in the traditional sense, it still is said to lack jurisdiction to decide a case that is non-justiciable because it is moot, not ripe, or as to which there is no standing.  *Warren*, 328 F.3d at 1140 ("[I]f [Plaintiff] lacks standing to assert his federal copyright claims, the district court [does] not have subject matter jurisdiction and

dismissal [is] appropriate.").

The Tenth Circuit has explained, a "jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995). While Righthaven dances around the issue in its Response, elsewhere Righthaven has conceded that standing is intertwined with the merits. *Righthaven LLC v. Eiser*, No. 10-03075 (D. S.C. July 8, 2011) (No. 68 at 6-7). This is correct because the Copyright Act provides both the plaintiff's claim for relief and the basis for the court's subject matter jurisdiction based on a federal question. Moreover, as *Silvers* confirmed, the Copyright Act also specifies the standard for standing. Under U.S. Code Title 17 Section 501(b), Righthaven must own one of the Section 106 rights in order to file suit, meaning that ownership intertwines standing and the merits. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005).

Under binding Tenth Circuit precedent, when the "question of whether the court had subject matter jurisdiction [is] intertwined with the merits of the case, … the district court should [rule] on the merits." *Tilton v. Richardson*, 6 F.3d 683, 685 (10th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994). Other circuits agree. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1040 (9th Cir. 2004) (reviewing "dismissal for lack of subject matter jurisdiction … as a grant of summary judgment on the merits" when merits were intertwined with jurisdiction); *Clark v. Tarrant County, Texas*, 798 F.2d 736, 742 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)) ("Where the challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action . . . the district court should find that it has jurisdiction over the case and deal with the defendant's challenge as an attack on the merits."). Thus, whether framed as a decision on standing, jurisdiction, justiciability, or ownership, the dismissal by this Court is a dismissal on the merits that should be with prejudice.

*Warren* and *HyperQuest*, *supra*, are particularly instructive on the relationship between

standing and merits when plaintiff does not own the copyright at issue.  In *Warren,* the district court considered the parties' underlying contracts (the "proper interpretation of a contract is a matter of law") to determine if the plaintiff was the beneficial owner by deciding, as a matter of law, if the works in question were works made for hire.  171 F. Supp. 2d at 1063-64 (where "the agreements raise no factual issues going to the merits of the case, … the court may properly consider them under Rule 12(b)(1)").  Upon conducting a full work-for-hire analysis, Judge Morrow concluded that the plaintiff did not own the works and dismissed the copyright claims "without leave to amend."  *Id.* at 1075.  The Ninth Circuit affirmed under Fed. R. Civ. P. 12(b)(1), finding that the plaintiff could not show "that the facts alleged, if proved, would confer standing upon him." 328 F.3d at 1140, 1145.

Likewise, in *HyperQuest*, Judge Shadur first dismissed HyperQuest's claims due to lack of ownership of any exclusive right in the copyright, ordering "both the Complaint and this action are dismissed for lack of subject matter jurisdiction."  *HyperQuest*, 559 F. Supp. 2d at 923.  HyperQuest then argued that this order did not provide a basis for defendant's recovery of attorneys' fees because it was only a ruling on jurisdiction, not a decision on the merits. HyperQuest made the same argument Righthaven makes here—that a dismissal for lack of standing is a dismissal for lack of jurisdiction that precludes dismissal with prejudice.  Judge Shadur rejected that argument.

Judge Shadur explained that, while his initial use of the term "jurisdiction" might have led to confusion, "[t]here is no question that the Order dismissed HQ's action *with prejudice*— because HQ lacks standing, it cannot bring suit again."  *Id*. at 921 (emphasis in original).  In so ruling, Judge Shadur stressed the distinction between lack of jurisdictional power to decide a case (which would normally dictate a dismissal without prejudice), and lack of standing to assert a federal question the court was empowered to decide:

> [S]tanding and *subject matter* jurisdiction are separate questions. While standing, which is an issue of justiciability, addresses the question whether a federal court

> may grant relief to a party in the *plaintiff's* position, subject matter jurisdiction addresses the question whether a federal court may grant relief to *any* plaintiff given the claim asserted.  Thus, although both subject matter jurisdiction and standing … act to limit the power of federal courts to entertain claims, that is, act to limit the courts' "jurisdiction" in the broadest sense of the term, the two must be treated distinctly.

