# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:11-cv-00830

RIGHTHAVEN, LLC,

Plaintiff,

v.

LELAND WOLF, an individual, and
IT MAKES SENSE BLOG, an entity of unknown
origin and nature

Defendants.

---

## MOTION FOR PRELIMINARY INJUNCTION

---

Leland Wolf and the It Makes Sense Blog (collectively, "Wolf"), through his counsel, Contiguglia/Fazzone and Randazza Legal Group, respectfully move this Court to enter a preliminary injunction against Righthaven LLC (hereinafter, "Righthaven"), prohibiting Righthaven from disgorging both liquid assets and intangible personal property – its domain names, trademarks, service marks and allegedly owned copyrights[1] - that it may possess until the conclusion of this litigation, including the satisfaction of the judgment of attorney's fees this Court is likely to enter in Wolf's favor.

As required by D. Colo. Local Rule 7.1, Defendant's counsel attempted to meet and confer with Plaintiff's counsel by phone and e-mail on September 8, 2011, and exchanged e-mails concerning this motion prior to its filing. (Decl. of J. Malcolm DeVoy IV ¶¶ 2-3.)

---

[1] As detailed in Wolf's Supplemental Memo relating to his Motion to Dismiss (Doc. # 20) and Reply briefing (Doc. # 30), Righthaven does not actually own the copyright at issue in this case, nor the copyrights ineffectively assigned to it by Stephens Media LLC, and very likely any copyrights obtained from other content producers. As discussed *infra*, however, to the extent Righthaven claims an ownership interest in these copyrights – the assignments of which are often subject to reversionary rights by the assignor – Wolf moves the Court to enjoin Righthaven from disposing of these copyrights or exclusive rights therein, reverting ownership to the assignor, until this litigation ends and any judgment Wolf receives for attorney's fees is satisfied.

**FACTUAL BACKGROUND**

Righthaven is a fast-sinking ship.  Righthaven has laid off most, if not all, of its employees, including its last in-house attorney. (DeVoy Decl. ¶¶ 4-5; Doc. # 32.)

Stephens Media LLC, which controls SI Content Monitor LLC, half-owner of Righthaven LLC,[2] also recently laid off 21 employees, presumably due to financial woes.[3]  One of Righthaven's two anchor clients, Media News Group Incorporated ("MNG"), recently announced that it will not be renewing its contract with Righthaven, with incoming CEO John Paton characterizing MNG's engagement of the Plaintiff as "a dumb idea."[4]

In addition to the immediate harm of losing MNG as a client, the reverberations of John Paton's characterization of doing business with Righthaven as "dumb" will strongly dissuade any other media outlet from doing business with Righthaven, as MNG is the nation's second largest newspaper chain.[5]  This is hardly a new view for Paton; last year, he authored a post on micro-blogging website <twitter.com>, regarding Righthaven, that said: "Such a bad idea for newspapers. I'm speechless."[6]

Righthaven has also stopped filing new infringement lawsuits, both within this District and without.  In fact, it has been three months – a full quarter of a year – since Righthaven has filed a single new lawsuit.[7]  Righthaven's CEO, Steve Gibson, has confirmed in the media that

---

[2] This relationship is detailed in the Righthaven Operating Agreement ("RHOA").  The RHOA was filed in several Nevada cases. *See, e.g., Democratic Underground*, No. 2:10- cv-01356 (Doc. 107, Exh. 1) (D. Nev. May 20, 2011). This Court may take judicial notice of the RHOA. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (court properly may take judicial notice of its own records and those of other courts).
[3] *Layoffs Reported at Las Vegas Review-Journal*, Las Vegas Sun (Aug. 10, 2011), http://www.lasvegassun.com/blogs/elsewhere/2011/aug/10/layoffs-reported-las-vegas-review-journal/ (*last accessed* Sept. 8, 2011).
[4] David Kravets, *Newspaper Chain Drops Righthaven – 'It Was A Dumb Idea'*, Wired (Sept. 8, 2011), http://www.wired.com/threatlevel/2011/09/medianews-righthaven-dumb-idea/ (*last accessed* Sept. 8, 2011)
[5] *Id.*
[6] Steve Green, *Denver Post Owner Not Renewing Righthaven Contract After PR Debacles*, Vegas Inc. (Sept. 8, 2011) http://www.vegasinc.com/news/2011/sep/08/denver-post-owner-not-renewing-righthaven-contract/ (*last accessed* Sept. 8, 2011).
[7] Fairuser, *August 2011 Righthaven Victims*, Righthaven Victims (Sept. 1, 2011), http://righthavenvictims.blogspot.com/2011/09/august-2011-righthaven-victims.html (*last accessed* Sept. 8, 2011).

Righthaven will not be filing any new lawsuits anytime soon.[8]   As Righthaven engages in absolutely no business other than finding alleged instances of infringement on the internet and suing their perpetrators, Righthaven's revenues have been severely choked, if not killed outright.

