**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
Judge John L. Kane

Civil Action No. **1:11-cv-00830-JLK**

**RIGHTHAVEN LLC**, a Nevada Limited Liability Company,
    Plaintiff,
                                    v.

**LELAND WOLF,** an individual, and
**IT MAKES SENSE BLOG**, an entity of unknown origin and nature,
    Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

Kane, J.

The issue presented in this case, whether a party with a bare right to sue has standing to institute an action for infringement under federal copyright law, is one of first impression in the Tenth Circuit. After considering the parties' written and oral arguments and analyzing the constitutional underpinnings of federal copyright law, the legislative history of the 1909 and 1976 Copyright Acts, and the meager precedent available from analogous situations in other Circuits, I hold that the answer to that question is a forceful, yet qualified, "no" and GRANT summary judgment to Defendant Leland Wolf. Furthermore, pursuant to 17 U.S.C. § 505, Righthaven shall reimburse Mr. Wolf's full costs in defending this action, including reasonable attorney fees.

### FACTUAL BACKGROUND

On November 18, 2010, *the Denver Post* published a photograph of a Transportation Security Administration Agent performing an enhanced pat-down search at Denver International Airport (the "Work"). Although the copyright in this photograph was originally held by MediaNews

Group, Inc., *the Denver Post*'s parent company, at some point following its original publication the

copyright was purportedly transferred to Plaintiff Righthaven LLC, which registered the Work with

the federal Copyright Office on December 10, 2010. *See* Copyright Registration (doc. 1-4). Shortly

thereafter, Righthaven filed fifty-seven lawsuits in this district, each alleging copyright infringement

in violation of the anti-infringement provisions of federal copyright law. *See* 17 U.S.C. § 501.

Defendant Leland Wolf was among those caught up in Righthaven's enforcement dragnet.[1]

As alleged in Righthaven's complaint, on or about November 29, 2010 and February 5, 2011, Mr.

Wolf displayed the Work on his website, itmakessenseblog.com, without seeking or receiving

permission to do so from Righthaven. Based on these alleged facts, Righthaven filed suit against

Mr. Wolf. On May 17, 2011, Mr. Wolf filed a Motion to Dismiss for Lack of Subject Matter

Jurisdiction (doc. 11).

## ANALYSIS

### *Nature of Review*

As a threshold matter, it is necessary to determine the proper framework for resolving Mr.

Wolf's motion. Ordinarily, motions to dismiss for lack of subject matter jurisdiction are premised

upon Federal Rule of Civil Procedure 12(b)(1) and take one of two forms: either a facial or factual

attack. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In a facial attack on the

sufficiency of the complaint, a reviewing court must accept the allegations of the complaint as true.

---

[1] As evidenced by the caption, Righthaven also named It Makes Sense Blog as a party to this action. It Makes Sense Blog is not a person or organized legal entity, but the domain name of a website owned and operated by Mr. Wolf. It is not, therefore, capable of being sued and it is dismissed as a party to this lawsuit. *See, e.g.*, *Aston v. Cunningham*, 216 F.3d 1086 n.3 (10th Cir. 2000) (dismissing Salt Lake County jail as a defendant because a detention facility is not a person or legally created entity capable of being sued).

*Id.* When a party relies on evidence outside of the complaint in mounting a factual attack, however,

a reviewing court may not presume the truthfulness of the complaint's allegations. *Id.* at 1003. In

such instances, the reviewing court has "wide discretion to allow affidavits, other documents, and

a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

(citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

Ordinarily, the consideration of evidence outside the pleadings does not convert a Rule

12(b)(1) motion to dismiss into a Rule 56 motion. *Id.* There is, however, one important exception

to this rule: when the resolution of jurisdictional issues is intertwined with the merits of the case,

"a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a

Rule 56 summary judgment motion . . . ." *Id.* The resolution of jurisdictional issues is said to be

intertwined with the merits of the case "when subject matter jurisdiction is dependent upon the same

statute which provides the substantive claim in the case . . . ." *Id.* (citing *Wheeler*, 825 F.2d at 259);

*see also Tilton v. Richardson*, 6 F.3d 683, 685 (10th Cir. 1993). The parties must, however, be given

notice before a Rule 12(b)(1) motion is converted to a Rule 56 motion. *Wheeler*, 825 F.2d at 259.