*HyperQuest,* 559 F. Supp. 2d at 920 (internal citations omitted and emphasis in original) (quoting *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 594 n.2 (2d Cir. 1993)).  The Seventh Circuit affirmed.  *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377 (7th Cir. 2011).

The District Court of Utah put it well in *Morris v. Khadr*, applying Tenth Circuit law and explaining that if the merits and jurisdictional issues are intertwined, then the court must consider the facts, and "that dismissal will be with prejudice because it necessarily involves the complaint's merits." *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1332 n.36 (D. Utah 2006).  Accordingly, the dismissal of this matter must be with prejudice.

### B.    The Procedural Posture of this Case Allows for Immediate Dismissal Under Either a Rule 12(b)(1) or Rule 56 Standard

It appears that *Amicus* and Righthaven agree on at least one thing—it is proper for a court to convert a Rule 12(b)(1) motion to dismiss into a Rule 56 motion for summary judgment "when resolution of the jurisdictional question is intertwined with the merits of the case."  *Holt*, 46 F.3d at 1003; Response at 5-6.  Assuming this Court decides to do that—either proceed on a motion for summary judgment or simply apply a standard of review equivalent to that found in Rule 56[2]—the only dispute is whether Righthaven has been afforded fair process and adequate notice for the Court to rule on the merits.  Both caselaw and basic notions of fairness counsel that it has.  Simply put, because Righthaven stipulated to discovery, produced documents, and relied

---

[2] "When outside evidence is presented to support a Rule 12(b)(1) motion of this [intertwined] type, the court will bring the conversion provision [requiring conversion of a Rule 12(b) motion into a Rule 56 motion] into operation."  *Bryce v. Episcopal Church*, 289 F.3d 648, 654 (10th Cir. 2002) (alteration added and in original) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366, at 485-86 n.9 (2d ed. 1990)); *see also Wheeler v. Main Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987) ("Since both parties have submitted additional evidence beyond the pleadings [in a 12(b)(1) motion], and since the district court relied on this information, the motion [is] appropriately characterized as a motion for summary judgment.").

upon extrinsic evidence in its opposition, it has been afforded all the necessary notice and process.

The touchstone for conversion of a Rule 12(b)(1) motion to a Rule 56 motion is whether the non-moving party will suffer prejudice, sometimes called "unfair surprise." *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713-14 (10th Cir. 2005); *Wheeler*, 825 F.2d at 259-60. Federal Rule of Civil Procedure 56 and courts require notice to non-moving parties so they can meet their burden of producing sufficient evidence to show a triable issue.  "To properly convert a Rule 12(b) motion, the trial court is required to notify the parties of the conversion so that they may present all materials made relevant by Rule 56." *Bryce*, 289 F.3d at 654 (citing *Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir. 2000)).

Because Righthaven will suffer no prejudice, nor face "unfair surprise," conversion is proper even without formal notice.  Here the notice requirement is satisfied because Righthaven submitted extrinsic evidence; and "when a party submits material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the part[y] puts [him] on notice that the judge may treat the motion as a Rule 56 motion." *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 859 n.2 (10th Cir. 1996) (alteration in original), citing *Wheeler*, 825 F.2d at 260, *cert. denied*, 484 U.S. 986 (1987); *see also Wheeler*, 825 F.2d at 260 ("In this case, however, there is no unfair surprise. … [W]hen a party submits material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion.").

The same is true even when a motion is not styled as a summary judgment pleading, but when "inclusion of outside materials and two references to the possibility of conversion" are included in briefing.  *Gagliano v. Potter,* No. 09-2576, 2010 WL 4577904, at *2 (D. Colo. Sept. 15, 2010); *see also Grove v. Mead School Dist. No. 354,* 753 F.2d 1528, 1533 (9th Cir. 1985) ("When a party is represented by counsel, formal notice [of conversion] may be unnecessary."

(alteration added)); *In re Rothery*, 143 F.3d 546, 549 (9th Cir. 1998) ("Notice need not be explicit.  It is adequate if the non-moving party is 'fairly apprised' before the hearing that the court will look beyond the pleadings."); *Blair v. Wills*, 420 F.3d 823, 827 (8th Cir. 2005) (finding lack of formal notice of conversion was "harmless" and that "constructive notice is sufficient when plaintiff has adequate time to respond" (citation omitted)).