In fact, Righthaven's revenues likely are flowing in the wrong direction at this point. Righthaven has paid a $3,815 fee award (but only after much wrangling) in *Righthaven LLC v. Leon*, Case No. 2:10-cv-01672 (Doc. # 60) (D. Nev. July 24, 2011), has been sanctioned $5,000 by the District of Nevada in *Righthaven LLC v. Democratic Underground*, Case No. 2:10-cv-01356 (Doc. # 138) (D. Nev. July 19, 2011), and has until September 14, 2011 to pay $34,045.50 in attorney's fees, which have not yet been paid. *Righthaven LLC v. Hoehn*, Case No. 2:11-cv-00050 (Docs. # 43-45) (D. Nev. Aug. 15, 2011).   These aggregate liabilities, totaling $42,860.50, represent a significant amount of revenues realized by Righthaven after taking its share of those recoveries. (*See* Doc. # 20.)

On July 8, 2011, Wolf filed his Supplemental Memorandum (Doc. # 20) to his pending Motion to Dismiss (Doc. # 14), pursuant to the parties' stipulation, which was accepted by this Court (Docs.  16, 17).  This Supplemental Memorandum (Doc. # 20) reveals that Righthaven's Copyright Alliance Agreement ("CAA") with Media News Group, Incorporated ("Media News Group") is substantively identical to its previously discovered Strategic Alliance Agreement ("SAA") with Stephens Media LLC – which numerous courts in Nevada have held does not confer Righthaven with standing to pursue copyright infringement cases.

For the reasons articulated in Wolf's Supplemental Memorandum and Reply briefing (Docs. # 20 and 30), the same result is proper in this case, and the dismissal of Righthaven's case in this action, and potentially those like it pending within this district, is simply pending this court's Order.

Because of the bad faith evinced by Righthaven in bringing and then maintaining this lawsuit after it was given notice that it did not have standing to do so, based on the evisceration

---

[8] David Kravets, *Copyright Troll Righthaven Goes on Life Support*, Wired (Sept. 7, 2011) http://www.wired.com/threatlevel/2011/09/righthaven-on-life-support/ (*last accessed* Sept. 8, 2011) ("Righthaven chief executive Steve Gibson confirmed by telephone that his company has stopped filing new lawsuits, pending appellate rulings that could take months or even years to filter through the San Francisco-based 9th U.S. Circuit Court of Appeals").

of substantively identical agreements in the District of Nevada under the Copyright Act, precedent indicates that this will be a particularly appropriate case for attorney's fees under 17 U.S.C. § 505, which allows a prevailing party to recover its attorney's fees and costs in a copyright case, as well as Fed. R. Civ. P. 11.

In Fact, Wolf's counsel has already been awarded attorney's fees in two actions brought by Righthaven. In a case where Righthaven failed to serve the defendant within the time period allowed by Federal Rule of Civil Procedure 4(m). *Leon*, Case No. 2:10-cv-01672 (Docs. # 52, 53) (D. Nev. July 5, 2011). While Righthaven's negligence in that case was inexcusable, it does not rise to the level of rank deception evident in this case, where Righthaven has perpetrated a fraud on this court and the defendants to its actions by bringing and maintaining this action without standing to do so – and knowing, since at least mid-June and likely long before, that it lacked standing – that begs for the strongest punishments available to this court.

The recovery of fees in *Leon* was a legal battle on its own, as Righthaven failed to seriously engage Randazza Legal Group in satisfying the firm's judgment of a mere $3,815. This resulted in the judgment-holder filing a Motion for Preliminary Injunction in that case, a hearing on that motion being set and vacated, Righthaven filing an application for stay of the judgment's enforcement, and Randazza Legal Group filing a response to that application – all within the span of three days, from July 9 through July 12. *Leon*, Case No. 2:10-cv-01672 (Docs. # 54, 56-61) (D. Nev. July 9-25, 2011). Righthaven eventually paid the full amount due, but only after being ordered by the court to do so, and sending the check to the wrong address. Leon, Case No. 2:10-cv-01672 (Doc. # 60) (D. Nev. July 24, 2011). (*See* DeVoy Decl. ¶¶ 7-11.)

Even more on point, Wayne Hoehn, represented by Randazza Legal Group in *Righthaven LLC v. Hoehn*, Case No. 2:11-cv-00050, *2011 WL 2441020* (D. Nev. June 20, 2011), prevailed on both showing that Righthaven did not have standing to pursue its copyright infringement claims against him and that Hoehn's use of the article was non-infringing fair use under 17 U.S.C. § 107. The court subsequently awarded Hoehn fees in the amount of $34,045.50 in that case, to be paid by September 14, 2011. *Hoehn*, Case No. 2:11-cv-00050 (Doc. # 43) (D. Nev. Aug. 15, 2011) In an effort to avoid paying this award, Righthaven has since appealed the

4

judgment, and has not yet satisfied or posted bond for the award. *Hoehn*, Case No. 2:11-cv-00050 (Doc. # 45) (D. Nev. Aug. 19, 2011). (*See* DeVoy Decl. ¶¶ 12-14.)