Such notice need not be formal or explicit; "when a party submits material beyond the pleadings in

support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on

notice that the judge may treat the motion as a Rule 56 motion." *Id.* at 260.

Because my jurisdiction in this case is dependent upon federal copyright law, which also

provides the basis for Righthaven's claim of infringement, the jurisdictional issues raised in Mr.

Wolf's Motion to Dismiss are intertwined with the merits of the case. Accordingly, I will convert

his Rule 12(b)(1) motion to dismiss into a Rule 56 motion for summary judgment. Furthermore,

because both parties submitted materials in support of their respective arguments on Mr. Wolf's

motion to dismiss and incorporated those materials into their arguments, they have received ample notice that Mr. Wolf's motion was subject to treatment as a Rule 56 motion.

Accordingly, in resolving Mr. Wolf's motion, I apply the familiar standards governing motions for summary judgment. As the Federal Rules of Civil Procedure state, I may grant his motion "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that [Mr. Wolf] is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(2); *Adamson v. Multi. Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A fact is material if it could affect the outcome of the suit under governing law; a dispute of fact is genuine if a rational jury could find for the non-moving party, Righthaven, on the evidence presented. *Adamson*, 514 F.3d at 1145. In weighing these standards, I draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Mr. Wolf bears the initial burden of identifying the basis for his motion and the supporting evidence he believes demonstrates a lack of genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adamson*, 514 F.3d at 1145. Because he does not bear the ultimate burden of persuasion at trial, he "may satisfy this burden by identifying 'a lack of evidence for [Righthaven] on an essential element of [its] claim.'" *Adamson*, 514 F.3d at 1145 (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th cir. 1998)).

Once Mr. Wolf has met his initial burden, the burden shifts to Righthaven, and it must demonstrate more than "some metaphysical doubt" as to the material facts in order to survive summary judgment. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Neither unsupported conclusory allegations nor a mere scintilla of evidence, however, are sufficient to create a genuine dispute of

material fact on summary judgment.  *See Mackenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).  With these standards in mind, I turn to the merits of Mr. Wolf's motion.

*Copyright Law*

The thrust of Mr. Wolf's argument focuses upon the nature of the Assignment and the Copyright Assignment Agreement entered into by Righthaven and MediaNews Group, Inc. Specifically, Mr. Wolf argues that Righthaven has no right to institute a claim of infringement under the Copyright Act because MediaNews Group, Inc. did not assign Righthaven any cognizable copyright interest in the work at issue.

Righthaven counters, arguing that the Copyright Assignment Agreement has no impact upon the plain text of the Assignment, which states that MediaNews Group transferred "all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for past, present and future infringements of the copyright . . . ." Assignment (doc. 24-1).  In the alternative, Righthaven argues that the Copyright Assignment Agreement does not diminish the ownership interest transferred by the Assignment, because the "license back" provision contained therein only vitiates claims for present or future infringement.  It avers that the copyright interest transferred in the assignment is sufficient for purposes of instituting an action for past infringement under the Copyright Act.

Both parties' arguments assume the underlying legal premise that a party who holds an accrued claim for copyright infringement, but who has no beneficial or legal interest in the copyright itself, may not institute an action for infringement.  Although this issue has been decided in the Ninth Circuit, it is one of first impression in the Tenth Circuit, and the parties' reliance on the Ninth

Circuit's resolution of this issue in *Silvers v. Sony Pictures Entm't*, 402 F.3d 881 (9th Cir. 2005),

is misplaced.  Although that decision, and those of other circuits, are persuasive authority, they are

not controlling.  Accordingly, I must first determine the relevant law in light of Tenth Circuit

precedent and traditional tools of statutory interpretation.