Righthaven's procedural argument is meritless because it had ample notice that a Rule 56 ruling was possible and, in fact, appropriate.  First, the parties actually *stipulated* to exchange jurisdictional discovery before Mr. Wolf answered the complaint.  Stipulation to Jurisdictional Discovery and Supplementation of Defendant's Motion to Dismiss, No. 16 ("Stipulation").  Pursuant to that Stipulation, Righthaven was ordered to provide Defendant "with all contracts, agreements or documentation of arrangements between Plaintiff and MediaNews Group relating to MediaNews Group's assignment of its copyrights to Plaintiff." *Id.*  In response, Righthaven produced at least the Copyright Alliance Agreement ("CAA") and the relevant copyright assignment document.  *See* No. 20, Exh. 1. These documents were then filed with the Court as part of Defendant's Motion to Dismiss.  *Id.* at Ex. 2, 3.  Righthaven filed an opposition to that brief (No. 23) and another opposition to the briefs filed by both *amici* (No. 34).

Moreover, Righthaven *itself* submitted to the Court evidence outside of the pleadings, specifically the assignment allegedly transferring the copyright from MediaNews Group ("MNG") to Righthaven.  No. 24, Ex. 1.  There can be no good faith argument that Righthaven did not have ample opportunity (and notice) that the Court would consider documents outside of the pleadings and convert this factual attack on its purported ownership to a Rule 56 motion. *Wheeler*, 825 F.2d at 259; *see also Rothery*, 143 F.3d at 549 ("A party is 'fairly appraised' that the court will in fact be deciding a summary judgment motion if that party submits matters outside the pleadings to the judge and invites consideration of them.").[3]

---

[3] At a minimum, Righthaven has been on explicit notice since August 2 (when *Amicus* filed its

Accordingly, Righthaven's argument that this Court may not convert the pending motion to dismiss to a summary judgment motion without further notice and further opportunity for unspecified discovery is meritless.[4]

## II.   RIGHTHAVEN CANNOT REFUTE WHAT THE COPYRIGHT ALLIANCE AGREEMENT MAKES CLEAR: RIGHTHAVEN DOES NOT OWN A COPYRIGHT INTEREST IN THE RELEVANT WORK AND IS THUS BARRED FROM BRINGING A CLAIM OF INFRINGEMENT

Righthaven does not now, and never did, own any exclusive rights in the copyrighted work at issue.  Its tepid attempts in its Response to show otherwise cannot change that basic fact.

### A.   The Copyright Assignment Is Invalid Under the Plain Language of the Copyright Alliance Agreement

As *Amicus* demonstrated in its initial brief, the plain language of the CAA together with the Assignment fails to convey any Section 106 rights in the Work, thereby precluding Righthaven from suing for infringement of the Work. Rather than respond to *Amicus's* arguments, Righthaven merely reasserts, incorrectly, that the Assignment transfers ownership rights from MNG to Righthaven.  Without elaboration, Righthaven contends that the Assignment should be considered independently of the underlying CAA, which by its terms governs all assignments from MNG to Righthaven. CAA Sch. 1, 5.  Righthaven provides no explanation why this Court's analysis of the Assignment should ignore the contract describing what happens "[d]espite any Copyright Assignment." CAA, § 6. When faced with this exact argument in the *Democratic Underground* case, Judge Hunt found that Righthaven's "conclusion is flagrantly

---

initial brief) that consideration under Rule 56 would be appropriate.  No. 25 Ex. 1 at 14-15. Righthaven had 21 days to file its reply to that brief, 11 more than the 10 day notice it now argues for. No. 34.