If this Court merely enters judgment against Righthaven, the enterprise may escape any meaningful discipline. By all appearances, and for the reasons discussed above, Righthaven believes that if it ignores its problems – and the directives of the courts in which it litigates – they will all magically disappear.  And indeed, it is likely that Righthaven will try to frustrate any kind of remedy this Court attempts to accord Wolf. Righthaven's tactics and activities to date – dilatory, bad faith "negotiations," and numerous misrepresentations to multiple courts across the country – make it quite likely (if not inevitable) that Righthaven will take steps to dissipate its assets or use other means to attempt to frustrate this Court's fee award and judgment entered against it.  (*See* DeVoy Decl. ¶¶ 6-16.)

Accordingly, as Wolf has near-certainty in achieving the dismissal of Righthaven's case against him, and is substantially likely to be awarded his attorney's fees in this case, judicial intervention in the form of a preliminary injunction is proper and necessary to ensure that Righthaven does not frustrate this Court's ability to accord relief to Wolf.

## MEMORANDUM OF LAW

The Copyright act allows a prevailing party in a copyright action to recover the legal fees and costs incurred in winning the dispute. In fact, all that is required for the Court to award fees is for a party to prevail in the action. *Girlsongs v. 609 Indus.*, 625 F. Supp. 2d 1127, 1132 (D. Colo. 2008), citing *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989); *see also* 17 U.S.C. § 505.  The purpose of the fee shifting statute within the Copyright Act, 17 U.S.C. § 505, is both to punish losing parties who have put forth frivolous, meritless arguments, and to make whole defendants who bring meritorious, winning arguments that further courts' understanding of the Copyright Act.  *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994) (discussing this concept and observing that baseless lawsuits inure toward the award of attorney's fees to the prevailing defendant); *Love v. Mail on Sunday*, Case No. CV-05-7798, *2007 U.S. Dist. LEXIS 97061* at * 17 (C.D. Cal. Sept. 7, 2007). Both purposes will be frustrated if the Court fails to enjoin Righthaven from frustrating the relief it accords to Wolf.

This Court also has the inherent power, under Rule 11, to award attorney's fees as a sanction for misconduct.

Courts routinely issue preliminary injunctions freezing defendants' assets in circumstances like this one. *United States v. MPM Contractors, Inc.*, 763 F. Supp. 488, 496-97 (D. Kan. 1991) (issuing a preliminary injunction when there was a risk of defendants liquidating assets to frustrate the plaintiff's judgment, as there would be no harm to defendants by the injunction); *see also*, *Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77, 86-87 (2d Cir. 1996). Pending Righthaven's satisfaction of the Firm's judgment, it will only be enjoined from *disposing* of its financial and other assets, or moving them to accounts, locales or ownership beyond the reach of this Court's lawful orders.

### A. The Preliminary Injunction Standard

A district court may grant injunctive relief if the movant shows the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009); *Quiroga v. Chen*, 735 F. Supp. 2d 1226, 1227 (D. Nev. 2010); *Independence Inst. v. Buescher*, 718 F. Supp. 2d 1257, 1266 (D. Colo. 2010).

In light of Righthaven's conduct in litigation within this District and across the nation, this remedy is appropriate to ensure that Righthaven's victims are not once again harmed through voluntary insolvency or other financial sleight of hand.  Righthaven has engaged in extreme conduct, and fee awards imposed upon it must be paid.  Otherwise, Righthaven will evade liability for its actions.   This relief is sought solely to ensure that the punishment this Court is very likely to impose upon Righthaven, requiring it to pay fees to Wolf for bringing a lawsuit without having any basis for doing so, and knowing from the Nevada rulings that this litigation was meritless at its foundation, it will have the fees to pay this award – and will actually pay it.

**B. 17 U.S.C. § 505 and Likelihood of Success on the Merits**

Under 17 U.S.C. § 505, a court may grant the prevailing party an award of costs and attorney's fees. *Girlsongs*, 625 F. Supp. 2d at 1132; *see Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614-15 (9th Cir. 2010); *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994). In this case, Wolf is all but certain to prevail in his Motion to Dismiss (Doc. # 11). As explained in Wolf's Supplemental Memorandum, there is no view of copyright law that permits Righthaven to maintain this action, as its agreement with Media News Group specifically does not give Righthaven ownership nor any exclusive rights in the copyrighted work. (Doc. # 20.) In light of Wolf's inevitable dismissal, there is no question that Wolf will be the "prevailing party" within the 17 U.S.C. § 505's meaning. *Buckhannon Board & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 604 (2001) (defining a "prevailing" party as the party to obtain "a material alteration of the legal relationship of the parties").