I begin my analysis by looking to the text of the Copyright Act.  *See NISH v. Rumsfeld*, 348

F.3d 1263, 1268 (10th Cir. 2003) (noting that "analysis of statutory construction 'must begin with

the language of the statute itself'").  Righthaven's claim for infringement is based on 17 U.S.C. §

501, which provides that "the legal or beneficial owner of an exclusive right under a copyright is

entitled, subject to the requirements of section 411, to institute an action for any infringement of that

particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).  Although this

language is straightforward, it does not expressly limit the right to sue for infringement to a legal

or beneficial owner of an exclusive right.  *See Silvers*, 402 F.3d at 885.  Because the statute is silent

on this issue, I must determine Congress' intent in enacting this provision.  I begin by analyzing the

constitutional origins of copyright law before examining the legislative history of the 1909 and 1976

Copyright Acts.  *See N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 248 F.3d 1277, 1282

(10th Cir. 2001) ("if the statutory language is ambiguous, a court can then resort to legislative

history as an aid to interpretation").

The precepts of copyright law are rooted in the Constitution itself, which expressly grants

Congress the power "To promote the Progress of Science and useful Arts, by securing for limited

Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries .

. . ."  U.S. Const. art. I, § 8, cl. 8.  The primary goal of copyright law is to "secure the general

benefits derived by the public from the labors of authors."  *See* 1 Melville B. Nimmer & David

Nimmer, *Nimmer on Copyright* § 1.03[A].  This goal is achieved by creating a limited monopoly

in copyright, which provides an economic benefit to the authors and creators of creative works.  As

explained by the Supreme Court, the creation of this limited monopoly is justified by "the conviction

that encouragement of individual effort by personal gain is the best way to advance public welfare

through the talents of authors and inventors . . . ."  *Mazer v. Stein*, 347 U.S. 201, 219 (1954); *see*

*also Eldred v. Ashcroft*, 537 U.S. 186, 219 ("By establishing a marketable right to the use of one's

expression, copyright supplies the economic incentive to create and disseminate ideas") (quoting

*Harper & Row, Publrs v. Nation Enters.*, 471 U.S. 539, 558 (1985)).

Thus, copyright law necessarily balances the derivative goal of rewarding the creative labor

of authors of original works with the primary goal of promoting further creativity by allowing public

access to copyrighted works.  *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417,

429 (1984), *partially superseded by statute*, Digital Millennium Copyright Act, Pub. L. No. 105-304,

112 Stat. 2860.  This delicate balance underlies each successive iteration of the copyright regime,

as Congress attempts to account for changing methods of communicating and disseminating ideas

and expressions while maintaining the constitutionally mandated equilibrium.  With these principles

in mind, I turn to an examination of the relevant legislative history.

Under the Copyright Act of 1909, standing to sue for copyright infringement was strictly

limited to the "proprieter" of a copyright.  *See* 3 Melville B. Nimmer & David Nimmer, *Nimmer on*

*Copyright* § 10.01[A]; 17 U.S.C. § 101 (1909).  Furthermore, the 1909 Act prohibited the

assignment of anything less than the entire copyright.  *Id.*  When paired with the restriction on the

right to sue for infringement, this limitation on assignment, termed the doctrine of "indivisibility,"

promoted the public interest in the sharing of works by "protect[ing] alleged infringers from the

harassment of successive law suits." *Id.*

In the years following the passage of the 1909 Act, technological developments, such as the invention of the motion picture, the television, and the phonograph, altered the fundamental nature of copyright; "as a matter of commercial reality, copyright [became] a label for a collection of diverse property rights each of which is separately marketable." *Id.* In light of these changing circumstances, courts fashioned remedies designed to circumvent the strictures of the doctrine of indivisibility. Most of these exceptions involved so-called "beneficial owners" of copyright – parties who lacked a legal interest in the copyright, but who still stood to gain financially from the legal dissemination of the copyrighted material. As explained by the Seventh Circuit:

> [C]ourts applying the 1909 Act invoked common law trust principles to hold that when a copyright owner assigned title in exchange for the right to receive royalties from the copyright's exploitation, a fiduciary relationship arose between the parties, and the assignor became a 'beneficial owner' of the copyright with standing to sue infringers should the assignee fail to do so.