[4] Righthaven asserts that conversion to summary judgment would violate its right to procedural due process. "Although the exact procedures required by the Constitution depend on the circumstances of a given case, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *PJ v. Wagner*, 603 F.3d 1182, 1200 (10th Cir. 2010) (quotation and alterations omitted).  Righthaven makes no argument why the process here, with discovery, extensive briefing, and both sides presenting evidence to a court, fails to be meaningful.

false—to the point that the claim is disingenuous, if not outright deceitful." *Righthaven LLC v. Democratic Underground, LLC*, No. 2:10–cv–01356–RLH–GWF, 2011 WL 2378186, at *3 (D. Nev. June 14, 2011).[5]

Moreover, Righthaven conspicuously declines to explain why the language of the CAA stating that MNG "shall retain" the exclusive right to exploit the copyrights in question should mean anything other than what it says. CAA § 6. Indeed, the terms are unambiguous: MNG possesses all the rights in the Work and therefore only MNG may sue over those copyrights.[6] The seven Nevada decisions that have ruled on Righthaven cases involving identical assignment language (the "Nevada Cases") have found that language to be dispositive in demonstrating Righthaven's lack of ownership and consequent inability to sue.[7] The CAA makes clear that Righthaven never obtained any rights under any assignment other than the bare right to sue, which is not independently transferable. *See Silvers*, 402 F.3d at 890. Righthaven likewise does not address any of the other CAA provisions that *Amicus* cites in support of the same.[8]

---

[5] In *Democratic Underground*, Righthaven had argued "that the SAA's provisions, which necessarily include Section 7.2, do not alter the unambiguous language of the Assignment or limit the rights it obtained from Stephens Media in the Assignment." *Id.* at *3.

[6] Whether the Court reads the language to mean that the rights were never transferred in the first place (which *Amicus* believes is the correct interpretation) or that Righthaven grants an exclusive license back to MNG, the result is the same: MNG, not Righthaven, owns the copyright. 17 U.S.C. § 101 (defining "transfer of copyright ownership" as including a transfer of exclusive license); *see also Campbell v. Trustees of Stanford Univ.*, 817 F.2d 499, 504 (9th Cir. 1987); *U.S. Naval Institute v. Charter Commc'ns*, 936 F. 2d 692, 695 (2d Cir. 1991).

[7] *Righthaven, LLC v. Democratic Underground, LLC, supra, Righthaven, LLC v. Hoehn*, No. 11-00050, __ F. Supp. 2d __, 2011 WL 2441020 (D. Nev. June 20, 2011) (filed here as No. 36-4); *Righthaven LLC v. DiBiase*, No. 10-01343, 2011 WL 2473531 (D. Nev. June 22, 2011); *Righthaven LLC v. Barham*, No. 10-02150, 2011 WL 2473602 (D. Nev. June 22, 2011); *Righthaven LLC v. Mostofi*, No. 10-01066, 2011 WL 2746315 (D. Nev. July 13, 2011); *Righthaven, LLC v. Pahrump Life*, No. 10-01575, (D. Nev. Aug 12, 2011) (No. 67); *Righthaven, LLC v. Hyatt*, No. 10-01736, 2011 WL 3652532 (D. Nev. Aug. 19, 2011).

[8] *See, e.g.*, CAA § 10 (providing that MNG may take back assigned rights at any time); CAA § 7.3 (providing that MNG may grant encumbrances on or in the copyrights).

**B.**     **Righthaven Cannot Salvage Its Deficient Standing Claim with an Argument that It May Have, Once upon a Time, for a Nanosecond, Possessed Ownership of the Work**

Righthaven's Response raises, again, a novel theory of ownership—that MNG could not "retain" an "exclusive license" from Righthaven to all rights under the copyright other than the right to sue unless Righthaven had first held, if only for a fleeting moment, all those rights.  The theory failed in the Nevada courts, and it fails here as well, for several reasons.[9]

As an initial matter, even ignoring (as Righthaven does) the word "retain," the assignment and simultaneous license back scheme fails to convey any ownership rights in the Work.  The exclusive license by which MNG retained the real ownership in the copyright occurred *simultaneously* with its grant of any purported assignment.  Righthaven hangs its hopes on the fiction of a nanosecond of ownership, contending that "MNG can only be licensed back rights under the CAA that are tantamount to ownership if Righthaven has ownership at one point in time."  Response at 6.  As described above, Section 6 of the CAA provides that MNG "shall retain ... an exclusive license" to exploit the work purportedly assigned while simultaneously denying Righthaven any rights to exploit the assigned works other than by litigation.  Under this structure, no Section 106 rights ever actually change hands, not even for a nanosecond.