As explained in the briefing of *amicus* Electronic Frontier Foundation (Docs. # 25, 38), a finding that Righthaven lacks the requisite copyright rights to bring its suit operates as an adjudication on the merits, as the jurisdiction and merits of this case – Righthaven's copyright ownership – are fundamentally intertwined. *Tilton v. Richardson*, 6 F. 3d 683, 685 (10th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994) ("the question of whether the court had subject matter jurisdiction was intertwined with the merits of the case, and therefore the district court should have ruled on the merits . . . ."); *Clark v. Tarrant County, Texas*, 798 F. 2d 736, 742 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F. 2d 404, 415 (5th Cir. 1981)); *accord Morrison v. Amway Corp.*, 323 F. 3d 920, 929 (11th Cir. 2003)("Where the challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action . . . the district court should find that it has jurisdiction over the case and deal with the defendant's challenge as an attack on the merits"). In fact, adjudication on the merits is the preferred method of disposing these type of cases within this Circuit. *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir.1987) ("When subject-matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be

7

intertwined"). Accordingly, this Court's forthcoming order will operate as an adjudication on the merits, rather than a mere jurisdictional decision, and further entitle this Court to award attorney's fees to Wolf.

Not only is Wolf likely to prevail over Righthaven, he is *substantially* likely to do so, and to receive an award of attorney's fees when sought. The threshold of substantial likelihood of success is met and surpassed in this case, and all that is needed are Orders from the Court affirming the legally unassailable arguments set forth in Wolf's Motion to Dismiss, Supplemental Memorandum and Reply brief (Docs. # 11, 12, 20, 30), and an affirmation of Wolf's entitlement to attorney's fees – a scenario *at least* substantially likely to occur based on the arguments set forth in this Motion, and based on the conduct of similarly situated Courts. *See Hoehn*, Case No. 2:11-cv-00050 (Doc. # 43) (D. Nev. Aug. 15, 2011).

### C. The Movant will suffer irreparable harm in the absence of an injunction, given the strong possibility that Righthaven will take actions to frustrate a judgment in this case – namely, liquidating its assets.

As this Court is substantially likely to accord Wolf the dismissal he seeks and an award of attorney's fees, both for his contributions to copyright law and as a punishment for Righthaven's baseless litigation, Wolf seeks an injunction to keep Righthaven – an LLC owned by two other LLCs[9] – from disgorging its funds and intellectual property. If Righthaven is permitted to do so, it will frustrate Wolf's ability to recover its judgment for attorney's fees from Righthaven.

Irreparable harm exists where, in the absence of equitable relief, there is a substantial chance that upon final resolution, the movant cannot be made whole. *See Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). "[A] district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." *Hilao v. Marcos (In re Estate of Marcos)*, 25 F.3d 1467, 1480 (9th Cir. 1994); *Tri-State Generation and Transmission Ass'n v.*

---

[9] This relationship is detailed in the RHOA. *See Democratic Underground*, No. 2:10- cv-01356 (Doc. 107, Exh. 1) (D. Nev. May 20, 2011).

*Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986) ("If Tri-State cannot collect a money judgment, then failure to enter the preliminary injunction would irreparably harm it").  If a party is likely to take actions that will frustrate a judgment, then the movant's irreparable harm is shown.  *See Signal Capital Corp. v. Frank*, 895 F. Supp. 62, 64 (S.D.N.Y. 1995).  As journalists have discovered that Righthaven is supported in part by a $500,000 investment from Stephens Media LLC, its ability to continue operating while prohibited from disgorging or disposing of its funds or intellectual property shall not present a hardship.[10]

Righthaven is not a publicly traded company with widely disclosed SEC filings, and its particular financial condition is unknown.  Between the $3,815 judgment entered in *Righthaven LLC v. Leon et al*, Case No. 2:10-cv-10672 (Docs. # 52, 53) (D. Nev. July 5, 2011), the $5,000 sanction imposed in *Democratic Underground*, Case No. 2:10-cv-01356 (Doc. # 143) (D. Nev. July 18, 2011), the $34,045.50 in attorney's fees awarded in *Hoehn*, Case No. 2:11-cv-00050 (Doc. # 43) (D. Nev. Aug. 15, 2011), and the nearly $200,000 sought in *Righthaven LLC v. DiBiase*, Case No. 2:10-cv-01343 (Doc. # 87), Righthaven's liabilities are quickly mounting – giving it the perfect reason to fraudulently transfer away assets to its owner LLC's, or otherwise move such money out of the Court's reach.