*Moran v. London Records, Ltd.*, 827 F.2d 180, 183 (7th Cir. 1987) (citations omitted); *but see Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698 (5th Cir. 1969) (basing an author's, and past copyright owner's, right to sue not on trust principles but on "the effectiveness of an assignment of accrued causes of action for copyright infringement"). This principle, that a former owner of a copyright who has assigned his copyright interest in exchange for the right to receive royalties from the copyright's exploitation has the right to sue for infringement, is consistent with the guiding principles of copyright law. The former copyright owner, often the original author or creator, continues to derive an economic benefit from legal public access to the copyrighted material. The public interest in access to copyrighted materials is served, and the former copyright owner is rewarded for his efforts and encouraged to engage in further creative efforts.

In contrast, the free assignment of the right to sue for infringement, as permitted by the Fifth

Circuit in *Prather* and advocated by Judge Bea in his dissent in *Silvers*, skews the delicate balance

which underlies federal copyright law. *See Prather*, 410 F.2d at 700; *Silvers*, 402 F.3d at 895 (Bea,

J., dissenting).  A third-party who has been assigned the bare right to sue for infringement has no

interest in the legal dissemination of the copyrighted material.  On the contrary, that party derives

its sole economic benefit by instituting claims of infringement, a course of action which necessarily

limits public access to the copyrighted work.[2]  This prioritizes economic benefit over public access,

in direct contradiction to the constitutionally mandated equilibrium upon which copyright law is

based.  The legislative history relating to the Copyright Act of 1976 supports this interpretation.

The Copyright Act of 1976 abandons the doctrine of indivisibility, expressly allowing for

the assignment of numerous "exclusive rights" that, taken together, comprised the copyright.  17

U.S.C. § 201(d), *see also* 17 U.S.C. § 106 (enumerating the legally recognized copyright interests).

As the drafters of the 1976 Act noted in discussing the import of §§ 201 and 501, "The principle of

---

[2]  Although the institution of some third-party infringement suits may protect the interest
of a copyright owner, not all infringement suits are meritorious or worthwhile.  Divorcing the
economically beneficial interest in copyright from the right to sue for infringement eliminates
the exercise of "prosecutorial" discretion by the copyright owner.  The party whose only interest
is in the proceeds from an action for infringement has no incentive to refrain from filing suit.
Furthermore, in light of the severe statutory damages for copyright infringement and the
burdensome costs of litigation, a party sued for infringement, even a party with a meritorious
defense, will often agree to settlement.  Thus, a party with a bare right to sue may file numerous
infringement actions of questionable merit with the intention of extorting settlement agreements
from innocent users.  This possibility becomes even more likely when the financial viability of
the entity filing suit depends upon the proceeds from settlement agreements and infringement
suits.  Even though copyright law expressly provides for an award of costs and reasonable
attorney fees to a party prevailing in its defense of a meritless infringement action, the economic
realities of securing counsel and paying in advance the costs of litigation turns this remedy into a
Potemkin Village. Both fundamentally and practically, the reality is at odds with the
constitutional prioritization of public access to copyrighted works.

divisibility of copyright ownership, established by section 201(d), carries with it the need in

infringement actions to safeguard the rights of all copyright owners and to avoid a multiplicity of

suits." H.R. Rep. No. 94-1476 at 158.  To achieve this result, the Act expands the right to sue for

infringement to all *legal* owners of an exclusive right.  17 U.S.C. § 501(b).

The 1976 Act also expands the right to sue for infringement to *beneficial* owners of an

exclusive right. According to the drafters, "A 'beneficial owner' for this purpose would include, for

example, an author who had parted with legal title to the copyright in exchange for percentage

royalties based on sales or license fees." *See* H.R. Rep. No. 94-1476 at 159.  This directly parallels

the above-noted judicially created exception to the 1909 Act's strict limitation of the right to sue for

infringement.