But whether a nanosecond passed or not, this theory defies the unity of exclusive rights and the right to sue that U.S. copyright law requires.  *See Silvers*, 402 F.3d at 886.  As *Silvers* makes clear, the right to sue is not severable from the relevant exclusive rights under Section 106.  *Id*.  Righthaven is not the owner of any exclusive right in the Work and therefore may not bring a suit for infringement.[10]  No matter how Righthaven tries to spin the transaction, in real

---

[9] Righthaven's claim that "[n]one of the Nevada Decisions specifically address this argument," Response at 7, is disingenuous.  Righthaven raised this argument in *Democratic Underground*. *See Righthaven v. Democratic Underground*, No. 10-01356 (D. S.C. May 9, 2011) (No. 100). The argument failed.

[10] Indeed, Righthaven effectively admits that it is not currently the owner of any exclusive rights, conceding that "the CAA's terms may divest it of standing to sue for present and future infringement claims." Response at 7. Righthaven offers no explanation how its Complaint seeking relief for present and future infringement complies with Rule 11, choosing instead to

terms it is still nothing but a bare assignment of the right to sue, a transaction that *Silvers*

specifically forbids.  *Id.* at 890.

> **C.**     **Righthaven's Appeals to Patent and Trademark Law to Rescue the Flawed Assignment Are Unavailing**

The Response recycles another cluster of arguments that failed in the Nevada courts,

attempting to suggest that what Righthaven has attempted here is just ordinary enforcement of

intellectual property rights, consistent with the standard rules of practice and desirable from a

policy perspective. On examination, however, these arguments disintegrate.

Righthaven knocks down a straw man in contending that an assignment is not invalid

"simply because the original owner retains some rights," relying on trademark cases for that

proposition. *Amicus* does not contend otherwise.  Rather, *Amicus* has pointed out that where an

assignor of the right to sue maintains controls of *all exclusive rights* in a copyright, the

assignment is invalid.  The trademark cases cited by Righthaven do not suggest otherwise. Most

provide only that, where an assignment is *otherwise valid*, a provision providing some potential

for reassignment does not render the assignment a nullity.[11]

Moreover, the profound differences between the trademark and copyright regime renders

assignment cases in the former unpersuasive in the latter.  Trademark is a species of unfair

competition law; unlike copyrights (and patents), a trademark is "property" only in the sense that

it is a symbol of good will tied to a specific article, service or business.  J. Thomas McCarthy,

*McCarthy on Trademarks and Unfair Competition*, § 2:1 (4th ed. 2011).  Thus, the Supreme

Court has noted that it is "fundamental error" to suppose that "a trade-mark right is a right in

---

falsely contend the Complaint does not seek such relief. Righthaven Opposition Brief (No. 23) at 2.

[11] *See Vittoria N. Am. LLC v. Euro-Asia Imports, Inc.*, 278 F.3d 1076, 1082, n.3 (10th Cir. 2001); *Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 855–56 (3d Cir. 1986); *Int'l Armament Corp. v. Matra Manurhin Int'l., Inc.*, 630 F. Supp. 741, 746 (E.D. Va. 1986), each of which holds that a clause permitting reassignment after a *valid* assignment does not alone render the assignment invalid.

gross or at large, like a statutory copyright or a patent for an invention, *to either of which, in truth, it has little or no analogy.*" *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918) (emphasis added); *see also In re Trade-mark Cases*, 100 U.S. 82 (1879) (describing differences between copyright, patent and trademark, and noting lack of constitutional basis for trademark); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 n.19 (1984) ("We have consistently rejected the proposition that a … kinship exists between copyright law and trademark law."). *See generally McCarthy*, Ch. 6 (comparing patent, copyright and trademark).