Additionally, Righthaven has stopped filing new lawsuits, a fact verified by its CEO, Steve Gibson.[11]  Eighteen (18) lawsuits pending in the District of Nevada have been dismissed due to lack of service since July 20, 2011 alone,[12] and all other actions Righthaven has brought in this District are stayed pending the resolution of this case.  This prevents Righthaven from converting approximately 50 of its 275 filed suits into revenues via settlement of those cases. This confluence of circumstances – ceasing activity that could generate revenue, and a the termination/stalling of its existing lawsuits, where Righthaven could have derivd income – shows an organization that has reached critical mass and now is imploding, quickly.  Against a wall,

---

[10] David Kravets, *Newspaper Chain Fights for Copyright Troll's Survival*, Wired (June 29, 2011), http://www.wired.com/threatlevel/2011/06/stephens/ (*last accessed* Aug. 20, 2011).
[11] Joe Mullin, *Righthaven CEO Steve Gibson Brushes Aside Fair Use Setbacks*, Paid Content (Aug. 16, 2011), http://paidcontent.org/article/419-righthaven-ceo-steve-gibson-brushes-aside-fair-use-setbacks/ (*last accessed* Aug. 21, 2011).
[12] Steve Green, Foes Seeking Decisive Ruling Against Righthaven

will burn through assets to enrich itself at the expense of those who this Court, and other courts across the country, believe should be accorded relief for Righthaven's numerous misdeeds.

As Wolf is all but certain to win dismissal and receive a judgment against Righthaven for his attorney's fees, his inability to recover the judgment issued by this Court will constitute irreparable harm.   That inability likely will be the result of Righthaven's actions to disenfranchise Wolf, and others, of any recoveries they are rightly owed.   Beyond the monetary value of such a judgment, having Righthaven pay the Wolf's fees for ensnaring him in utterly baseless litigation is a strong admonishment to Righthaven – and one that will be meaningless if Righthaven is not required to pay the judgment entered against it, and allowed to spirit its assets, monetary and otherwise, off beyond this Court's reach.

### D. Balance of Hardships weighs considerably in the Firm's favor

The hardship to Wolf will be that Righthaven will likely render this Court's eventual judgment of attorney's fees meaningless, as there is a significant risk that Righthaven will move its financial and intellectual property assets outside the Court's jurisdiction in order to evade the consequences of a monetary judgment.  (*See* DeVoy Decl. ¶¶ 6-16.)

In contrast, Righthaven will suffer no prejudice if a portion of its assets are frozen or deposited to this Court to be held as a bond or in trust.  Righthaven will still be able to <u>operate</u> as it has since the inception of the case, as it will still be able to collect settlements and judgments acquired in its numerous pending cases in this District, in Nevada, and in South Carolina. Righthaven will be released from this freeze either when it satisfies Wolf's eventual judgment or if it comes to an alternative agreement with Wolf.   In the event that Righthaven proves its hardship, it may propose a bond amount to the Court.   However, the burden will be upon Righthaven to show hardship.  *See Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 321 F. 3d. 878, 882 (9th Cir. 2003) (in an asset freeze preliminary injunction, "the bond amount may be zero if there is no evidence the party will suffer damages from the injunction").

As Righthaven claims to own the copyrights at issue in this lawsuit and many others, it will not be disadvantaged by being embargoed from disgorging them so that they may be

executed on in satisfaction of Wolf's judgment for attorney's fees. This embargo is important because Righthaven is otherwise capable of disgorging these assets on the public market, as it holds itself out as the owner of these rights,[13] or to reassign the copyright rights back to MNG pursuant to § 10 of the Copyright Alliance Agreement (*see* Doc. # 20). The Court may also embargo Righthaven's other intellectual property, including the Righthaven service mark, <righthaven.com> domain name, Righthaven's castle mark service mark, and any other intellectual property and associated goodwill it possesses, without any harm to Righthaven, as it continues to use these marks in commerce. A Court order enjoining Righthaven from disgorging these assets will not harm Righthaven at all, as it has not evinced any intention to stop using these assets.

Furthermore, with no shyness about filing lawsuits (and 275 filed to date) and virtually no expenses to cover due to its rounds of layoffs, Righthaven's ability to acquire funds through settlements and judgments is not impeded by an injunction preventing it from disposing or otherwise transferring its liquid assets or any of its intellectual property – the latter of which it can always "acquire" more.

### E. The Injunction Serves the Public Interest.

A court's award of attorney's fees is important in promoting the enforcement of fee-shifting statutes. *Curran v. Dept. of Treasury*, 805 F.2d 1406, 1408 (9th Cir. 1986). Indeed, this is a practice that even the United States Supreme Court has ratified. *Blum v. Stenson*, 465 U.S. 886, 894-95 (1984). If Righthaven can disregard copyright law and the importance of candor before this tribunal, while spiriting all of its collectable monetary and intellectual property assets away, then there is little strength behind federal fee shifting statutes, and even the Copyright Act itself. The public interest strongly favors issuance of the requested relief.

While this motion is brought by Wolf behalf, it is not the only person or entity seeking an award of attorney's fees from Righthaven. In *Righthaven LLC v. DiBiase*, Case No. 2:10-cv-

---

[13] The value of these "rights," to the extent they are actually owned by Righthaven, is a subject of great curiosity, and Wolf contends that they are utterly devoid of economic value.