In light of the guiding principles of copyright law and the foregoing analysis of the

legislative history of the 1909 and 1976 Copyright Acts, it is apparent that the 1976 Act expands

standing to sue for copyright infringement to account for the divisibility of copyright ownership and

to incorporate the judicially-recognized exception allowing for the assignment of the right to sue to

a beneficial owner of a copyright interest.  An expansive view of the right to sue for infringement,

as advocated by the Fifth Circuit in *Prather* and Judge Bea in his dissent in *Silvers*, is inconsistent

with these constitutional principles.[3]  Accordingly, I hold that only parties with a legally recognized

---

[3] Both the Fifth Circuit and Judge Bea based their expansive views on the belief that "the assignment of an accrued cause of action for copyright infringement to an assignee is nothing more than 'simple assignment of a chose in action.'" *Silvers*, 402 F.3d at 902 (Bea, J., dissenting) (quoting *Prather*, 410 F.2d at 699-700). Although the historical common law rule prohibiting the assignment of a chose in action has largely disappeared in the context of contracts, Restatement (Second) of Contracts § 317 cmt. c (1981), the prohibition is much more robust in the context of torts. *See, e.g. U.S. Fax Law Ctr., Inc. v. iHire, Inc.*, 362 F. Supp. 2d 1248, 1251-53 (D. Colo. 2005). The nature of a copyright injury is enigmatic.  In my view, where the copyright owner is also the author or creator of the copyrighted work, the offense of

interest in copyright as delineated in §106 ("legal owners"), and parties who stand to benefit from

the legal dissemination of copyrighted material ("beneficial owners") have the right to sue for

infringement under § 501(b) of the Copyright Act.[4]  *See Hyperquest, Inc. v. N'Site Solutions, Inc.*,

632 F.3d 377, 381 (7th Cir. 2011); *Silvers*, 402 F.3d at 885; *Silvers*, 402 F.3d at 891 (Berzon, J.,

dissenting) (arguing that "a complete stranger to the creative process" should not be able to institute

an action for infringement).[5]  Having determined the relevant law, I now turn to the facts of this

case.

As an initial matter, it is necessary to determine the factual scope of my review.  As noted

above, the parties contest whether the Copyright Assignment Agreement is relevant to my

determination of whether Righthaven has a sufficient interest to institute an action for infringement.[6]

Although the Assignment represents the culmination of the agreement between MediaNews Group

---

infringement is arguably more analogous to a personal tort than any contract right.  This issue is, however, not essential to my ruling in this case, and I decline to definitively address it.

[4]  One might ask, what of the author of a work-for-hire, who has exchanged his creative energies for a sum certain?  The answer lies in the question.  The author of a work-for-hire has freely bargained away his creative interest in the copyrighted work; he has no creative interest for federal copyright law to protect.

[5]  The Second Circuit has taken an even more restrictive view of standing to sue for copyright infringement.  *See Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (stating that §501(b) "authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights").  This holding ignores the plain language and legislative history of the 1976 Act, which expressly provide that beneficial owners have the right to sue for infringement.

[6]  The parties do not dispute that the only evidence potentially relevant to my determination of this issue is the Copyright Assignment Agreement and the Assignment.  Because these are contractual agreements, my interpretation of them is a question of law.  *See Union Rural Elec. Ass'n, Inc. v. Pub. Util. Comm'n*, 661 P.2d 247, 251 (Colo. 1983) ("Interpretation of contract language is generally a question of law").  There are no other disputed issues, and the parties' dispute over the nature of the rights transferred from MediaNews Group, Inc. to Righthaven is one properly resolved at summary judgment.

and Righthaven to transfer some interest in the Work, "a contract . . . [must] be appraised in view

of the surrounding circumstances known to the parties at the time of its execution . . . ." *Evensen*

*v. Pubco Petroleum Corp.*, 274 F.2d 866 (10th Cir. 1960) (citing Restatement (First) of Contracts

§ 230 (1932)).