Righthaven further cites to two patent infringement cases for the proposition that its standing is unaffected by the fact that the assignment was made solely to facilitate a lawsuit. Response at 12–13 (citing *Rawlings v. Nat'l Molasses Co.*, 394 F.2d 645 (9th Cir. 1968); *SGS-Thomson Microelectronics, Inc.* v. *lnt'l Rectifier Corp.*, 1994 WL 374529 (Fed. Cir. Jul. 14, 1994)).[12] As an initial matter, each of these cases is also distinguishable because the plaintiffs had been assigned *all rights* in the patent(s) at issue. *See Rawlings*, 394 F.2d at 647 (plaintiff/patent assignee assigned all rights in the patent, and plaintiff then assigned a non-exclusive license back to patentee); *SGS-Thomson*, 1994 WL 374529, at *5 (plaintiff assigned the "entire right, title and interest" in the litigated patents). While the purpose of the assignments in those cases may have been to facilitate litigation, the assignments to the patent plaintiffs—unlike the "assignments" to Righthaven—were complete and effective transfers of all rights to practice the invention.[13]

---

[12] As *Amicus* has explained to Righthaven before, *SGS-Thomson* is not valid precedent. The Federal Circuit's own rules do not allow for citation to its nonprecedential opinions from before 2007. *See* Fed. Cir. R. 32.1(c). In fact, in *SGS-Thomson* itself, the Federal Circuit admonished the parties for citing to such opinions without acknowledging their nonprecedential nature, calling it "misleading to the court" and "condemn[ing] such behavior." *SGS-Thomson,* 1994 WL 374529 at *9.

[13] Righthaven's citation to *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir. 1991), is equally unavailing. Response at 14. The assignee in *Vaupel* had received full rights to exploit the patent, subject to what the court called the "minor derogation"

Moreover, while the Supreme Court has recognized a kinship between patent and copyright, it also has recognized that the "two areas of the law, naturally, are not identical twins," and instructed courts to "exercise the caution which we have expressed in the past in applying doctrine formulated in one area to the other." *Sony Corp. of Am.*, 464 U.S. at 439 n.19. Likewise, the Ninth Circuit has recognized that "[w]here precedent in copyright cases *is lacking*, it is appropriate to look for guidance to patent law." *Silvers*, 402 F.3d at 887 (citation omitted and emphasis added).

## III.   ISSUE PRECLUSION (COLLATERAL ESTOPPEL) IS APPROPRIATE

While the seven Nevada Cases are persuasive enough based on their reasoning, they also form the basis to bar Righthaven from rearguing the same tired and incorrect reasoning over and over again. Indeed, most of the substantive arguments raised by Righthaven in its Response are barred by the doctrine of issue preclusion. Righthaven challenges only two of the four Tenth Circuit requirements for issue preclusion; neither of those challenges holds up against countervailing precedent.

### A.   The Nevada Cases Were Final Adjudications on the Merits

When questions of jurisdiction are intertwined with the merits, as with the Nevada Cases, the decision constitutes a ruling on the merits. *See supra* Sec.I.A. Righthaven cites only one case addressing the situation where the determination of lack of standing is intertwined with determination of the merits and therefore constitutes a decision on the merits, and supports *Amicus's* position. In *Davila v. Delta Air Lines, Inc.*, the court found that claim preclusion (under a standard requiring final judgment on the merits) was appropriate where a prior dismissal

---

of a veto on sublicensing, a reversion of rights upon the assignee's bankruptcy, limits on filing foreign patents, and receipt of some share of infringement damages as a portion of compensation. These limitations did not impact the standing of the assignee because the assignee was not required to possess *all* rights related to the patent—just all of the substantial rights. *Id.* at 875. Indeed, unlike this case, the *Vaupel* assignor could not reclaim the patent at will nor prohibit all exploitation of the patent by the assignee. Here, MNG has not transferred "all substantial" rights in the work to Righthaven—MNG effectively has transferred *no rights* beyond the right to sue.

for lack of subject matter jurisdiction involved a decision on the merits. 326 F.3d 1183 (11th Cir. 2003). The court stated that it is appropriate to "look[] past the linguistic label" under these circumstances, holding that despite the fact that the district court had "employed 'jurisdictional' language," the dismissal for lack of subject matter jurisdiction "can only be considered a decision on the merits." *Id.* at 1188–89. As the Eleventh Circuit explained, the district court had not concluded that it lacked the power to adjudicate the dispute but rather reached the merits of the claims to determine the absence of subject matter jurisdiction. *Id. at 1188.*