01344 (D. Nev. 2011), the defendant is seeking an award of almost $200,000 in attorney's fees – which, based on prior conduct discussed above, Righthaven is sure to frustrate the payment of as well.

There is a strong public interest in ensuring that Righthaven is not able to shirk off its obligation to pay its judgment to the Firm after this Court awarded it attorney's fees based primarily on Righthaven's conduct in this litigation.  After all, this is the same Righthaven that:

a.   Took more than one year to reveal the Strategic Alliance Agreement governing Stephens Media LLC's assignment of copyrights to Righthaven, which was ultimately determined to be a sham transaction *See Hoehn*, *2011 WL 2441020* at *1-6;

b.   Hastily executed a mendacious "Clarification" to its patently defective Strategic Alliance Agreement, which still failed to confer Righthaven with standing to bring these lawsuits *id.* ;

c.   Failed to disclose Stephens Media LLC's 50% financial stake in the litigation until compelled to do so under threat of sanctions from this Court's colleague, *Democratic Underground*, *2011 WL 2378186* at *1, (Doc. # 133);

d.   Was accused of making "multiple inaccurate and likely dishonest statements to the Court" by the same colleague of this Court, *Democratic Underground*, *2011 WL 2378186* at *1;

e.   Has allegedly delayed, vexed and harassed litigants at numerous opportunities, *see Democratic Underground*, Case No. 2:10-cv-01356, Reply Brief (Doc. # 133) (detailing instances of alleged dishonesty by Righthaven's CEO, Steven Gibson, and Stephens Media LLC);

f.   In particular, Righthaven CEO Steven Gibson, as one of the individuals named as a signatory to the Rule 11 Motion filed in *Righthaven LLC v. Dr.*

*Shezad Malik Law Firm P.C.*, Case No. 2:10-cv-0636 (Doc. # 10) (D. Nev. Aug. 8, 2010) – before the Strategic Alliance Agreement between Righthaven and Stephens Media LLC was made public – has made numerous statements that were at least misleading, and potentially knowingly false, to the District of Nevada.  Gibson, a signatory to the Stephens Media LLC Strategic Alliance Agreement, which allowed Stephens Media to keep ownership of its copyright and gave Righthaven nothing more than the "right" to sue – virtually identical to the Copyright Alliance Agreement at issue in this case (Docs. # 14, 15, 20, 20-2). Knowing that the Stephens Media LLC Strategic Alliance Agreement did not give Righthaven ownership or any exclusive rights in the copyrights, Gibson still signed his name to a document that made statements including,

i. "Efforts to dismiss [for lack of subject matter jurisdiction] are objectively unreasonable and entirely unsupported by the relevant facts and applicable law." *Malik Law Firm*, Case No. 2:10-cv-0636 (Doc. # 10 at 6:7-9);

ii. "Simply stated, a competent attorney would not make the unsupported argument that a copyright plaintiff, who has already established registrant status, must plead additional facts beyond the established elements of a copyright claim in order to satisfy basic notice pleading requirements." *Id*. at 8:12-15;

iii. "As demonstrated on pages 16-17, *infra*, the Righthaven Assignment unequivocally vests Righthaven with: (1) exclusive ownership rights in and to the Work, and (2) the right to seek redress for all accrued causes of action." *Id*. at 11:26-28;

13

       iv.  "In the present action, there is no division of copyright ownership as was the case in *Silvers*; Righthaven is the owner of both the exclusive rights in and to the Work and the owner of all accrued causes of action." *Id*. at 12:24-26;

       v.  "The Righthaven Assignment effects an assignment of the right to sue for any possible infringements of the Work, whether accrued or unaccrued. By no means do the terms of the Righthaven Assignment impose any form of limitation upon Righthaven with respect to Righthaven"s standing to sue for infringement." *Id*. at 16:23-27;

  g.  Yet all of the statements, cosigned by Righthaven's own CEO under Rule 11, were either facially incorrect by the plain language of Righthaven's Strategic Alliance Agreement with Stephens Media LLC, or found to be legally unsupported by the District of Nevada in *Democratic Underground, 2011 WL 2378186* at *1; *Hoehn, 2011 WL 2441020* at *1;

  h.  Predicated its dozens of lawsuits in the District of Colorado, using content obtained from Media News Group, Incorporated, parent company of *The Denver Post*, on agreements that are so substantively identical to the Strategic Alliance Agreement used between Righthaven and Stephens Media LLC that this Court's colleagues would absolutely invalidate them. *See*, e.g., *Democratic Underground, 2011 WL 2378186* at *1. These documents are on the public record in this case*,* and attached hereto as Exhibits A and B for convenience. (DeVoy Decl. ¶¶ 18-19.)