The blank form of the Assignment agreement, which required MediaNews Group, Inc. to

supply only the date of the transfer and an authorizing signature to give it effect,  was attached to

the Copyright Assignment Agreement.  *See* Copyright Assignment Agreement, Schedule 5 –

Copyright Assignment (doc. 20-2) at 21.  The Assignment at issue in this case was undeniably

contemplated at the time the parties entered into the Copyright Assignment Agreement.  The

Assignment reflected the circumstances bargained for and agreed to by MediaNews Group, Inc. and

Righthaven in the Copyright Assignment Agreement and it must be appraised accordingly.

The Assignment purports to transfer "all rights requisite to have Righthaven recognized as

the copyright owner of the Work . . . ."  As evidenced by the parties' arguments in this case, the

transfer of a copyright interest is an issue of utmost importance in determining whether a party has

standing to institute an action for infringement.  A party asserting the transfer of such a right, and

the concomitant standing to sue, bears the burden of establishing such a transfer.  A clause

purporting to transfer "all rights requisite" merely begs the question.  Accordingly, I turn to the

language of the Copyright Assignment Agreement to determine the nature of the "rights requisite"

transferred from MediaNews Group, Inc. to Righthaven.  As the Copyright Assignment Agreement

states:

> Despite any Copyright Assignment, [Media News Group] shall retain (and is hereby
> granted by Righthaven) an exclusive license to Exploit the Publisher Assigned
> Copyrights for any lawful purpose whatsoever and Righthaven shall have no right
> or license to Exploit or participate in the receipt of royalties from the Exploitation

of the Publisher Assigned Copyrights other than the right to proceeds in association with a Recovery.  To the extent that Righthaven's maintenance of rights to pursue infringers of the Publisher Assigned Copyrights in any manner would be deemed to diminish Publisher's right to Exploit the Publisher Assigned Copyrights, Righthaven hereby grants an exclusive license to Publisher to the greatest extent permitted by law so that Publisher shall have unfettered and exclusive ability to Exploit the Publisher Assigned Copyrights.  Righthaven shall have no obligation to protect or enforce any Work of Publisher that is not Publisher Assigned Copyrights.

Copyright Assignment Agreement (Doc. 20-2), Schedule 1, Paragraph 6 (emphasis added).  This document indicates that the purported assignment of "rights requisite" is meaningless.  Media News Group retained all rights to exploit the Work; no legal interest ever changed hands.  The usage of the term "exclusive license" does not change this analysis.  As noted by the Seventh Circuit, "It is the substance of the agreement, not the labels that it uses, that controls [my] analysis." *Hyperquest, Inc.*, 632 F.3d at 383.

Righthaven's only interest in the Work is "the right to proceeds in association with a Recovery."  The Copyright Assignment Agreement defines "Recovery" as "any and all sums . . . arising from an Infringement Action."  Thus, when read together, the Assignment and the Copyright Assignment Agreement reveal that MediaNews Group has assigned to Righthaven the bare right to sue for infringement – no more, no less.  Although the assignment of the bare right to sue is permissible, it is ineffectual.  Standing alone, "[t]he right to sue for an accrued claim for infringement is not an exclusive right under § 106." *Silvers*, 402 F.3d at 884.  Furthermore, neither the Assignment nor the Copyright Assignment Agreement provide Righthaven any beneficial interest in the dissemination of the Work.  Accordingly, Righthaven is neither a "legal owner" or a "beneficial owner" for purposes of § 501(b), and it lacks standing to institute an action for copyright infringement.

CONCLUSION

It is apparent from the terms of the Assignment and the Copyright Assignment Agreement that Righthaven lacks standing to institute an action for copyright infringement.  Because the jurisdictional issues raised in the Motion to Dismiss are intertwined with the merits of the case, I convert Mr. Wolf's Rule 12(b)(1) motion to a Rule 56 motion and GRANT him SUMMARY JUDGMENT.  Furthermore, in light of the need to discourage the abuse of the statutory remedies for copyright infringement, I exercise my discretion under Section 505 of the Copyright Act and ORDER that Righthaven shall reimburse Mr. Wolf's full costs in defending this action, including reasonable attorney fees.

Dated: September 27, 2011                    BY THE COURT:

**/s/ John L. Kane**
Senior U.S. District Judge

14