None of the other cases in Righthaven's Response change the fact that the court's decision involves both the merits and jurisdiction, or that the intertwining of the two signifies a final adjudication. In *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, the court upheld dismissal for lack of standing where the motion constituted a purely "facial attack on the complaint" independent of the merits. 524 F.3d 1229, 1233 (11th Cir. 2008). The court in *Torres-Negron v. J & N Records, LLC*, specifically acknowledged that a disposition may be different where jurisdiction is intertwined with the merits—a situation not present in the case under consideration. 504 F.3d 151, 164-65 (1st Cir. 2007). In *Cook v. Peter Kiewit Sons Co.*, the court found a dismissal did not constitute a judgment on the merits—not because the court lacked subject-matter jurisdiction but because the claims had been dismissed on the basis of insubstantiality, which "does not operate as a judgment on the merits." 775 F.2d 1030, 1035 (9th Cir. 1985). Finally, in *Wages v. I.R.S.*, the Ninth Circuit ruled that a court cannot dismiss for lack of subject matter jurisdiction based on sovereign immunity grounds and at the same time "rule *alternatively* on the merits of a case"—in other words, where jurisdiction and merits are distinct, not entwined. 915 F.2d 1230, 1234 (9th Cir. 1990).

Moreover, the sole Tenth Circuit case cited by Righthaven in support of its contentions regarding adjudication of the Nevada Cases explicitly notes that issue preclusion may be available even where a claim is dismissed without prejudice. *Brereton v. Bountiful City Corp.*,

434 F.3d 1213, 1218–19 (10th Cir. 2006).  Even if Righthaven were correct to consider the

Nevada Cases as without prejudice (it is not), Plaintiff offers no explanation why this Court

should ignore the holding in *Brereton* that "even a dismissal without prejudice will have a

preclusive effect on the standing issue in a future action." *Id.*

And Righthaven conveniently ignores the holdings of the *HyperQuest* and *Warren* courts,

in which dismissals for lack of standing were deemed dismissals with prejudice. Righthaven

further overlooks decisions such as *Pannonia Farms, Inc. v. Re/Max Int'l, Inc.*,  in which the

courts have given determination of lack of copyright ownership preclusive effect as decisions on

the merits.  407 F. Supp. 2d. 41, 43 (D.D.C. 2005); *see also Pony Express Records, Inc. v.

Springsteen*, 163 F. Supp. 2d 465 (D.N.J. 2001) (giving collateral estoppel effect to British

court's determination that plaintiff did not own copyright).

Righthaven's reliance on Fed. R. Civ. P. 41(b) is also misplaced. Nothing in the text of

Rule 41(b) precludes dismissal of the Nevada Cases with prejudice. That rule protects plaintiffs

where dismissal is based on purely procedural aspects of a case, such as failure to prosecute,

comply with the Federal Rules or a court order. Instead, the cases here are ones where plaintiff

failed to prove an essential element of its claim—copyright ownership.

In fact, Rule 41(b) provides a general presumption that a dismissal *is* an adjudication on

the merits "[u]nless the dismissal order states otherwise," but excepts from that structure

dismissals "for lack of jurisdiction, improper venue, or failure to join a party under Rule 19"—

purely matters of procedure. Thus *HyperQuest's* holding that dismissal based on lack of

ownership of a copyright is an adjudication on standing and on the merits is entirely consistent

with Rule 41(b).  *Accord Fleischer Studios, Inc. v. A.V.E.L.A., Inc.,* No. 09-56317, 2011 WL

3633512 (9th Cir. Aug. 19, 2011). Moreover, *Amicus* knows of no court (and Righthaven has

cited none to date) that has held that Rule 41(b) requires that a dismissal based on standing

intertwined with the merits be without prejudice.

**B.    The Ownership Question at Issue Is Identical to the Ownership Question Previously Decided**

The legal issue of copyright ownership and the contractual terms that it springs from are identical in this case to the Righthaven Nevada Cases.  Nevertheless, Righthaven falsely claims "[t]he Nevada Decisions were based on a *completely different contract* with a different party." Response at 10 (emphasis added).

As an initial matter, the fact that Righthaven here contracts with a different entity is immaterial, so long as the legal issue is the same.  *See, e.g.,B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006) (requiring that "the *issue* previously decided is identical with the one presented in the action in question") (emphasis added).