Despite the foregoing, Righthaven's CEO, Steve Gibson, has insisted that Righthaven respects the judicial process – a statement that any of the hundreds of Righthaven's defendants, virtually all of them sued without Righthaven possessing standing to do so, would vehemently dispute. Gibson has even admonished others, hypocritically, that they "need to respect the

judicial process," and bizarrely distorted the rulings of the District of Nevada as "guidance" to Righthaven's competitors.[14]  Yet in at least one case, when the Court has Ordered Righthaven to pay fees to a prevailing party and entered judgment against it, this overwhelming desire to swiftly and thoroughly comply with the judicial process was nowhere to be found. (DeVoy Decl. ¶¶ 6-16.)

Everything Righthaven has done to date, detailed above in paragraphs a through h and their subparts, shows nothing but contempt for the judicial process, and disrespect for the intelligence of both Righthaven's victims and their counsel.  For Righthaven to *not* actively subvert Wolf's, and others', recovery of attorney's fees would be a remarkable change in direction from Righthaven's past conduct.  It is almost certainly not going to occur.  As such scruples have been sorely lacking to date, and are unlikely to spontaneously manifest now. Righthaven finds itself on the precipice of yet another District finding it lacked standing to bring its lawsuits and, as punishment for flooding the Court with groundless litigation, facing a practically inevitable order to pay Wolf's attorney's fees, with a judgment to that effect.  Wolf's award of fees won't be the first against Righthaven, and almost certainly will not be the last.  In light of Righthaven's conduct in the Districts where it has been active in litigation, which has been poor to say the least, the public has a vast, well-founded interest in protecting itself and punishing Righthaven.  This goal is achieved by ensuring Righthaven actually pays the judgments entered against it and accepts this Court's extraordinarily likely – and appropriate – reprimand for its transgressions.

Issuance of an injunction will not injure Righthaven or any third party.  A preliminary injunction against disbursement of its assets does not harm Righthaven, nor even modify its conduct; such a restraint merely enjoins Righthaven from carrying assets out of the Court's reach.

---

[14] Mike Masnick, *Righthaven CEO: Judges Are Really Just Giving Guidance To Righthaven Competitors*, Techdirt (June 24, 2011), http://www.techdirt.com/articles/20110624/02490614837/righthaven-ceo-judges-are-really-just- giving-guidance-to-righthaven-competitors.shtml (*last accessed* Sept. 8, 2011).

Beyond monetary assets, any injunction should specifically address Righthaven's intangible property holdings, which may be substantial.   Specifically, Wolf seeks to enjoin Righthaven from disposing of or otherwise reducing the value of its Righthaven service mark (the trademark registration of which is attached as Exhibit C) (DeVoy Decl. ¶ 20), its castle mark as discussed in Exhibit A at 15-20, the <righthaven.com> domain name, and all the ownership "rights" Righthaven claims to possess in its portfolio of more than 250 copyrighted works it has registered with the U.S. Copyright Office, attached hereto as Exhibit D. (DeVoy Decl. ¶ 21.)

Wolf charitably characterizes Righthaven's relationships with these copyrights as "ownership" only because it is the word used by Righthaven.  Wolf does not believe Righthaven owns these works. The District of Nevada has repeatedly held that Righthaven does not own the copyright rights it claims in its Complaints, nor in the Strategic Alliance Agreement with Stephens Media LLC and its Clarification. *Hoehn*, *2011 WL 2441020* at *5-6; *Democratic Underground*, *2011 WL 2378186* at *1. More starkly, the Copyright Alliance Agreement specifically states at page 6, § 7.2, that the "Publisher" – MNG – is the owner of the copyrighted works assigned to Righthaven. (*see* Docs. # 20, 30.)   As discussed in Wolf's Supplemental Memorandum and Reply briefing (Docs. # 20, 30), Righthaven does not have any exclusive rights in the copyrights it obtains from Media News Group.

To the extent Righthaven has any ownership or other rights in these copyrights, though, Righthaven should be enjoined from disposing of them, including exercising the rights of reversion inherent within such agreements – to the extent they are valid. *See, e.g.*, Exh A at 3, § 10 (providing a right of reversion for the copyright to return to Media News Group, which the *Hoehn* court specifically found to be incompatible with Righthaven's claims of copyright ownership).  Righthaven will still be able to sue on these copyrights, and will not be prevented from conducting its business – it simply must not dispose of the copyrights it "owns" until Wolf's judgment against Righthaven is satisfied.  Whatever rights Righthaven claims to "own" in the copyrights, they are intangible personal property and can be enjoined from dissipation so that they may be used to satisfy Wolf's judgment by sale of those "rights" at auction.  In the

16

alternative, these "rights" can be valued by a third party for the few dollars their net present value is worth, and transferred to Wolf to partially satisfy his judgment against Righthaven.