Righthaven's brazen contention that the contract is "completely different" is easily refuted because the language speaks for itself. The following is a side-by-side comparison of the relevant provision from the CAA and from the Strategic Alliance Agreement ("SAA," filed here as No. 36-10), Righthaven's parallel transaction with Stephens Media in the Nevada Cases (differences are underlined):

| | |
|---|---|
| Despite any Copyright Assignment, Publisher shall retain (and is hereby granted by Righthaven) an exclusive license to Exploit the Publisher Assigned Copyrights for any lawful purpose whatsoever and Righthaven shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Publisher Assigned Copyrights other than the right to proceeds in association with a Recovery. To the extent that Righthaven's maintenance of rights to pursue infringers of the Publisher Assigned Copyrights in any manner would be deemed to diminish Publisher's right to Exploit the Publisher Assigned Copyrights, Righthaven hereby grants an exclusive license to Publisher to the greatest extent permitted by law so | Despite any such Copyright Assignment, Stephens Media shall retain (and is hereby granted by Righthaven) an exclusive license to Exploit the Stephens Media Assigned Copyrights for any lawful purpose whatsoever and Righthaven shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Stephens Media Assigned Copyrights other than the right to proceeds in association with a Recovery. To the extent that Righthaven's maintenance of rights to pursue infringers of the Stephens Media Assigned Copyrights in any manner would be deemed to diminish Stephens Media's right to Exploit the Stephens Media Assigned Copyrights, Righthaven hereby grants an exclusive license to Stephens Media to the |

16

| | |
|---|---|
| that <u>Publisher</u> shall have unfettered and exclusive ability to Exploit the <u>Publisher</u> Assigned Copyrights. . . . | greatest extent permitted by law so that <u>Stephens Media</u> shall have unfettered and exclusive ability to Exploit the <u>Stephens Media</u> Assigned Copyrights. . . . |
| § 6 of CAA with MediaNews Group | § 7.2 of SAA with Stephens Media |

The terms of the critical paragraph of each contract are the exact same, save that the named parties have changed. The language of this paragraph resolved the legal issue of ownership in the Nevada Cases. *See e.g., Democratic Underground*, 2011 WL 2433815, at *3 (quoting this language and concluding "[t]he plain and simple effect of this section was to prevent Righthaven from obtaining, having, or otherwise exercising any right other than the mere right to sue as Stephens Media retained all other rights."); *see also Righthaven LLC v. DiBiase*, No. 2:10-cv-01343-RLH, 2011 WL 2473531 (D. Nev. June 22, 2011) (giving *Democratic Underground*'s reasoning preclusive effect by adopting it in its final judgment). Likewise, several other important provisions present identical legal issues. CAA § 10 *with* SAA § 8; CAA Schedule 1, § 7.3 with SAA § 9.3. Righthaven's claim that the legal ownership issue in the present case is not identical to the legal ownership issue in the Nevada Cases is both dishonest and meritless.[14]

/ / /

/ / /

/ / /

/ / /

---

[14] Indeed, it is difficult to see how this argument comports with Rule 11.

## CONCLUSION

The time for Righthaven's legal charade to end is upon us.  They have wasted too much time and treasure of the Court and the defendants and abused the legal process for long enough, suing to profit from quick settlements on a copyright they do not, and did not own.  For the foregoing reasons, this Court should dismiss all of Righthaven's suits with prejudice, and/or grant summary judgment finding that Righthaven does not own the copyright at issue.


Dated:  September 6, 2011               Respectfully submitted,

                                        By:  /s/  Kurt Opsahl
                                             Kurt Opsahl
                                             kurt@eff.org
                                             Matthew Zimmerman
                                             mattz@eff.org
                                             ELECTRONIC FRONTIER FOUNDATION
                                             454 Shotwell Street
                                             San Francisco, CA 94110
                                             T: (415) 436-9333
                                             F: (415) 436-9993
                                             www.eff.org

                                             David S. Kerr
                                             dkerr@idea-asset.com
                                             Santangelo Law Offices, P.C.
                                             125 South Howes St., 3rd Floor
                                             Fort Collins, CO 80521
                                             T: (970) 224-3100
                                             F: (970) 224-3175
                                             www.idea-asset.com

                                             Attorneys for *Amicus Curiae*
                                             the Electronic Frontier Foundation