Because the financial condition of Righthaven and its benefactors seems to be in such stark decline, an injunction against its dissipation of its intellectual property – the assets it considers most valuable, and likely the only assets it has – is particularly appropriate.  While money may be needed for regular expenses, Righthaven's speculative intellectual property rights will not be prejudiced if this Court embargoes Righthaven from disposing of them and denying Wolf access to these alleged assets, which he may auction in satisfaction of his judgment, or have transferred to him in satisfaction of it.  As the "owner" of Righthaven's tenuous rights in the copyright, Righthaven will be denuded of its ability to sue others for infringing upon those works; moreover, Wolf may use his "ownership" to attempt to enter the works in the public domain, destroying their copyright protection and punishing the companies pig-headed enough to use a company as abusive as Righthaven to wage a national anti-piracy campaign *without sufficient rights to do so*.

The Court upholds the public interest by protecting the value and enforceability of fee-shifting statutes. *See Curran*, 805 F.2d at 1408.

## CONCLUSION

Wolf is more than substantially likely to prevail on his Motion to Dismiss and, moreover, to recover attorney's fees from Righthaven.  Clear, immediate, and irreparable harm is present through Righthaven's ability to dissipate its monetary and intangible assets; moreover, Righthaven's consistent frustration and evasion of judgments entered against it betrays an obvious indifference to heeding the orders of the courts before which it litigates.  The balance of hardships weighs heavily in favor of protecting Wolf's extraordinarily likely award of attorney's fees, and ensuring that such an award is actually paid by Righthaven.  Righthaven will suffer no hardship from having its monetary assets frozen from transfer or dissipation, nor will it be adversely affected by being enjoined from disposing, in any way, of any of its trademarks, domain names, and most importantly, the copyright rights it "owns."  The requested preliminary

injunction will further the public interest in enforcing federal law and fee-shifting statutes, while punishing Righthaven for trying to subvert the judicial system into its own slot machine, rather than a forum which it must obey, just as it believes its defendants should.

**WHEREFORE,** Plaintiff requests that this Court enter an Order:

A.      Directing Righthaven, or anyone acting in conjunction with them, to immediately freeze monetary liquid assets held by Righthaven, or under its control, so that they may not be transferred beyond this Court's jurisdiction, or beyond the jurisdiction of any U.S. court, as Righthaven's bank accounts and office equipment are likely the most readily accessible recoverable assets that it has within the borders of the United States.  In the alternative, this amount may be placed in care of the Court by trust or bond to expedite collection by Writ of Execution or as otherwise directed by this Court.

B.      Directing Righthaven to immediately preserve and refrain from disposing of its trademarks, domain names, copyright rights, and other intangible assets held by Righthaven, or under its control, so that such assets may not be transferred beyond this Court's jurisdiction, or beyond the jurisdiction of any U.S. court, as Righthaven's intellectual property and other intangible assets are likely the most important and valuable assets that it has within the borders of the United States, and they can be used to satisfy Wolf's eventual award of attorney's fees against Righthaven.  In the alternative, these assets may be assigned to the Court's care, and held in trust or escrow, to expedite collection by Writ of Execution or as otherwise directed by this Court.

C.      Directing that this Order shall stand until Righthaven satisfies any judgment entered in this case, or until Righthaven shows cause as to why the Order should be lifted.

Respectfully submitted this 9th day of September, 2011.

RANDAZA LEGAL GROUP

/s/ Marc J. Randazza

By: _____

Marc J. Randazza
California Bar No. 269535
Jason A. Fischer
Florida Bar No. 68762
J. Malcolm DeVoy IV
Nevada Bar No. 11950
7001 W. Charleston Blvd., #1043
Las Vegas, Nevada 89117
O: (888) 667-1113
F: (305) 437-7662


CONTIGUGLIA / FAZZONE, P.C.

/s/ Andrew J. Contiguglia

By: _____

Andrew J. Contiguglia
Colorado Bar No. 26901
44 Cook Street, Suite 100
Denver, Colorado 80206
O: (303) 780-7333
F: (303) 780-7337


COUNSEL FOR DEFENDANTS

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:11-cv-00830

RIGHTHAVEN, LLC,

     Plaintiff,

v.

LELAND WOLF, an individual, and
IT MAKES SENSE BLOG, an entity of unknown
origin and nature

     Defendants.

---

## CERTIFICATE OF SERVICE

---

   I certify that, on September 9 2011, I electronically filed the foregoing **MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Shawn A. Mangano, Esq.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada  89129-7701
O:  (702) 527-5909
F:  (702) 527-5909
E-mail:  shawn@manganolaw.com

  This, the 9th day of September, 2011.

      Respectfully submitted,

      RANDAZA LEGAL GROUP

      /s/ J. Malcolm DeVoy IV
   By: _____
      Marc J. Randazza
      California Bar No. 269535

Jason A. Fischer
Florida Bar No. 68762
J. Malcolm DeVoy IV
Nevada Bar No. 11950
7001 W. Charleston Blvd., #1043
Las Vegas, Nevada 89117
O: (888) 667-1113
F: (305) 437-7662

COUNSEL FOR DEFENDANTS